UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

VALERIE KLOOSTERMAN

        Plaintiffs

                                        Civil Action No. 1:22-cv-00944

v.                                 Hon. Jane M. Beckering

METROPOLITAN HOSPITAL, d/b/a
UNIVERSITY OF MICHIGAN HEALTH-WEST;
RAKESH PAI, an individual; RHAE-ANN
BOOKER, an individual; MARLA COLE, an
individual; THOMAS PIERCE, an individual; and
CATHERINE SMITH, an individual.

        Defendants.

---

**BRIEF IN SUPPORT OF DEFENDANTS PAI, BOOKER, COLE, PIERCE AND SMITH'S AMENDED MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... iii

I.      INTRODUCTION ....................................................................................................... 1

II.     STATEMENT OF RELEVANT FACTS ................................................................... 1

III.    STATEMENT OF LAW............................................................................................. 3

    A.    The Court Should Treat Plaintiff's Section 1983 Claims (Counts I-III) Against Defendants in Their Individual Capacities As Claims Against Them In Their Official Capacities ...................................................................................................................3

    B.    The Court Should Dismiss Plaintiff's State Constitutional Claims (Counts VI through VIII) Against Defendants in their Official or Individual Capacities Because They Are Barred By The Eleventh Amendment.......................................................... 6

    C.    The Court Should Dismiss All of Plaintiffs' Claims Against Defendants in Their Individual Capacities (Counts I-III and VI-VIII) Because the Injunctions Sought Relate Only to their Jobs ................................................................................................ 8

    D.    The Court Should Dismiss Plaintiff's Requests for Injunctive Relief Against Defendants in their Individual and Official Capacities (Counts I-III and VI-VIII) Because Plaintiff Did Not Plead that They Possess the Power to Reinstate Her or to Remedy the Other Alleged Violations ............................................................................ 9

    E.    The Dismissal of Plaintiff's Claims Against Defendants for Injunctive Relief Requires Dismissal of the Claims for Retrospective Declaratory Relief, Leaving No Claims Against Them .............................................................................................. 10

    F.    The Court Should Dismiss Plaintiff's Section 1983 (Counts I-III) and State Constitutional Claims (VI-VIII) Against Defendants in Their Individual and Official Capacities Because the Complaint Does Not Include Specific Factual Allegations Regarding How Those Defendants' Own Actions Violated Her Constitutional Rights.......... 11

        Count I ...................................................................................................................... 12

        Counts II and VII ..................................................................................................... 14

        Count III.................................................................................................................... 16

        Count VI.................................................................................................................... 17

        Count VIII.................................................................................................................. 18

    G.    The Court Should Dismiss Plaintiff's Section 1983 Claims (Counts I, III, VI and VIII) Against the Individual Defendants in Their Individual or Official Capacities

Because Plaintiff Did Not Plead that Each Defendant Acted With a Discriminatory Purpose ........................................................................................................... 18

H.  The Court Should Dismiss All Claims Against the Individual Defendants Because They Allege Intra-Corporate Conspiracies and Because Plaintiff Did Not Plead Such Claims with the Requisite Specificity ................................................................. 20

I.  The Court Should Dismiss Counts VI through VIII for the Same Reasons Advanced in UMHW's Motion ................................................................................................ 25

IV.  CONCLUSION ........................................................................................................ 26

LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE ........................................................ 27

# TABLE OF AUTHORITIES

**Cases**

*Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003) ............................................................... 3

*Amador v. Perello*, No. 99-650, 2000 WL 35593212, (S.D. Fla. Aug. 23, 2000) aff'd,
    275 F.3d 54 (11th Cir. 2001) ................................................................................ 13

*Anderton v. Texas Parks & Wildlife Dep't*, No. 13-01641, 2014 WL 11281086, (N.D.
    Tex. Feb. 14, 2014) aff'd, 605 F. App'x 339 (5th Cir. 2015) .................................. 6

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ................. 3, 11, 18, 19

*Baar v. Jefferson Cty. Bd. of Educ.*, 476 F. App'x 621 (6th Cir. 2012) ........................ 23

*Blackwell v. City of Inkster*, No. 22-CV-10628, 2022 WL 989212, (E.D. Mich. Mar. 31,
    2022) ..................................................................................................................... 6

*Blantz v. Dept. of Corrections and Rehabilitation*, 727 F. 3d 917 (9th Cir. 2013) ....... 24

*Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) ...................................................... 5

*Boxill v. O'Grady*, 935 F. 3d 510 (6th Cir. 2019) ........................................................ 25

*Brown v. Strickland*, 2010 WL 2629878, (S.D. Ohio June 28, 2010) .......................... 10

*Brown v. Timmerman-Cooper*, 2013 WL 430262, (S.D. Ohio Feb. 4, 2013) report and
    recommendation adopted, No. 2:10-CV-283, 2013 WL 1344857 (S.D. Ohio Apr. 2,
    2013) ..................................................................................................................... 9

*Cantu Servs., Inc. v. Roberie*, 535 Fed.Appx. 342 (5th Cir. 2013) .............................. 5

*Carten v. Kent State University*, 282 F. 3d 391 (6th Cir. 2002) .................................... 5

*Centaur v. Jones*, No. 3:15-CV-00449, 2017 WL 108050, (E.D. Tenn. Jan. 11, 2017) ............. 23

*Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd.*, 150 F. App'x
    389 (6th Cir. 2005) .............................................................................................. 8

*Copperweld Corp v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81
    L.Ed.2d 628 (1984) ............................................................................................. 22

*Dawson v. Carter*, No. 15-4321, 2016 WL 4151035, (N.D. Ill. Aug. 5, 2016) ............ 12

*Diaz v. Michigan Dept. of Corrections*, 703 F. 3d 956 (6th Cir. 2003) ........................ 5

*Duncan v. Nighbert*, No. 06-34, 2007 WL 2571649, (E.D. Ky. Aug. 31, 2007) ............ 9

*Eberhard Architects, LLC v. Bogart Architecture, Inc.*, No. 1:14 CV 1185, 2014 WL
    4354561, (N.D. Ohio Aug. 29, 2014) ................................................................... 13, 17

*Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) .............................. 5, 7, 9

*Experimental Holdings, Inc. v. Farris*, 503 F.3d 514 (6th Cir. 2007) .......................... 7

*Fairport Int'l Exploration, Inc. v. Shipwrecked Vessel Known as The Captain
    Lawrence*, 105 F.3d 1078 (6th Cir. 1997) ............................................................ 3

*Fisher v. Flynn*, 598 F. 2d 663 (1st Cir. 1979) ............................................................ 13

*Follis v. State Armory Bldg. Comm'n*, No. 10-815, 2010 WL 1782181, (D. Minn. Mar.
    29, 2010) ............................................................................................................... 4

*Ford Motor Co. v. Dep't of Treas.*, 323 U.S. 459 (1945) ............................................ 4

*Gay v. Cabinet for Health & Fam. Servs. Dep't for Cmty. Based Servs.*, No. 18-5285,
    2019 WL 1338524, (6th Cir. Jan. 23, 2019) ......................................................... 6

*Gibson v. LeBlanc*, No. 16-354, 2017 WL 1017812, (M.D. La. Feb. 22, 2017) report
    and recommendation adopted, No. CV 16-354-SDD-RLB, 2017 WL 1015323 (M.D.
    La. Mar. 15, 2017) ............................................................................................... 17

*Gibson v. Matthews*, 926 F.2d 532 (6th Cir. 1991) ...................................................... 14

*Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188 (6th Cir. 2004) ................................ 13, 17

*Green v. Mansour*, 474 U.S. 64 (1985) ....................................................................... 10

*Greenawalt v. Ind. Dep't of Corr*., 397 F.3d 587 (7th Cir. 2005) .................................................. 6

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................................... 4

*Heyne v. Metropolitan Nashville Public Schools*, 655 F. 3d 556 (6th Cir. 2011) .................. 24, 25

*Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985) ........................................................................ 20

*In re Ohio Execution Protocol Litig.,* 709 F. App'x 779 (6th Cir. 2017) .................................... 8

*Jackson v. City of Cleveland*, 925 F. 3d 793 (6th Cir. 2019) .................................................... 21

*Jackson v. Raemisch*, 726 F. Supp. 2d 991 (W.D. Wis. 2010) ................................................. 19

*Jenkins v. Rock Hill Local School Dist*., 513 F. 3d 580 (6th Cir. 2008) ................................... 13

*Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ............................ 4

*Kmetz v. State Historical Soc.*, 304 F. Supp. 2d 1108 (W.D. Wis. 2004) ................................. 10

*Knisley v. Bowman*, 656 F. Supp. 1540 (W.D. Mich. 1987) .................................................... 10

*Leon v. Murphy*, 988 F. 2d 303 (2d Cir. 1993) ....................................................................... 24

*Leon v. Rockland Psychiatric Ctr*., 232 F. Supp. 3d 420 (S.D.N.Y. 2017) ................................. 9

*Lewis v. Clarke*, ___ U.S. ___, 137 S. Ct. 1285, 197 L. Ed. 2d 631 (2017) ................................. 3

*Martinson v. Regents of the Univ. of Michigan*, No. 09-13552, 2011 WL 13124122,
    (E.D. Mich. Sept. 28, 2011), aff'd sub nom ..................................................................... 6, 7

*Martinson v. Regents of Univ. of Michigan*, 562 F. App'x 365 (6th Cir. 2014) ........................... 6

*McCumons v. Marougi*, No. 08-11164, 2011 WL 308960, (E.D. Mich. Jan. 27, 2011) ............ 22

*Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978) ............................................................... 23

*Moniz v. Cox*, 512 F. App'x 495 (6th Cir. 2013) ..................................................................... 11

*Palumbo v. Orr*, 579 F. Supp. 129 (W.D. Pa. 1984) ............................................................... 13

*Patterson v. W. Virginia Reg'l Jail & Corr. Facility Auth*., No. 11-00943, 2012 WL
    3308607, (S.D.W. Va. July 3, 2012) report and recommendation adopted sub nom ............. 17

*Patterson v. W. Virginia Reg'l Jail*, No. 11-0943, 2012 WL 3295876 (S.D.W. Va. Aug.
    10, 2012) ...................................................................................................................... 18

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984) ..................................... 7

*R.K. v. Lee*, 575 F. Supp. 3d 957 (M.D. Tenn. 2021) ............................................................... 5

*Rivera v. Town of Cicero,* No. 19-3728, 2019 WL 5420154, (N.D. Ill. Oct. 23, 2019) ............. 12

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) ........................................................... 11

*Saad v. City of Dearborn Heights*, No. 11-10103, 2012 WL 72244, (E.D. Mich. Jan. 10,
    2012) ............................................................................................................................ 23

*Santino v Columbus Pub Sch,* 833 F Supp 2d 780 (SD Ohio, 2011) ....................................... 14

*Shah v. Univ. of Toledo*, No. 21-581, 2021 WL 5140969, (N.D. Ohio Nov. 4,
    2021), *dismissed,* No. 21-4153, 2022 WL 17493374 (6th Cir. July 18, 2022) ....................... 8

*Simpson v. Behav. Servs. of Tenn., Inc*., No. 09-2120, 2010 WL 2197816, (W.D. Tenn.
    May 26, 2010) ............................................................................................................... 22

*Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) ............................................... 5

*Sullivan v. Regents of the University of Michigan, No.* 08-12245, 2009 WL 2915787 ................. 7

*Thompson v. Corizon, Inc*., No. 2:20-158, 2020 WL 5361994, (W.D. Mich. Sept. 8,
    2020) ............................................................................................................................ 22

*United States Pipe & Foundry Co. v. Johnson*, 927 F.2d 296 (6th Cir. 1991) ............................. 7

*Urb. v. Mohr*, No. 1:19CV00914, 2019 WL 5425255, (N.D. Ohio Oct. 23, 2019), aff'd,
    No. 19-4113, 2021 WL 1921564 (6th Cir. Apr. 6, 2021) ............................................... 13, 17

*Verizon Md., Inc. v. Public Serv. Comm'n of Md*., 535 U.S. 635, 122 S.Ct. 1753, 152
    L.Ed.2d 871 (2002) ......................................................................................................... 5

*Young v. Medden*, No. 03-5432, 2006 WL 456274, (E.D. Pa. Feb. 23, 2006) .......................... 14

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) .............................................................................. 21

**Statutes**

42 U.S.C. § 1983 .................................................................................................... passim
42 U.S.C. § 1985(3) ..................................................................................................... 21, 22

**Other Authorities**

Eleventh Amendment .......................................................................................................... 7
First Amendment to the U.S. Constitution and Article I, § 5 of the Michigan
    Constitution ................................................................................................................... 14
First and Fourteenth Amendments to the U.S. Constitution ........................................... 12
Michigan Constitution, Article I § 2 .......................................................................... 18, 19

**Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................................................... 1, 3, 26
Fed. R. Civ. P. 12(b)(6) ..................................................................................... 1, 3, 11, 26

## I.       INTRODUCTION

In her Complaint, Plaintiff Valerie Kloosterman brought nine counts. Six of those claims seek declaratory and injunctive relief against five individual defendants for alleged violations of the United States Constitution (under 42 U.S.C. § 1983) and the Michigan Constitution. The individual defendants are all employees of Defendant University of Michigan Health-West ("UMHW"). Plaintiff's variously asserts that these individual Defendants compelled her to use "biology-obscuring pronouns," denied her a religious accommodation while granting such relief to others, compelled her to make referrals for medical procedures that violate her religious conscience, and terminated her employment. All of her claims seek relief from these Defendants in both their individual and official capacities.

In this Motion, all individual Defendants seek dismissal of Plaintiff's claims against them under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). In summary: (a) the claims brought under Section 1983 against Defendants in their individual capacities should be dismissed under Rule 12(b)(1) because they are barred by the Eleventh Amendment; (b) the claims brought under the Michigan Constitution against Defendants in their official capacities should be dismissed for the same reason; and (c) the claims against these Defendants should be dismissed under Rule 12(b)(6) for various additional reasons.

## II.      STATEMENT OF RELEVANT FACTS

The facts relevant to the instant Motion are derived from Plaintiff's Complaint (PageID.1-56) and are recited in the Legal Argument section below. However, a summary of the claims and the parties is given here.

Plaintiff is a physician assistant formerly employed by UMHW. (PageID.5, ¶ 20). Defendant UMHW is an affiliate of the University of Michigan Health System, which is operated by the Board of Regents for the University of Michigan. (*Id*. ¶ 21).

The individual Defendants each hold positions with UMHW. (PageID.6, ¶¶ 25-30). Specifically, Defendant Rakesh Pai serves as President and the Medical Group & Chief Population Health Officer. (*Id.* at ¶ 26). Defendant Rhae-Ann Booker is its Vice President of Diversity, Equity, and Inclusion. (*Id.* ¶ 27). Defendant Marla Cole serves as Director of Human Resources. (*Id.* at ¶ 28). Defendant Thomas Pierce is the Diversity, Equity & Inclusion Program Coordinator. (*Id.* at ¶ 29). And Defendant Catherine Smith is a Nurse Practitioner and a member of the Advanced Practice Providers' Council. (¶ 30). Each individual Defendant is named in both their individual and official capacities. (*Id.* at ¶¶ 25-30).

The Complaint contains three counts brought under 42 U.S.C. 1983 (Counts I-III) and three counts under the Michigan Constitution (Counts VI-VIII). The claims against the individual defendants, as noted, seek declaratory and injunctive relief against those defendants and in both their individual and official capacities. No monetary relief is sought from these defendants. The claims are as follows:

| Cause of Action | Claims | Defendants/Capacities in which Named | Relief Sought |
|---|---|---|---|
| Count I | First and Fourteenth Amendments: Free Exercise of Religion 42 U.S.C. § 1983 | All five individual defendants in their individual and official capacities | Declaration that Defendants violated the rights alleged; order directing Defendants to reinstate Plaintiff; injunction prohibiting future such acts by Defendants |

2

| Count II | First and Fourteenth Amendments: Freedom of Speech, 42 U.S.C. § 1983 | Same as above | Same as above |
|---|---|---|---|
| Count III | Fourteenth Amendment: Equal Protection, 42 U.S.C. § 1983 | Same as above | Same as above |
| Count VI | Michigan Constitution: Free Exercise of Religion | Same as above, plus Defendant UMHW | Same as above |
| Count VII | Michigan Constitution: Freedom of Speech | Same as above | Same as above |
| Count VIII | Michigan Constitution: Equal Protection | Same as above | Same as above |

## III.    STATEMENT OF LAW

**Rule 12(b)(1).** Where claims are barred by immunity under the Eleventh Amendment, the court lacks subject matter jurisdiction. *Fairport Int'l Exploration, Inc. v. Shipwrecked Vessel Known as The Captain Lawrence*, 105 F.3d 1078, 1082 (6th Cir. 1997).

**Rule 12(b)(6)**. In order to survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotations and citation omitted).

**A. The Court Should Treat Plaintiff's Section 1983 Claims (Counts I-III) Against Defendants in Their Individual Capacities As Claims Against Them In Their Official Capacities**

In all three of Plaintiff's Section 1983 claims (Counts I-III), she named Defendants in their individual (and their official) capacities. (PageID.29, 35, 39, ¶¶ 184, 225, 243).[1] Likewise, in all

---

[1] A Section 1983 claim against a person in their official capacity is, in essence, a claim against the State itself. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent"). As a result, Plaintiff's official capacity claims against the various individual defendants are essentially claims against the State. By contrast, a Section 1983 claim against a person in their ***individual*** capacity is where "the real party in interest is the individual, not the sovereign." *Lewis v. Clarke*, ___ U.S. ___, 137 S. Ct. 1285, 1291, 197 L. Ed. 2d 631 (2017). Instead, individual capacity "suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*,

3

three claims, Plaintiff seeks relief from Defendants in the forms of: (a) a declaration that they violated her rights under the U.S. Constitution; (b) reinstatement; and (c) "an injunction prohibiting future such acts by Defendants." (PageID.35, 39, 40, ¶¶ 223, 241, 252). Requests seeking relief of that kind against state officials in their *individual* capacities are uncommon.[2]

Plaintiff's Complaint alleges and concedes that Defendant UMHW is a state entity.[3] She asserts that Defendant UMHW is part of "the University of Michigan Health System (now called 'Michigan Medicine'), which in turn is operated by the University of Michigan Board of Regents." (PageID.10, ¶ 48).[4] Article VIII, Sec. 5 of the Michigan Constitution created the University and its Board of Regents. Further, Plaintiff alleges that each of the individual Defendants named works for UMHW. (PageID.6, 14, ¶¶ 25-29, 84).

Under the Eleventh Amendment to the U.S. Constitution, states are generally immune from suit by private parties in federal court. The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit
> in law or equity, commenced or prosecuted against one of the United States by

---

473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Monetary relief against Defendants in their official capacities would be barred by the Eleventh Amendment. See e.g., *Ford Motor Co. v. Dep't of Treas.*, 323 U.S. 459, 464 (1945). Monetary relief against them in their individual capacities would be barred by qualified immunity. See e.g., *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

[2] This subsection A of the Statement of Law does not set forth an independent basis, under the Eleventh Amendment, for dismissal of claims against state officials in their individual capacities. It explains that injunctions run against the office, not the individual and that *Ex parte Young* does not somehow create an independent right to prospective injunctive relief against state officials sued in their individual capacities (as Plaintiff appears to believe in pleading the individual-capacity claims). This subsection also outlines the Eleventh Amendment and its exceptions, including *Ex parte Young*, which are important as predicates to understanding subsections B-F.

[3] *Follis v. State Armory Bldg. Comm'n*, No. 10-815, 2010 WL 1782181, at *1 (D. Minn. Mar. 29, 2010) ("Here, the Plaintiffs have explicitly alleged in their Complaint that the named Defendant, State Armory Building Commission, 'is an arm of a state, or state entity'"), report and recommendation adopted, No. 10-815, 2010 WL 1782178 (D. Minn. May 4, 2010).

[4] The individually-named defendants, all employees of UMHW, are also named in claims brought for alleged violations of the United States Constitution under 42 U.S.C. § 1983. (PageID.29-40). She states that all of those Defendants acted "under color of state law." (PageID.6, ¶ 30).

Citizens of another state, or by Citizens or subjects of any foreign State. [U.S. Const. amend. XI.]

There are generally three exceptions to this rule: (1) abrogation by Congress; (2) waiver by the State; and (3) suits against state officers for prospective relief to end an ongoing violation of federal law. *Carten v. Kent State University*, 282 F. 3d 391, 398 (6th Cir. 2002). Plaintiff does not and cannot suggest that the first two exceptions apply in this case.

With respect to the third exception, outlined in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), state officers may be sued in their official capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law. *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017). See also *R.K. v. Lee*, 575 F. Supp. 3d 957, 982 (M.D. Tenn. 2021).

However, the *Ex parte Young* exception applies **only** to state officials sued in their **official** capacities, not those sued in their individual capacities. See e.g., *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 648, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) ("[T]he doctrine of *Ex parte Young* permits Verizon's suit to go forward against the state commissioners in their **official** capacities.") (emphasis added); *Diaz v. Michigan Dept. of Corrections*, 703 F. 3d 956, 964 (6th Cir. 2003) ("the Supreme Court announced an exception to Eleventh Amendment sovereign immunity in *Ex parte Young* for claims for injunctive relief against individual state officials in their **official** capacities") (emphasis added); *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008) ("*Ex parte Young* subjects a state employee acting in her **official** capacity to suits for prospective relief that avoid the Eleventh Amendment bar.") (emphasis added); *Cantu Servs., Inc. v. Roberie*, 535 Fed.Appx. 342, 344 (5th Cir. 2013) ("For *Ex parte Young* to apply, the suit must be brought against individual persons in their **official** capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect.") (emphasis

5

added); *Anderton v. Texas Parks & Wildlife Dep't*, No. 13-01641, 2014 WL 11281086, at \*4 (N.D. Tex. Feb. 14, 2014) ("The proper application of *Ex parte Young* is by suing a state official ***in his official capacity and not in his individual capacity***") (emphasis added), aff'd, 605 F. App'x 339 (5th Cir. 2015); *Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) ("Section 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."); *Blackwell v. City of Inkster*, No. 22-CV-10628, 2022 WL 989212, at \*12 (E.D. Mich. Mar. 31, 2022) (dismissing claim against mayor for injunctive relief in his individual capacity because such relief could be directed against him in his official, but not his individual, capacity) (citing *Gay v. Cabinet for Health & Fam. Servs. Dep't for Cmty. Based Servs.*, No. 18-5285, 2019 WL 1338524, at \*5 (6th Cir. Jan. 23, 2019) ("injunctions run against the office, not the individual")).

The Court should treat Plaintiff's claims against Defendants in Counts I-III as claims brought against Defendants only in their official capacities, rather than in their *individual* capacities, because injunctions run against the office, not the individual. As explained further in subsections C-F, *infra*, Plaintiff's Section 1983 claims should be dismissed..

**B.  The Court Should Dismiss Plaintiff's State Constitutional Claims (Counts VI through VIII) Against Defendants in their Official or Individual Capacities Because They Are Barred By The Eleventh Amendment**

Counts VI through VIII of Plaintiff's Complaint seek injunctive relief from the individual Defendants in their official and individual capacities, but under the Michigan Constitution. However, such claims are barred by the Eleventh Amendment. *Martinson v. Regents of the Univ. of Michigan*, No. 09-13552, 2011 WL 13124122, at \*4 (E.D. Mich. Sept. 28, 2011), aff'd sub nom. *Martinson v. Regents of Univ. of Michigan*, 562 F. App'x 365 (6th Cir. 2014). In *Martinson*, the plaintiff brough various federal and state constitutional claims against the University and certain

6

individuals acting in their official capacities. The plaintiff sought injunctive relief against those individuals. In dismissing those claims, the Court wrote:

> *Similarly, all state law claims against the University and the individual Defendants in their official capacities are barred by the Eleventh Amendment in an action brought in federal court.* Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 121 (1984) ("We concluded above that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment. We now hold that this principle applies as well to state-law claims brought into federal court under pendent jurisdiction."). See also *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520-21 (6th Cir. 2007) (citing *Pennhurst*, supra) ("The Supreme Court has squarely held that pendent state law claims against state officials in their official capacity are barred by the Eleventh Amendment."); *Sullivan* [*v. Regents of the University of Michigan, No.* 08-12245, 2009 WL 2915787,] at *6 (holding that the Eleventh Amendment also barred plaintiff's pendent state law claims against the university police officer in his official capacity) (citing Experimental Holdings, supra)
>
> *This dismissal of Plaintiff's state law claims applies to all forms of relief sought, including prospective injunctive relief*, which may be available to Plaintiff in federal court on her federal claims against the individual Defendants in their official capacities under the doctrine of *Ex Parte Young*. The Supreme Court clearly embraced this conclusion in *Pennhurst*:
>
>> This need to reconcile competing interests [recognized in *Ex Parte Young*] is wholly absent, however, when a plaintiff alleges that a state official has violated state law. In such a case the entire basis for the doctrine of *Young* and *Edelman* disappears. A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. *On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.* Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that Young and Edelman are inapplicable in a suit against state officials on the basis of state law.
>
> *Pennhurst*, 465 U.S. at 106 (internal quotation marks and citations omitted). See also *United States Pipe & Foundry Co. v. Johnson*, 927 F.2d 296, 298-99 (6th Cir. 1991) (recognizing that *"[t]he Supreme Court has held that the eleventh amendment prohibits federal courts from ordering state officials to conform their conduct to state law"*) (citing *Pennhurst, supra*).

*Martinson, supra* at *4-5 (emphasis added).

7

The same is true of Plaintiff's claims under the Michigan Constitution against Defendants in their *individual* capacities. *In re Ohio Execution Protocol Litig.,* 709 F. App'x 779, 783 (6th Cir. 2017) ("Sovereign immunity thus bars a plaintiff from using state law to enjoin state officials from carrying out official responsibilities *even when the officials are sued in their individual capacities*.") (emphasis added).

For these same reasons, this Court should dismiss Plaintiff's Michigan claims under the Michigan Constitution (Counts VI through VIII) against the individual defendants in their official and individual capacities.

**C.  The Court Should Dismiss All of Plaintiffs' Claims Against Defendants in Their Individual Capacities (Counts I-III and VI-VIII) Because the Injunctions Sought Relate Only to their Jobs**

All six of Plaintiff's claims against the five individual Defendants seek injunctive relief in two forms: (1) "an order against Defendants directing them to reinstate" Plaintiff; and (2) "prohibiting future such acts by Defendants," which acts are the alleged constitutional violations. (PageID.35, 38, 40, 49, 50, 51, ¶¶ 223, 241, 252, 317, 325, 337).

However, the Sixth Circuit has made clear that claims for injunctive relief against state officials in their *individual capacities*, which relate only the individuals' jobs, cannot be sustained. "Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, i.e., his official capacity." *Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd.*, 150 F. App'x 389, 401 (6th Cir. 2005). Accord: *Shah v. Univ. of Toledo*, No. 21-581, 2021 WL 5140969, at *11 (N.D. Ohio Nov. 4, 2021), *dismissed,* No. 21-4153, 2022 WL 17493374 (6th Cir. July 18, 2022).

The same is true here. Plaintiff's requests for injunctive relief relate only to Defendants' jobs, i.e., their roles in Plaintiff's employment. Accordingly, Plaintiff's claims in Counts I-III and VI-VIII, brought against Defendants in their individual capacities, should be dismissed.

**D. The Court Should Dismiss Plaintiff's Requests for Injunctive Relief Against Defendants in their Individual and Official Capacities (Counts I-III and VI-VIII) Because Plaintiff Did Not Plead that They Possess the Power to Reinstate Her or to Remedy the Other Alleged Violations**

As noted above, the claims against all five defendants are for injunctive relief in the forms of reinstatement and an order "prohibiting future such [unconstitutional] acts by Defendants." (PageID.35, 38, 40, 49, 50, 51, ¶¶ 223, 241, 252, 317, 325, 337).

However, Plaintiff has not pled facts that the individual defendants named have the authority to reinstate her or to prohibit future conduct that would violate her rights. The latter would require them to either revise the allegedly unconstitutional policies at UMHW, or to direct others as to how they are implemented. Plaintiff's Complaint names the UMHW President, the Vice President of Diversity, Equity, and Inclusion, a Director of Human Resources, the Diversity, Equity & Inclusion Program Coordinator, and a Nurse Practitioner. (*Id.* at ¶¶ 25-30).

This omission is dispositive of Plaintiff's claims against them for injunctive relief because the *Ex parte Young* exception is inapplicable. *Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 436 (S.D.N.Y. 2017) (dismissing Section 1983 official capacity claims against defendant Soto seeking reinstatement because "Plaintiff has not pled that she has the authority or ability to offer him a job with RPC."); *Duncan v. Nighbert*, No. 06-34, 2007 WL 2571649, at *4 (E.D. Ky. Aug. 31, 2007) ("Defendants Fletcher and Adams do not have the authority to reinstate Plaintiff to his previous position as Staff Assistant; therefore, Plaintiff's claims for injunctive relief [under Section 1983] against Defendants Adams and Fletcher fail, as they cannot provide the relief requested."); *Brown v. Timmerman-Cooper*, 2013 WL 430262, at *3 (S.D. Ohio Feb. 4, 2013) (prison officials

9

sued in their official capacities must "possess the power or authority to remedy unconstitutional condition"), report and recommendation adopted, No. 2:10-CV-283, 2013 WL 1344857 (S.D. Ohio Apr. 2, 2013). In each of the above cases, and others, courts have analyzed the pleading requirement in the context of Eleventh Amendment immunity. *Accord: Kmetz v. State Historical Soc.*, 304 F. Supp. 2d 1108, 1137 (W.D. Wis. 2004) (*Ex parte Young* "exception applies only when the state official has the authority to perform the requested act.")

Because Plaintiff did not plead that the individual Defendants can each reinstate her and change UMHW policies (or direct others as to how they should be enforced), the Court should dismiss these claims for injunctive relief.

### E. The Dismissal of Plaintiff's Claims Against Defendants for Injunctive Relief Requires Dismissal of the Claims for Retrospective Declaratory Relief, Leaving No Claims Against Them

The dismissal of Plaintiff's claims for injunctive relief, for all the reasons given above, requires dismissal of all claims against them in their official capacities. This is because Plaintiff's claims for declaratory relief are retrospective in nature, only. Specifically, Plaintiff's requests for declaratory relief in all six counts against Defendants seek a "declaration that" they violated her rights under the various provisions of the Michigan and U.S. Constitutions. (PageID.35, 38, 40, 49, 50, 51, ¶¶ 223, 241, 252, 317, 325, 337).

Courts have routinely held that such claims for declaratory relief against state officials in their official capacities are barred by the Eleventh Amendment. See e.g., *Brown v. Strickland*, 2010 WL 2629878, at \*4 (S.D. Ohio June 28, 2010) ("***a declaratory judgment against state officials declaring that they violated federal law in the past constitutes retrospective relief, and is barred by the Eleventh Amendment***") (emphasis added) (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985); *Knisley v. Bowman*, 656 F. Supp. 1540, 1554 (W.D. Mich. 1987) ("***the Court holds that***

10

***the remaining claims for declaratory and "notice relief" relate to past violations of federal law and that retrospective relief for such claims is barred by the Eleventh Amendment***") (emphasis added). As a result, dismissal of Plaintiff's claims for injunctive relief also requires dismissal of Plaintiff's claims for declaratory relief, a conclusion which requires complete dismissal of those claims for lack of subject matter jurisdiction.

**F. The Court Should Dismiss Plaintiff's Section 1983 (Counts I-III) and State Constitutional Claims (VI-VIII) Against Defendants in Their Individual and Official Capacities Because the Complaint Does Not Include Specific Factual Allegations Regarding How Those Defendants' Own Actions Violated Her Constitutional Rights**

Plaintiff's claims against the individual defendants fail to satisfy the pleading requirements of Rule 12(b)(6). As the Supreme Court explained in *Ashcroft v. Iqbal*, 556 US 662, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009), in order to state a claim under Section 1983, Plaintiff must plead "***that each Government-official defendant, through the official's own individual actions, has violated the Constitution***." (emphasis added). Thus, where a plaintiff has named individual defendants under Section 1983, whether in their official capacities for injunctive relief or in their individual capacities for damages, she must "include specific factual allegations regarding how" that defendant violated her constitutional rights. *Moniz v. Cox*, 512 F. App'x 495, 499 (6th Cir. 2013).

The Complaint fails to address what act or acts Defendants took as individuals to violate her rights under the Constitution, let alone set forth who did what to violate those rights. Plaintiff's assertion, in the factual allegations section, that Defendants all "participated in the [termination] decision," but without specifying what unconstitutional actions they took, is facially deficient. See e.g., *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("When a plaintiff instead uses either the collective term 'Defendants' or a list of defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to

11

ascertain what particular unconstitutional acts they are alleged to have committed."); *Rivera v. Town of Cicero,* No. 19-3728, 2019 WL 5420154, at \*7 (N.D. Ill. Oct. 23, 2019) ("Rivera's sweeping allegations concerning all Defendants are insufficient to allege that the Defendants were personally involved."); *Dawson v. Carter*, No. 15-4321, 2016 WL 4151035, at \*2 (N.D. Ill. Aug. 5, 2016) ("Plaintiff pleads in conclusory fashion that all 'Defendants' are responsible for the unlawful search, seizure, use of excessive force, false arrest, false imprisonment and failure to intervene. Such generic allegations of personal involvement are insufficient to state Section 1983 claims against the Moving Officers.").

With these principals in mind, Defendants address each of Plaintiff's constitutional claims, in turn.

### Count I

Count I claims that all individual Defendants violated Plaintiff's right to the free exercise of religion under the First and Fourteenth Amendments to the U.S. Constitution. This rests on two main allegations. First, Plaintiff avers that Defendants "openly mocked and condemned Ms. Kloosterman's religious beliefs or tacitly approved of or shared their colleagues' animus toward Ms. Kloosterman's religious beliefs." Yet, she claims that Defendant Pierce expressed hostility toward her religious beliefs and that the other four defendants "did not disavow" such statements. (PageID.30, ¶¶ 191-192; see also PageID.17, 20, ¶¶ 105, 131, 132, 192). Plaintiff further asserts that "Defendants" (without specifying who) targeted her for disparate treatment by refusing to accommodate her religious beliefs (while accommodating "secular" requests) and terminating her employment. (PageID.31, ¶ 197).

The generic statement that **all** "Defendants targeted her for disparate treatment" is insufficient to meet Plaintiff's pleading obligation. See e.g., *Gilmore v. Corr. Corp. of Am.*, 92 F.

12

App'x 188, 190 (6th Cir. 2004) (generic allegations against unspecified defendants are insufficient to support a plausible § 1983 claim); *Eberhard Architects, LLC v. Bogart Architecture, Inc.*, No. 1:14 CV 1185, 2014 WL 4354561, at *3 (N.D. Ohio Aug. 29, 2014) (vague statement that "all defendants engaged in copyright infringement" constitutes nothing more than a formulaic recitation of the elements of the claim); *Urb. v. Mohr*, No. 1:19CV00914, 2019 WL 5425255, at *3 (N.D. Ohio Oct. 23, 2019), aff'd, No. 19-4113, 2021 WL 1921564 (6th Cir. Apr. 6, 2021).

The allegation that Defendant Pierce expressed verbal hostility to her views is, in any event, insufficient. She does not allege that Defendant Pierce had authority to terminate her employment. In fact, Plaintiff alleges that Mr. Pierce serves as a ***Coordinator*** for Diversity, Equity & Inclusion at UMHW. (PageID.6, ¶ 28). This omission is fatal to Plaintiff's claim. See e.g., *Amador v. Perello*, No. 99-650, 2000 WL 35593212, at *6 (S.D. Fla. Aug. 23, 2000) (noting the plaintiff's failure to allege that individual defendant had the authority to suspend or terminate his employment was dispositive), aff'd, 275 F.3d 54 (11th Cir. 2001); *Palumbo v. Orr*, 579 F. Supp. 129, 134 (W.D. Pa. 1984) (dismissing Section 1983 count against defendants Hersh and Epstein because they failed to state a claim because "[t]here is no allegation in the Amended Complaint which indicates that Defendants Hersh or Epstein possessed the power and/or authority to discharge Plaintiff."); *Fisher v. Flynn*, 598 F. 2d 663, 665 (1st Cir. 1979) (affirming dismissal of the plaintiff's Section 1983 claim against department chair because she "has not alleged that the department chairman had the authority to terminate her employment or effectively recommend the same and we cannot so assume."). Nor does Plaintiff allege that Defendant Pierce set in motion the events resulting in an unconstitutional action.[5]

---

[5] See e.g., *Jenkins v. Rock Hill Local School Dist.*, 513 F. 3d 580, 589-90 (6th Cir. 2008).

To be clear, Plaintiff's claim that Defendant Pierce expressed hostility toward her religious beliefs would not, in and of itself, constitute an actionable violation under Section 1983 because such claims did not rise to the level of a hostile work environment. See e.g., *Santino v Columbus Pub Sch,* 833 F Supp 2d 780, 796 (SD Ohio, 2011) (granting summary judgment of claim for hostile work environment under Section 1983 where the plaintiff's allegations that he was told he "looked like a Somalian gangster," called a "terrorist" and other names did not rise to the level necessary to sustain such a claim). See also *Young v. Medden*, No. 03-5432, 2006 WL 456274, at *22 (E.D. Pa. Feb. 23, 2006) ("verbal harassment or threats, standing alone, do not state a constitutional violation").

It is also insufficient to allege that the individual Defendants other than Pierce (Pai, Smith, Cole and Booker) "did not disavow" Mr. Pierce's supposed statements to Plaintiff. (PageID.30, ¶¶ 191-192). *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) (explaining that personal liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants").

In short, Count I does not allege what actions each Defendant took to cause Plaintiff's termination or the allegedly disparate denial of accommodating her religious beliefs. Accordingly, the Court should dismiss Count I against all individual Defendants.

**Counts II and VII**

Counts II and VII of Plaintiff's Complaint allege that Defendants coerced or compelled her to use "biology-obscuring pronouns" in violation of her rights under the First Amendment to the U.S. Constitution and Article I, § 5 of the Michigan Constitution. (PageID.30, 49, ¶¶ 226, 322).

14

Although not expressly stated in either Counts II or VII, these claims appear to refer to the allegation in paragraph 113 that UMHW has a policy "to require employees to use pronouns as preferred by patients, regardless of whether they correspond with biological sex." Plaintiff also claims earlier in the Complaint that "the [training] module contained a requirement to affirm statements concerning sexual orientation and gender identity that her Christian faith prohibited her from affirming." (PageID.13, ¶ 74).

The Complaint contains no allegation that Defendants Pai, Pierce, Cole, Booker or Smith directed or otherwise compelled Plaintiff to use patients' preferred pronouns. Instead, the Complaint generically states that, in 2021, **Defendant UMHW** required Plaintiff to complete a mandatory training module (PageID.13, ¶ 74) and that **UMHW** policy requires employees to use patients' chosen pronouns. (PageID.18, ¶ 113).

The Complaint describes a July 29, 2021 meeting between Plaintiff and "representatives from both the HR and DEI Departments [of UMHW]: Defendant Cole (HR Director); Defendant Pierce (DEI Program Director); and Defendant Smith (member of the Advanced Practice Providers' Council). (PageID.14, ¶ 84). Plaintiff states that this meeting "focused on whether Ms. Kloosterman would use gender identity-based pronouns and be willing to refer patients for 'gender reassignment surgery.'" (PageID.15, ¶ 88). And Plaintiff avers that **unspecified "representatives** asked Ms. Kloosterman what she would do about pronouns on patient charts." (PageID.16, ¶ 97) (emphasis added).

Plaintiff fails to state which Defendant(s) directed or required her to do anything with respect to patients' chosen pronouns. Instead, she only states that Defendant Pierce "asked Ms. Kloosterman whether she knew that by using a patient's name instead of his or her preferred pronouns, she would cause him or her to commit suicide." (PageID.16, ¶ 95). Again, in the absence

of specific allegations that would establish what any other Defendant did, Plaintiff states that "Defendant Smith did nothing to support Ms. Kloosterman or to contradict the hostile statements by Defendant Pierce." (PageID.17, ¶ 100).

In short, despite the allegations in Counts II and VII that that "Defendants" coerced or compelled Plaintiff to use "biology-obscuring pronouns," her claims in this regard fail to state claims on which relief can be granted. Accordingly, the claims against them in Counts II and VII should be dismissed.

**Count III**

In Count III, Plaintiff claims that unspecified "Defendants violated the Equal Protection Clause by refusing to accommodate Ms. Kloosterman's religious beliefs while providing numerous accommodations for other employees' non-religious preferences." (PageID 39, ¶248). This claim, once again, fails to identify who did what.

Plaintiff alleges in the "Factual Background" section of her Complaint that she sought a religious accommodation after reaching the conclusion that her religious faith prohibited her from agreeing with statements contained in a UMHW training module. (PageID.14, ¶¶ 79-82). She states that she arranged and had a meeting with Defendant Rhae-Ann Booker, the UMHW Vice President of Diversity, Equity, and Inclusion. (PageID.6, 14, ¶¶ 26, 79-82). Plaintiff then goes on to describe the earlier-described July 29, 2021 meeting she had with Defendants Cole, Pierce, and Smith.

Plaintiff alleges that Defendant UMHW denied her requested accommodation (PageID.2, ¶¶ 5-6) and, generically avers that unspecified "Defendants" denied her request (PageID.33-34, 2, ¶¶ 211, 212, 218, 220, 248). *At no point* in Plaintiff's Complaint does Plaintiff assert who specifically took action denying her an accommodation. Plaintiff does not even allege which of

the individual Defendants had ***authority*** to make and implement a decision to deny her an accommodation. As with Counts II and VII, this omission is dispositive. *Gilmore, supra*; *Eberhard Architects, supra*; *Urb, supra.* Accordingly, the Court should dismiss Count III.

**Count VI**

Count VI claims that all individual Defendants violated Plaintiff's right to free exercise of religion under the Michigan Constitution in several different ways. Plaintiff claims that "Defendants violated the Michigan Constitution when they compelled Ms. Kloosterman to make referrals for medical procedures that violate her religious conscience (PageID.47, ¶ 304) and that "Defendants substantially burdened Ms. Kloosterman's religious exercise by denigrating her religion, refusing to provide an accommodation, attempting to coerce her to violate her religious convictions, and ultimately terminating her because of her religious beliefs." (PageID.48, ¶ 309).

Again, however, Plaintiff fails to identify ***who did what*** to violate her right to the free exercise of religion. As shown above, the generic statement that ***all "Defendants"*** engaged in the alleged conduct is insufficient. Nothing in Plaintiff's Complaint states ***what specifically*** any one Defendant did to compel Plaintiff to make referrals, denigrate her religion,[6] refuse her an accommodation, coerce her to violate her religious convictions, and/or terminate her because of her religious beliefs. Each of these issues is addressed in a preceding section of this argument and nothing in Count VI offers any further detail.[7] Count VI also should be dismissed.

---

[6] As explained above, the alleged denigration to which Plaintiff was subjected (being called "evil" and a "liar" by one Defendant while others did not "disavow" the statement) does not rise to the level of a constitutional violation.

[7] See also *Gibson v. LeBlanc*, No. 16-354, 2017 WL 1017812, at *7 (M.D. La. Feb. 22, 2017) ("The plaintiff does not associate any particular defendant with any act or omission that demonstrates a violation of the Free Exercise Clause. As such, this claim should be dismissed"), report and recommendation adopted, No. CV 16-354-SDD-RLB, 2017 WL 1015323 (M.D. La. Mar. 15, 2017); *Patterson v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, No. 11-00943, 2012 WL 3308607, at *7 (S.D.W. Va. July 3, 2012) (dismissing claim because the plaintiff "fails to

**Count VIII**

In Count VIII, Plaintiff claims that *all "Defendants* violated Article I, § 2 [of the Michigan Constitution], by discriminating against Ms. Kloosterman because of her religion" and, alternatively, "by enforcing their nondiscrimination policies in such a way that disparately impacted religious employees including Ms. Kloosterman." (PageID.51, ¶¶ 332-333) (emphasis added).[8]

Again, Plaintiff fails to state a claim because she does not identify what *act* any *specific Defendant* did that would constitute "discrimination" because of her religion in an actionable way. Nor does Plaintiff say what *act* any *specific Defendant took* to "enforce[] their nondiscrimination policies in such a way that disparately impacted religious employees."  As a result, the Court should dismiss Count VIII.

**G. The Court Should Dismiss Plaintiff's Section 1983 Claims (Counts I, III, VI and VIII) Against the Individual Defendants in Their Individual or Official Capacities Because Plaintiff Did Not Plead that Each Defendant Acted With a Discriminatory Purpose**

Under *Iqbal,* the Supreme Court made clear that where the plaintiff seeks relief under Section 1983 against an individual defendant for invidious discrimination, she must plead a discriminatory purpose. 129 S.Ct. at 1948-49.

Counts I, III, VI and VIII rest on claims of invidious discrimination. Complaint, Count I, PageID.33, ¶ 215 ("Defendants' discriminatory treatment and selective accommodation practices

---

allege any particular act by any particular defendant that impeded his religious freedom or expression."), report and recommendation adopted sub nom. *Patterson v. W. Virginia Reg'l Jail*, No. 11-0943, 2012 WL 3295876 (S.D.W. Va. Aug. 10, 2012).

[8] Plaintiff is even less clear in her state equal protection claim, than her federal equal protection claim, about what specific acts of discrimination occurred. Plaintiff also fails to identify what specific "non-discrimination policies" had a disparate impact on what group(s) of "religious employees." These omissions alone make clear that Plaintiff failed to state a claim on which relief can be granted.

create government-imposed coercive pressure on Ms. Kloosterman to change or violate her religious beliefs"); Count III, PageID.39, ¶ 247 ("Defendants violated the Equal Protection Clause by intentionally discriminating against Ms. Kloosterman because of her religion"), Count VI, PageID.48, ¶ 309 ("Defendants substantially burdened Ms. Kloosterman's religious exercise by denigrating her religion, refusing to provide an accommodation, attempting to coerce her to violate her religious convictions, and ultimately terminating her because of her religious beliefs"); and Count VIII, PageID.51, ¶ 332 ("Defendants violated Article I, § 2, by discriminating against Ms. Kloosterman because of her religion"). See *Iqbal, supra* (applying invidious discrimination pleading requirement to religious discrimination claim); and *Jackson v. Raemisch*, 726 F. Supp. 2d 991, 1005 (W.D. Wis. 2010) (applying invidious discrimination pleading requirement to equal protection claim based on religion).

The foregoing excerpts from the Complaint are merely conclusions, not factual allegations. In *Iqbal,* the Court rejected statements such as those as nothing more than recitations of the elements, including allegations that the defendants "knew of, condoned, and willfully and maliciously agreed to subject [the plaintiff]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." 137 S.Ct. at 1951. However, because the complaint did not "show, or even intimate, that petitioners purposefully housed detainees in the [facility] due to their race, religion, or national origin," it did not sufficiently allege a discriminatory purpose on the part of the defendants. *Id*. at 1952.

Plaintiff's Complaint does not contain factual allegations of a discriminatory purpose by any specific individual Defendant. Accordingly, the Court should dismiss Counts I, III, VI and VIII against them.

19

**H. The Court Should Dismiss All Claims Against the Individual Defendants Because They Allege Intra-Corporate Conspiracies and Because Plaintiff Did Not Plead Such Claims with the Requisite Specificity**

All of Plaintiff's state and federal constitutional claims rest on an alleged intra-corporate conspiracy, without *labeling* the same as a conspiracy. The Sixth Circuit describes a conspiracy under Section 1983 as "an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985).

Count I must be analyzed as a claim for an intra-corporate conspiracy because it alleges that Defendants together engaged in various unconstitutional actions with the goal of terminating Plaintiff's employment. Among other allegations in Count I, Plaintiff claims that: (a) "***Defendants have targeted*** Ms. Kloosterman for termination," which action Plaintiff separately claims that (on information and belief) Defendants "***participated in" together*** (PageID.21, 31, ¶¶ 133, 200); (b) "***Defendants have_unconstitutionally targeted*** Ms. Kloosterman for disparate treatment because of her religious beliefs" (PageID.31, ¶¶ 196-197) (c) ***Defendants denied*** Ms. Kloosterman an accommodation because of her religion (PageID.34, ¶ 218); and (d) Defendants "share the anti-religious animus that Defendant Pierce made explicit." (PageID.30-31, 34, ¶¶ 191-192, 196, 200, 218) (emphasis added).

The same is true of all other claims against the individual Defendants:

- Count II: Here too, Plaintiff claims that ***all individual defendants*** "violated the Free Speech Clause of the First Amendment, as incorporated against the states through the Fourteenth Amendment, by compelling Ms. Kloosterman to speak biology-obscuring pronouns." (PageID.35, ¶ 226). She describes "***their*** attempt to compel Ms. Kloosterman to speak messages that she disagrees with or else lose her job" (PageID.38, ¶ 239).

- Count III: Plaintiff asserts that "***Defendants violated*** the Equal Protection Clause by refusing to accommodate Ms. Kloosterman's religious beliefs while providing numerous accommodations for other employees' non-religious preferences." (PageID.39, ¶ 248). Further, they ***all*** "treat[ed] Ms. Kloosterman differently on the basis of" her religion, their actions were "not narrowly tailored to serve a compelling governmental interest," and

Defendants together "have denied Ms. Kloosterman" her rights under the Fourteenth Amendment to the U.S. Constitution. (PageID.40, ¶¶ 249-251).

- Count VI: According to the Complaint, *all "Defendants* violated the Michigan Constitution when they compelled Ms. Kloosterman to make referrals for medical procedures that violate her religious conscience." (PageID.47, ¶ 304). Plaintiff also claims that *all Defendants* "substantially burdened Ms. Kloosterman's religious exercise by denigrating her religion, refusing to provide an accommodation, attempting to coerce her to violate her religious convictions, and ultimately terminating her because of her religious beliefs." (PageID.48, ¶ 309).

- Count VII: Again, Plaintiff claims that *all Defendants* "violated Article I, § 5 of the Michigan Constitution, by compelling Ms. Kloosterman to speak biology-obscuring pronouns." (PageID.42, ¶ 322). Further, "[b]ecause of *Defendants' actions and policies*," she claims to have suffered irreparable harm. (PageID.50, ¶ 324).

- Count VIII: Again, *all Defendants* allegedly violated Article I, § 2 of the Michigan Constitution, by discriminating against her because of her religion. (PageID.51, ¶ 332). Alternatively, Plaintiff claims that *all "Defendants* violated Article I, § 2, by enforcing their nondiscrimination policies in such a way that disparately impacted religious employees," including Plaintiff. (PageID.51, ¶ 333).[9]

In the Sixth Circuit, "the intra-corporate conspiracy doctrine applies in § 1983 suits to bar conspiracy claims where two or more employees of the same entity are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of his rights." *Jackson v. City of Cleveland*, 925 F. 3d 793, 818 (6th Cir. 2019). The U.S. Supreme Court, in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), rejected a claim of conspiracy under 42 U.S.C. § 1985(3), where the claim was premised upon the acts of various government officers who allegedly conspired to create unconstitutional conditions of confinement. The Supreme Court considered the intra-corporate conspiracy doctrine and discussed how the officers at issue were all part of the same organization:

> As to the fact that these officers were in the same Department, an analogous principle discussed in the context of antitrust law is instructive. The Court's

---

[9] Certainly, the Complaint does not suggest that the individual defendants acted independently and without an agreement or understanding as to their objectives. Instead, as discussed in more detail below, Plaintiff alleges that they acted to enforce UMHW policies.

21

precedent indicates that there is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy for the entity. See *Copperweld Corp v. Independence Tube Corp*., 467 U.S. 752, 769-771, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). ***Under this principle — sometimes called the intracorporate-conspiracy doctrine — an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy***. Ibid. The rule is derived from the nature of the conspiracy prohibition. ***Conspiracy requires an agreement — and in particular an agreement to do an unlawful act — between or among two or more separate persons***. When two agents of the same legal entity make an agreement in the course of their official duties, however, as a practical and legal matter their acts are attributed to their principal. And it then follows that there has not been an agreement between two or more separate people. See *id*., at 771, 104 S.Ct. 2731 (analogizing to "a multiple team of horses drawing a vehicle under the control of a single driver").

137 S.Ct. at 1867-1868. (emphasis added).[10]

Plaintiff's failure to allege that the individual defendants were acting outside the scope of their employment clearly establishes the intra-corporate nature of the alleged conspiracies. See e.g., *Thompson v. Corizon, Inc*., No. 2:20-158, 2020 WL 5361994, at *6 (W.D. Mich. Sept. 8, 2020) (applying intra-corporate conspiracy doctrine where "all Defendants are members of the same collective entity . . . who work at the same divisional location. ***Plaintiff does not even allege, much less show, that Defendants were acting outside the scope of their employments***."); *McCumons v. Marougi*, No. 08-11164, 2011 WL 308960, at *4 (E.D. Mich. Jan. 27, 2011) (dismissing 42 U.S.C. § 1985(3) conspiracy claim where the plaintiff "***does not plead any facts that would suggest that the officers were acting outside the scope of their employment. Rather, he alleges they were acting to further a city policy***."); *Simpson v. Behav. Servs. of Tenn., Inc*., No. 09-2120, 2010 WL 2197816, at *5 (W.D. Tenn. May 26, 2010) (dismissing conspiracy claims under Section 1985(3) based on the intra-corporate conspiracy doctrine where the plaintiff's

---

[10] The Court did not reach the question of whether the intra-corporate conspiracy doctrine exists under 42 U.S.C. § 1985(3). As noted, however, the Sixth Circuit <u>does</u> recognize the doctrine and has applied it in the context of Section 1983 cases such as this one.

22

amended complaint "*does not allege that the individual defendants were acting outside the scope of their employment*") (emphasis added). "Even improper actions fall within the scope of employment where they are connected with the employer's business." *Saad v. City of Dearborn Heights*, No. 11-10103, 2012 WL 72244, at *3 (E.D. Mich. Jan. 10, 2012).

Importantly, Plaintiff claims that Defendants' actions in targeting her for termination and denying her religious accommodations were actions taken **to enforce UMHW policies**. (PageID.18, ¶¶ 111-114). She sums this up in paragraph 115 of the Complaint, where she states that "[o]n information and belief, Defendants Pai, Pierce, and Booker *implement and enforce the university's speech code for [UMHW]*." (emphasis added). In addition, Plaintiff claims that all five defendants participated in the decision to terminate her employment. (PageID.21, ¶ 133). Plaintiff further claims that Defendant Smith enforced that same "speech code," informed her of her termination and signed the termination letter. (PageID.17, 20, ¶¶ 106, 129). She asserts that Defendant Cole was present when she showed up for the termination meeting. (PageID.18, ¶ 109). Plaintiff also refers to the individual Defendants as UMHW's "representatives" at a meeting they had with her, which meeting is a central allegation in her Complaint. (PageID.14, 16, ¶ 84, 97).[11] Thus, Plaintiff's claims rests upon an intra-corporate conspiracy. As a result, Plaintiff's claims against the individual Defendants fail to state a claim on which relief can be granted.

---

[11] The fact that Plaintiff may not seek relief against the individual Defendants in their individual capacities further establishes that Plaintiff's claim is for an intra-corporate conspiracy. Her claims against them thus arise, if at all, from actions taken in their official capacities. Thus, when undertaking the actions alleged, they did so within the scope of their employment with Defendant UMHW. See e.g., *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) (noting that official capacity claims "represent only another way of pleading an action against an entity of which an officer is an agent."). That is why suits against individuals employed with a municipality, when named in their official capacities, are ordinarily dismissed as redundant of the plaintiff's claims against the agency itself. See e.g., *Baar v. Jefferson Cty. Bd. of Educ.*, 476 F. App'x 621, 634–36 (6th Cir. 2012); *Centaur v. Jones*, No. 3:15-CV-00449, 2017 WL 108050, (E.D. Tenn. Jan. 11, 2017).

In addition, "[i]t is well-settled that ***conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983***." *Heyne v. Metropolitan Nashville Public Schools*, 655 F. 3d 556, 563 (6th Cir. 2011) (internal quotations omitted; emphasis added). There can be nothing more ***vague and conclusory*** and lacking in supporting "material facts" than the allegations on which this claim rests, i.e., that "[o]n information and belief,. . . all Defendants shared the same anti-religious motives that Defendant Pierce made explicit during the July 29 meeting," that "[o]n information and belief, Defendants Pai, Booker, Cole, Pierce, and Smith participated in the decision to terminate Ms. Kloosterman's employment," and "[o]n information and belief, Defendants Pai, Booker, Cole, and Smith shared the anti-religious animus that Defendant Pierce made explicit during the July 29, 2021, meeting."

Plaintiff fails to allege how any of the individual Defendants (other than Dr. Pai) "participated in the decision" to terminate her employment. Further, Plaintiff's repeated reliance "on information and belief" fails to state a claim for conspiracy. See e.g., *Leon v. Murphy*, 988 F. 2d 303, 310-311 (2d Cir. 1993) (affirming summary  judgment of plaintiff's conspiracy claims where, as the district court found, the plaintiff "only [alleged] that such fraud or conspiracy existed 'on information and belief.'"); *Blantz v. Dept. of Corrections and Rehabilitation*, 727 F. 3d 917, 926-927 (9th Cir. 2013) (affirming dismissal of conspiracy claim against individual defendant where it alleged only that, "on information and belief," he had directed others to take actions which formed the basis of the complaint). And, with respect to Dr. Pai, Plaintiff does not claim that he even had contact with the other defendants. For this reason, too, all of Plaintiff's claims against Defendants fail to state claims on which relief can be granted.

Plaintiff's conspiracy claims against the individual defendants fail to state claims for yet

24

another reason: they do not allege an agreement between two or more persons to injure Plaintiff.

As the Sixth Circuit has explained, "a civil conspiracy under § 1983 requires ***an agreement***

***between two or more persons to injure another by unlawful action***." *Boxill v. O'Grady*, 935 F.

3d 510, 519 (6th Cir. 2019) (internal citations and quotations omitted; emphasis added). Plaintiff

"must plead enough facts to support a reasonable inference that there was a ***single plan***, that the

alleged coconspirator shared in the general ***conspiratorial objective,*** and that an overt act was

committed in furtherance of the conspiracy that caused injury to the complainant." *Id.* (emphasis

added).

In *Heyne, supra*, the Court affirmed dismissal of the Section 1983 conspiracy claim where

the amended complaint alleged that the individual defendants ***conferred*** with one another at

different points in the plaintiff's disciplinary process, but "it does not contain any more specific

allegations of a plan or agreement to violate his constitutional rights." The same is true here.

Plaintiff alleges that the individual Defendants "targeted" her for termination and together

"participated in the decision" to terminate her; however, just like in *Heyne*, the Complaint includes

no more ***specific*** allegations of a plan or agreement to violate Plaintiff's constitutional rights. For

this reason, too, Count I-III and VI-VIII fail to state claims against the individual Defendants and

should be dismissed.

I. **The Court Should Dismiss Counts VI through VIII for the Same Reasons Advanced in UMHW's Motion**

Separately pending before the Court is a Motion to Dismiss by UMHW. In its Motion,

Defendant UMHW seeks dismissal of Counts VI through VIII for failure to state claims on which

relief can be granted. The individual Defendants adopt and incorporate those arguments by

reference. The claims against them should be dismissed for the same reasons.

IV.    **CONCLUSION**

For the foregoing reasons, Defendants Pai, Cole, Pierce, Smith and Booker respectfully request that this Honorable Court grant their Amended Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), dismiss all of Plaintiff's claims pending against them, and grant Defendants their costs and such other relief as this Court deems proper.

HALL RENDER KILLIAN HEATH & LYMAN, PC

/s/ Jonathon A. Rabin
Jonathon A. Rabin (P57145)
Larry R. Jensen (P60137)
Attorneys for Individual Defendants
101 W. Big Beaver Road, Suite 745
Troy, MI  48084
(248) 740-7505
jrabin@hallrender.com
ljensen@hallrender.com

January 17, 2023

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

This Brief complies with the word limit of L. Civ. R. 7.2(b)(i) because, excluding the parts exempted by L. Civ. R. 7.2(b)(i), it contains 8,303 words. The word count was generated using Microsoft Word for Microsoft 365 MSO.

Respectfully submitted,

HALL RENDER KILLIAN HEATH & LYMAN, PC

/s/ Jonathon A. Rabin
Jonathon A. Rabin (P57145)
Larry R. Jensen (P60137)
Attorneys for Individual Defendants
101 W. Big Beaver Road, Suite 745
Troy, MI  48084
(248) 740-7505
jrabin@hallrender.com
ljensen@hallrender.com

January 17, 2023

4861-7385-4027v1