UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

VALERIE KLOOSTERMAN

      Plaintiffs

                                          Civil Action No. 1:22-cv-00944

v.                                  Hon. Jane M. Beckering

METROPOLITAN HOSPITAL, d/b/a
UNIVERSITY OF MICHIGAN HEALTH-WEST;
RAKESH PAI, an individual; RHAE-ANN
BOOKER, an individual; MARLA COLE, an
individual; THOMAS PIERCE, an individual; and
CATHERINE SMITH, an individual.

      Defendants.

_____

**BRIEF IN SUPPORT OF DEFENDANTS PAI, BOOKER, COLE,
PIERCE AND SMITH'S MOTION TO DISMISS PLAINTIFF'S
CORRECTED FIRST AMENDED COMPLAINT**

i

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... iii

I.   Introduction .......................................................................................................... 1

II.  Statement of Relevant Facts ................................................................................. 1

III. Statement of Law ................................................................................................. 3

   A.  The Court Should Dismiss Plaintiff's State Constitution Claims (Counts VI
       Through VIII) Against Defendants In Their Official And Individual Capacities
       Because They Are Barred By The Eleventh Amendment ................................... 3

   B.  The Court Should Dismiss Plaintiff's Section 1983 And State Constitution Claims
       (Counts I-III And VI-VIII) Because She Does Not Plead Facts That They Each
       Violated Her Constitutional Rights ................................................................... 6

      1.  Counts I, III and VIII ............................................................................... 7

      2.  Counts II, VI and VII ............................................................................... 14

   C.  The Court Should Dismiss Plaintiff's Section 1983 Claims (Counts I-III) Because
       Plaintiff Fails To State Claims For Constitutional Violations ......................... 16

      1.  Plaintiff Fails To State A Section 1983 Claim For Violating Her First Amendment
          Right To Free Exercise Of Religion (Count I) ......................................... 16

      2.  Plaintiff Fails To State A Section 1983 Claim For Violating Her First Amendment
          Rights To Free Speech (Count II) ............................................................ 20

      3.  Plaintiff Fails To State A Section 1983 Equal Protection Claim (Count III) .............. 22

   D.  The Court Should Dismiss Plaintiff's Claims For Nominal Damages In Counts I-III
       Because Section 1983 Does Not Permit Such Relief Against Them In Their Official
       Capacities And Qualified Immunity Protects Them From Nominal Damages In
       Their Individual Capacities .............................................................................. 24

      1.  No Nominal Damages Against Defendants In Their Official Capacities ................. 25

      2.  Qualified Immunity Bars Nominal Damages Against Defendants In Their Individual
          Capacities ................................................................................................ 25

         a.  Plaintiff Fails to State Claims of Constitutional Violations ...................... 26

         b.  Plaintiff Fails To State Claims That Each Individual Defendant Violated A Clearly
            Established Constitutional Right ............................................................. 26

   E.  The Court Should Dismiss All Of Plaintiff's Claims Against Defendants In Their
       Individual Capacities (In Counts I-III And VI-VIII) Because The Injunctions
       Sought Relate Only To Their Jobs And Allege Actions Taken Only In Their
       Official Capacities ............................................................................................ 28

   F.  The Court Should Dismiss Plaintiff's Requests For Injunctive Relief Against
       Defendants Booker, Cole, Pierce And Smith In Their Individual And Official
       Capacities (In Counts I-III And VI-VIII) Because Plaintiff Did Not Plead That They
       Possess The Power To Reinstate Her Or To Remedy The Other Alleged Violations ..... 30

G.    The Dismissal Of Plaintiff's Federal Claims Against Defendants For Injunctive Relief (In Counts I-III) Requires Dismissal, Pursuant To The Eleventh Amendment, Of The Same Claims Against Them In Their Official Capacities For Declaratory Relief................................................................................................................. 32

IV.    CONCLUSION.................................................................................................... 34

LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE .......................................... 35

## TABLE OF AUTHORITIES

**Cases**

*Alkire v. Irving*,
   330 F.3d 802 (6th Cir. 2003)...............................................................................28

*Amador v. Perello*,
   No. 99-650, 2000 WL 35593212 (S.D. Fla. Aug. 23, 2000) aff'd, 275 F.3d 54 (11th Cir. 2001)........................................................................................................................10

*Anderson v. Creighton*,
   483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ......................................27

*Arendale v. City of Memphis*,
   519 F.3d 587 (6th Cir. 2008)..................................................................................9

*Arizonans for Official English v. Ariz.*,
   520 U.S. 43 (1997) ..............................................................................................25

*Ashcroft v al-Kidd*,
   563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) ................................27

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......................... passim

*Bajestani v. Tennessee Valley Auth.*,
   61 F.Supp.3d 759 (E.D. Tenn. 2014) .....................................................................8

*Baughns v. Williams*,
   No. 22-0020, 2022 WL 17480357 (M.D. Ga. Nov. 10, 2022) report and recommendation adopted, No. 22-20, 2022 WL 17477920 (M.D. Ga. Dec. 6, 2022)....................................25

*Bell Atl Corp v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................22, 32

*Bellamy v. Bradley*,
   729 F.2d 416 (6th Cir. 1984)................................................................................12

*Blackwell v. City of Inkster*,
   596 F.Supp.3d 906 (E.D. Mich. 2022) .................................................................29

*Bojicic v. DeWine*,
   569 F.Supp.3d 669 (N.D. Ohio 2021) ...................................................................8

*Boler v. Earley*,
   865 F.3d 391 (6th Cir. 2017)...........................................................................4, 33

*Brown v. Strickland*,
   2010 WL 2629878 (S.D. Ohio June 28, 2010).....................................................33

*Brown v. Timmerman-Cooper*,
   2013 WL 430262 (S.D. Ohio Feb. 4, 2013) report and recommendation adopted, No. 2:10-CV-283, 2013 WL 1344857 (S.D. Ohio Apr. 2, 2013)..................................................30

*Burke v. New Mexico*,
   696 F.App'x 325 (10th Cir. 2017)........................................................................10

*Carten v. Kent State Univ.*,
   282 F.3d 391 (6th Cir. 2002)..................................................................................4

*Castro v. City of Union City*,
   No. 14-CV-00272-MEJ, 2014 WL 4063006 (N.D. Cal. Aug. 14, 2014)..............10

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993) ..................................17

*Citizens United v. Schneiderman*,
   882 F.3d 374 (2d Cir. 2018)...........................................................................11, 12

*City of Cleburne, Tex. v. Cleburne Living Ctr, Inc.,*
   473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) ......................................22

*Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd.,*
   150 F.App'x 389 (6th Cir. 2005) ...........................................................29

*Colvin v. Caruso,*
   852 F.Supp.2d 862 (W.D. Mich. 2012)...................................................25

*D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield,*
   No. 03-1026, 2012 WL 1079583 (D.N.J. Mar. 30, 2012) aff'd, 552 F.App'x 110 (3d Cir.
   2014)...............................................................................................21

*District of Columbia v. Wesby,*
   ___ U.S. ___, 138 S. Ct. 577, 199 L.Ed.2d 453 (2018) .............................27

*Does 1-7 v. Round Rock Indep. Sch. Dist.,*
   540 F.Supp.2d 735 (W.D. Tex. 2007) ....................................................25

*Duncan v. Nighbert,*
   No. 06-34, 2007 WL 2571649 (E.D. Ky. Aug. 31, 2007)............................30

*Emp. Div., Dep't. of Hum. Res. of Oregon v. Smith,*
   494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990) ..........................17

*Everson v. Leis,*
   556 F.3d 484 (6th Cir. 2009)..............................................................12

*Ex parte Young,*
   209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908) ...............................4, 5, 30, 33

*Experimental Holdings, Inc. v. Farris,*
   503 F.3d 514 (6th Cir. 2007)..................................................................5

*Fairport Int'l Expl., Inc. v. Shipwrecked Vessel Known as The Captain Lawrence,*
   105 F.3d 1078 (6th Cir. 1997)................................................................3

*Flagg v. City of Detroit,*
   715 F.3d 165 (6th Cir. 2013).................................................................13

*Follis v. State Armory Bldg. Comm'n,*
   No. 10-815, 2010 WL 1782181 (D. Minn. Mar. 29, 2010).............................3

*Ford Motor Co. v. Dep't of Treas.,*
   323 U.S. 459 (1945) ..........................................................................28

*Garcetti v. Ceballos,*
   547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) ........................20, 21

*Gay v. Cabinet for Health & Fam. Servs. Dep't for Cmty. Based Servs.,*
   No. 18-5285, 2019 WL 1338524 (6th Cir. Jan. 23, 2019) ............................29

*Gilroy v. Baldwin,*
   843 F.App'x 194 (11th Cir. 2021)......................................................10, 16

*Green v. Mansour,*
   474 U.S. 64 (1985) ............................................................................33

*Greenawalt v. Ind. Dep't of Corr.,*
   397 F.3d 587 (7th Cir. 2005)...............................................................29

*Harbin-Bey v. Rutter,*
   420 F.3d 571 (6th Cir. 2005)..............................................................22

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) .........................................................................28

*Hartman v. Thompson,*
   931 F.3d 471 (6th Cir. 2019)........................................................10, 16, 18

*HDC, LLC v. City of Ann Arbor*,
  675 F.3d 608 (6th Cir. 2012)....................................................................13

*Hearring v. Sliwowski*,
  712 F.3d 275 (6th Cir. 2013)....................................................................26

*In re Darvocet, Darvon, & Propoxyphene Products Liab. Litig.*,
  756 F.3d 917 (6th Cir. 2014)....................................................................11

*In re Ohio Execution Protocol Litig.*,
  709 F.App'x 779 (6th Cir. 2017) .............................................................4, 6

*James v. Anderson*,
  No. 12-10273, 2018 WL 6171474 (E.D. Mich. Nov. 26, 2018) .................25

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
  138 S. Ct. 2448, 201 L.Ed.2d 924 (2018) ...............................................21

*Jones v. Duncan*,
  840 F.2d 359 (6th Cir. 1988).....................................................................6

*Kennedy v. Bremerton Sch. Dist.*,
  142 S. Ct. 2407 (2022) ............................................................................20

*Kentucky v. Graham*,
  473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ............................28

*Kluge v. Brownsburg Cmty. Sch. Corp.*,
  432 F.Supp.3d 823 (S.D. Ind. 2020) ........................................................21

*Kmetz v. State Hist. Soc.*,
  304 F.Supp.2d 1108 (W.D. Wis. 2004).....................................................30

*Knisley v. Bowman*,
  656 F.Supp. 1540 (W.D. Mich. 1987) .......................................................33

*Leon v. Rockland Psychiatric Ctr.*,
  232 F.Supp.3d 420 (S.D.N.Y. 2017) ........................................................30

*Lewis v. Clarke*,
  ___ U.S. ___, 137 S.Ct. 1285, 197 L.Ed.2d 631 (2017) ..........................28

*Marshall v. Ohio Univ.*,
  No. 2:15-CV-775, 2015 WL 7254213 (S.D. Ohio Nov. 17, 2015)...............9

*Martinson v. Regents of the Univ. of Michigan*,
  No. 09-13552, 2011 WL 13124122 (E.D. Mich. Sept. 28, 2011)............4, 5

*Martinson v. Regents of Univ. of Michigan*,
  562 F.App'x 365 (6th Cir. 2014) ................................................................4

*Masterpiece Cakeshop, Ltd. v. Colorado C.R. Com'n*,
  138 S. Ct. 1719, 201 L.Ed.2d 35 (2018) .....................................17, 19, 28

*Maye v. Klee*,
  915 F.3d 1076 (6th Cir. 2019)..................................................................22

*McKinley v. Kaplan*,
  177 F.3d 1253 (11th Cir. 1999).................................................................25

*Meriwether v. Hartop*,
  992 F.3d 492 (6th Cir. 2021)..............................................................17, 20

*Mitchell v. Wachovia Corp.*,
  556 F.Supp.2d 336 (D. Del. 2008) ...........................................................11

*Moderwell v. Cuyahoga Cnty., Ohio*,
  997 F.3d 653 (6th Cir. 2021)....................................................................27

*Moniz v. Cox*,
  512 F.App'x 495 (6th Cir. 2013) .................................................................7

*Montoya v. Morgan*,
    No. 16-92, 2018 WL 4701795 (N.D. Fla. Sept. 30, 2018)............................................28

*Paterek v. Vill. of Armada, Michigan*,
    801 F.3d 630 (6th Cir. 2015)...............................................................................................23

*Pennhurst State School & Hospital v. Halderman*,
    465 U.S. 89 (1984) ...........................................................................................................5, 6

*Prater v. City of Burnside, Ky.*,
    289 F.3d 417 (6th Cir. 2002)................................................................................................8

*Radvansky v. City of Olmsted Falls*,
    395 F.3d 291 (6th Cir. 2005)..............................................................................................22

*Ross v. Michigan State Univ. Bd. of Regents*,
    837 F.Supp.2d 712 (W.D. Mich. 2011)...............................................................................8

*Rouse v. Whitmer*,
    No. 20-12308, 2022 WL 2525434 (E.D. Mich. June 13, 2022)..........................................23

*Ryan v. City of Detroit*,
    174 F.Supp.3d 964 (E.D. Mich. 2016) ..............................................................................23

*Sampson v. Town of Salisbury*,
    441 F.Supp.2d 271 (D. Mass. 2006) ..................................................................................23

*Saucier v. Katz*,
    533 U.S. 194, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001) ..............................................26, 27

*Scarbrough v. Morgan Cnty. Bd. of Educ.*,
    470 F.3d 250 (6th Cir. 2006)..............................................................................................22

*Shah v. Univ. of Toledo*,
    No. 21-581, 2021 WL 5140969 (N.D. Ohio Nov. 4, 2021), *dismissed*, No. 21-4153, 2022
    WL 17493374 (6th Cir. July 18, 2022) ..............................................................................29

*Shehee v. Luttrell*,
    199 F.3d 295 (6th Cir. 1999)..............................................................................................13

*Sims v. City of Madisonville*,
    894 F.3d 632 (5th Cir. 2018)..............................................................................................27

*Singfield v. Akron Metro. Hous. Auth.*,
    389 F.3d 555 (6th Cir. 2004)................................................................................................8

*Soto v. Flores*,
    103 F.3d 1056 (1ˢᵗ Cir. 1997) .......................................................................................23, 30

*Taylor v. Alabama*,
    95 F.Supp.2d 1297 (M.D. Ala. 2000)..................................................................................6

*Tiwari v. Friedlander*,
    26 F.4th 355 (6th Cir. 2022)...............................................................................................24

*Tri-Corp Mgmt. Co. v. Praznik*,
    33 F.App'x 742 (6th Cir. 2002) ...........................................................................................8

*Turner v. Scott*,
    119 F.3d 425 (6th Cir. 1997)..............................................................................................26

*United States Pipe & Foundry Co. v. Johnson*,
    927 F.2d 296 (6th Cir. 1991)................................................................................................5

*White v. Pauly*,
    580 U.S. 73, 137 S. Ct. 548, 196 L.Ed.2d 463 (2017) .......................................................27

*Williams v. Mehra*,
    186 F.3d 685 (6th Cir. 1999)..............................................................................................26

**Statutes**

42 U.S.C. § 18116 ...................................................................................................24
42 U.S.C. § 1983 .............................................................................................. passim

**Other Authorities**

Const. art. VIII, § 5 .................................................................................................3
First Amendment to the U.S. Constitution and Articles I, §§ 4 and 5 of the Michigan
    Constitution .................................................................................................14, 21
First and Fourteenth Amendments to the U.S. Constitution ...................................2
Restatement (Third) Of Agency § 4.06 (2006).................................................12, 16
U.S. Const. amend. XI ............................................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(1)............................................................................1, 3, 33, 34
Fed. R. Civ. P. 12(b)(6).................................................................................. passim

## I.    <u>INTRODUCTION</u>

In her Corrected First Amended Complaint ("Amended Complaint"), Plaintiff Valerie Kloosterman brings nine counts. Six of those claims seek declaratory and injunctive relief against five individual Defendants for alleged violations of the United States Constitution (under 42 U.S.C. § 1983) and the Michigan Constitution. The individual Defendants are employees of Defendant University of Michigan Health-West ("UMHW"). Plaintiff variously asserts that these Defendants committed constitutional violations by compelling her to use "biology-obscuring pronouns," denying her a religious accommodation while granting such relief to others, and terminating her employment. All of her claims seek relief from these Defendants in both their individual and official capacities.

In this Motion, all individual Defendants seek dismissal of Plaintiff's claims against them under Fed. R. Civ. P. 12(b)(1) (based on immunity provided by the Eleventh Amendment) and 12(b)(6) (for failure to state claims on which relief can be granted).

## II.    <u>STATEMENT OF RELEVANT FACTS</u>

The facts relevant to the instant Motion are derived from Plaintiff's Amended Complaint (PageID.511-574) and are recited in the Statement of Law section below. However, a summary of the claims and the parties is given here.

Plaintiff is a physician assistant formerly employed by UMHW. (PageID.515, ¶ 20). Defendant UMHW is an affiliate of the University of Michigan Health System, which is operated by the Board of Regents for the University of Michigan. (*Id.* ¶ 21).

The individual Defendants each hold positions with UMHW. (PageID.516-517, ¶¶ 25-30). Specifically, Defendant Rakesh Pai serves as President and the Medical Group & Chief Population Health Officer. (PageID.516, ¶ 26). Defendant Rhae-Ann Booker is the Vice President of Diversity, Equity, and Inclusion. (*Id.* at ¶ 27). Defendant Marla Cole serves as Director of Human

Resources. (*Id.* at ¶ 28). Defendant Thomas Pierce is the Diversity, Equity & Inclusion Program Coordinator. (*Id.* at ¶ 29). Defendant Catherine Smith is a Nurse Practitioner and a member of the Advanced Practice Providers' Council. (PageID.517, ¶ 30).

The Amended Complaint contains three counts brought under 42 U.S.C. § 1983 (Counts I-III) and three counts under the Michigan Constitution (Counts VI-VIII). The claims against them seek declaratory and injunctive relief against those defendants and in both their individual and official capacities. In addition, in Counts I-III, Plaintiff seeks nominal damages. The claims are as follows:

| Cause of Action | Claims | Defendants/Capacities in which Named | Relief Sought |
|---|---|---|---|
| Count I | First and Fourteenth Amendments: Free Exercise of Religion 42 U.S.C. § 1983 | All five individual defendants in their individual and official capacities | Declaration that Defendants violated the rights alleged; order directing Defendants to reinstate Plaintiff; injunction prohibiting future such acts by Defendants |
| Count II | First and Fourteenth Amendments: Freedom of Speech, 42 U.S.C. § 1983 | Same as above | Same as above |
| Count III | Fourteenth Amendment: Equal Protection, 42 U.S.C. § 1983 | Same as above | Same as above |
| Count VI | Michigan Constitution: Free Exercise of Religion | Same as above, plus Defendant UMHW | Same as above, plus nominal damages |
| Count VII | Michigan Constitution: Freedom of Speech | Same as above | Same as above |
| Count VIII | Michigan Constitution: Equal Protection | Same as above | Same as above |

### III. <u>STATEMENT OF LAW</u>

**Rule 12(b)(1).** Where claims are barred by immunity under the Eleventh Amendment, the court lacks subject matter jurisdiction. *Fairport Int'l Expl., Inc. v. Shipwrecked Vessel Known as The Captain Lawrence*, 105 F.3d 1078, 1082 (6th Cir. 1997).

**Rule 12(b)(6)**. In order to survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotations and citation omitted).

### A. THE COURT SHOULD DISMISS PLAINTIFF'S STATE CONSTITUTION CLAIMS (COUNTS VI THROUGH VIII) AGAINST DEFENDANTS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES BECAUSE THEY ARE BARRED BY THE ELEVENTH AMENDMENT

Defendants write first to dispose of Counts VI through VIII of Plaintiff's Amended Complaint, which allege that they all violated the Michigan Constitution and seek relief against all individual Defendants, in both their official and individual capacities. Fed. R. Civ. P. 12(b)(1).

Plaintiff's Amended Complaint alleges and concedes that Defendant UMHW is a state entity.[1] She asserts that UMHW is part of "the University of Michigan Health System (now called 'Michigan Medicine'), which in turn is operated by the University of Michigan Board of Regents."[2] (PageID.520, ¶ 48). Article VIII, Sec. 5 of the Michigan Constitution, Mich. Const. art. VIII, § 5, created the University and its Board of Regents. Further, Plaintiff alleges that each of the individual Defendants named works for UMHW. (PageID.516-517, 525, ¶¶ 25-29, 84). She

---

[1] *Follis v. State Armory Bldg. Comm'n*, No. 10-815, 2010 WL 1782181, at *1 (D. Minn. Mar. 29, 2010) ("Here, the Plaintiffs have explicitly alleged in their Complaint that the named Defendant, State Armory Building Commission, 'is an arm of a state, or state entity'"), report and recommendation adopted, No. 10-815, 2010 WL 1782178 (D. Minn. May 4, 2010).

[2] The individually-named defendants, all employees of UMHW, are also named in claims brought for alleged violations of the United States Constitution under 42 U.S.C. § 1983. (PageID.543-556). She states that all of those Defendants acted "under color of state law." (PageID.517, ¶ 30).

also alleges that the Board of Regents "has the authority to direct or to require the creation and implementation of policies at [UMHW], and has exercised that authority." (PageID.523, ¶ 71). Her claims rest largely on alleged violations of the Michigan and U.S. Constitution, which claims could not be brought unless against a state actor (and she does not claim that UMHW is a municipal government).

Under the Eleventh Amendment to the U.S. Constitution, states are generally immune from suit by private parties in federal court. The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State. U.S. Const. amend. XI.

There are generally three exceptions to this rule: (1) abrogation by Congress; (2) waiver by the State; and (3) suits against state officers for prospective relief to end an ongoing violation of *federal* law. *Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir. 2002). Plaintiff does not and cannot suggest that the first two exceptions apply in this case.

With respect to the third exception, outlined in *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), state officers may be sued in their official capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of *federal* law. *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017).

However, *state-law* claims against state officials in their individual and official capacities are barred by the Eleventh Amendment. *Martinson v. Regents of the Univ. of Michigan*, No. 09-13552, 2011 WL 13124122, at *4 (E.D. Mich. Sept. 28, 2011) (official capacity claims), aff'd sub nom. *Martinson v. Regents of Univ. of Michigan*, 562 F.App'x 365 (6th Cir. 2014); *In re Ohio Execution Protocol Litig.,* 709 F.App'x 779, 783 (6th Cir. 2017) (individual capacity claims).

In *Martinson*, the plaintiff brought various federal and state constitutional claims against the University and certain individuals acting in their official capacities. The plaintiff sought injunctive relief against those individuals. In dismissing those claims, the Court wrote:

> ***Similarly, all state law claims against the University and the individual Defendants in their official capacities are barred by the Eleventh Amendment in an action brought in federal court***. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 121 (1984) ("We concluded above that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment. We now hold that this principle applies as well to state-law claims brought into federal court under pendent jurisdiction."). *See also Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520-21 (6th Cir. 2007) (citing *Pennhurst, supra*) ("The Supreme Court has squarely held that pendent state law claims against state officials in their official capacity are barred by the Eleventh Amendment."); *Sullivan*, 2009 WL 2915787, at *6 (holding that the Eleventh Amendment also barred plaintiff's pendent state law claims against the university police officer in his official capacity) (citing *Experimental Holdings, supra*)
>
> ***This dismissal of Plaintiff's state law claims applies to all forms of relief sought, including prospective injunctive relief***, which may be available to Plaintiff in federal court on her federal claims against the individual Defendants in their official capacities under the doctrine of *Ex Parte Young*. The Supreme Court clearly embraced this conclusion in *Pennhurst*:
>
>> This need to reconcile competing interests [recognized in *Ex Parte Young*] is wholly absent, however, when a plaintiff alleges that a state official has violated state law. In such a case the entire basis for the doctrine of *Young* and *Edelman* disappears. A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. ***On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.*** Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that Young and Edelman are inapplicable in a suit against state officials on the basis of state law.
>
> *Pennhurst*, 465 U.S. at 106 (internal quotation marks and citations omitted). See also *United States Pipe & Foundry Co. v. Johnson*, 927 F.2d 296, 298-99 (6th Cir. 1991) (recognizing that ***"[t]he Supreme Court has held that the eleventh amendment prohibits federal courts from ordering state officials to conform their conduct to state law"***) (citing *Pennhurst, supra*).

*Martinson, supra* at *4-5 (emphasis added)(footnote omitted).

The same is true of Plaintiff's claims under the Michigan Constitution against Defendants in their ***individual*** capacities. *In re Ohio Execution Protocol Litig.,* 709 F.App'x at 783 ("Sovereign immunity thus bars a plaintiff from using state law to enjoin state officials from carrying out official responsibilities ***even when the officials are sued in their individual capacities*.**") (emphasis added). Accord *Taylor v. Alabama*, 95 F.Supp.2d 1297, 1321 (M.D. Ala. 2000) (citing *Pennhurst* and holding that, "as to Plaintiff's state law claims in Counts 5 and 8 against Harris in his individual capacity for injunctive relief, the court finds that he is entitled to Eleventh Amendment immunity.").

For these same reasons, this Court should dismiss Plaintiff's claims under the Michigan Constitution (Counts VI through VIII) against the individual Defendants in their official and individual capacities.

**B. THE COURT SHOULD DISMISS PLAINTIFF'S SECTION 1983 AND STATE CONSTITUTION CLAIMS (COUNTS I-III AND VI-VIII) BECAUSE SHE DOES NOT PLEAD FACTS THAT THEY EACH VIOLATED HER CONSTITUTIONAL RIGHTS**

Plaintiff's claims against the individual Defendants fail to satisfy the pleading requirements of Rule 12(b)(6). "In order to state a claim under section 1983, a plaintiff must allege two elements: (1) the plaintiff must show a deprivation of rights secured by the 'Constitution and laws' of the United States, and (2) plaintiff must show that the defendant deprived him of this federal right "under color of law." *Jones v. Duncan,* 840 F.2d 359, 360-61 (6th Cir. 1988) (emphasis added). As the Supreme Court explained in *Iqbal*, 129 S.Ct. at 1948, in order to state a claim for a constitutional tort Plaintiff must plead "***that each Government-official defendant, through the official's own individual actions, has violated the Constitution*.**" (emphasis added). Thus, where a plaintiff has named individual defendants, whether in their official capacities for injunctive relief or in their individual capacities for damages, she must "include specific factual allegations

regarding how" that defendant violated her constitutional rights. *Moniz v. Cox*, 512 F.App'x 495, 499 (6th Cir. 2013).[3]

Plaintiff's obligation to plead that **each individual defendant's actions** violated her constitutional rights carries particular importance here because, as discussed below, her constitutional tort claims each rest on a chain of events in which two defendants allegedly "recommended" the decisions at issue, two others made the decisions, and another "ratified" those decisions. Plaintiff must plead facts that **each** Defendant, in taking the alleged actions, violated her constitutional rights.

With these principles in mind, Defendants address each of Plaintiff's constitutional claims.

### 1.   Counts I, III and VIII

Counts I, III and VIII assert that Defendants violated Plaintiff's rights under the federal free exercise clause (Count I), the federal equal protection clause (Count III), and the Michigan Constitution's equal protection clause (Count VIII). (PageID.543, 554, 567). All three of these claims rest on the theory that the denial of Plaintiff's alleged request for a religious accommodation (the specific request not being identified in the Amended Complaint) resulted in her termination and was the product of disparate treatment, i.e., that Defendants would have treated "secular" accommodation requests differently than it did her own. (PageID.545-546, 554-555, 568, ¶¶ 205-206, 259-260, 348).

Plaintiff's disparate treatment theory fails to state claims on which relief can be granted because the allegations in the Amended Complaint do not reflect that each Defendant treated her differently than **similarly-situated** employees, a required element of these claims. *Singfield v.*

---

[3] While the contours of some corollary state constitutional provisions may differ from the federal ones, the basic pleading burden should not differ from that applicable to Section 1983 claims.

*Akron Metro. Hous. Auth.*, 389 F.3d 555, 566-567 (6th Cir. 2004) (equal protection disparate treatment); *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 429 (6th Cir. 2002) (free exercise claim).

Courts routinely dismiss claims under Rule 12(b)(6) where the facts alleged in the complaint do not reflect that the plaintiff was treated differently than a similarly-situated person or entity. See e.g., *Ross v. Michigan State Univ. Bd. of Regents*, 837 F.Supp.2d 712 (W.D. Mich. 2011) (plaintiff failed to state discriminatory denial of promotion claim where the individual to whom he compared himself was not given a promotion at the time he applied and was denied); *Bojicic v. DeWine*, 569 F.Supp.3d 669, 688 (N.D. Ohio 2021) (dismissing equal protection claim because the plaintiffs dance studio owners "have failed to allege any facts that would show that the essential businesses that Ohio allowed to remain open were similarly situated to their dance studios"). See also *Tri-Corp Mgmt. Co. v. Praznik*, 33 F.App'x 742, 746 (6th Cir. 2002) (affirming dismissal of equal protection claim where the plaintiff "does not make any allegations with respect to similarly situated persons, let alone an allegation that it was treated differently than similarly situated persons.").

Here, the Amended Complaint alleges that one physician did not perform breast or pelvic exams or prescribe hormones, that ***no*** providers are willing to perform toenail removals, and that some providers do not prescribe diet stimulant pills. (PageID.32, ¶¶ 144-149). However, Plaintiff does not allege that the other individuals involved were similarly-situated in all relevant aspects. *Bajestani v. Tennessee Valley Auth.*, 61 F.Supp.3d 759, 763-764 (E.D. Tenn. 2014) ("Because Plaintiff's conduct differs in highly relevant aspects from the conduct of those he argues are similarly situated to him, Plaintiff has failed to allege facts sufficient to establish the fourth element of the Title VII claim."). Although "[t]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered `similarly-situated;' . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or

herself must be similar in all of the relevant aspects." *Arendale v. City of Memphis*, 519 F.3d 587, 604 (6th Cir. 2008).

Specifically, Plaintiff does not allege that the providers to whom she compares herself sought or were given any accommodations at all, much less accommodations from the "speech code" about which she complains. She does not claim that the physician who refuses to do breast and pelvic exams, or the providers who do not prescribe diet pills, ever asked anyone for an "accommodation," much less from any of the individual Defendants here. In addition, Plaintiff is not a physician; she is a physician assistant. (PageID.511, ¶ 1). Plaintiff does not allege **when** these supposed practices began, who recommended or granted the supposed accommodations, or whether there was even a UMHW policy that from which an accommodation would be required. Nor does Plaintiff allege that she was treated differently than "all providers" (who presumably **includes** Plaintiff) who refused to remove toenails. Therefore, Plaintiff's disparate treatment claims fail to state claims on which relief can be granted.

Plaintiff's failure to allege that any of the individual Defendants were involved in these supposedly similar situations, let alone that they were even aware or recommended the supposed accommodations, also dooms her claims. See e.g., *Marshall v. Ohio Univ.*, No. 2:15-CV-775, 2015 WL 7254213, at *7 (S.D. Ohio Nov. 17, 2015) (dismissing gender discrimination claim based on selective enforcement of a policy where the plaintiff "does not allege that the determination that the presumably female student was 'not responsible' and that [plaintiff] was 'responsible' for violating the Policy was made by the same decision-maker."). In fact, Plaintiff specifically avers that "office staff" who schedule patients were aware that the one particular physician does not perform pelvic or breast exams or prescribe hormones (PageID.535, ¶¶ 144-145).

Plaintiff fails to state claims on which relief can be granted for additional reasons. In each of the three claims, Plaintiff asserts that Defendants Pierce and Smith **recommended** the denial of

her request for accommodation and her termination, that Defendants Booker and Cole **made the decision** to do so, and that Defendant Pai **ratified the decision** that "Defendants Booker and Cole made." (PageID.544, 554-555, 568, ¶¶ 198, 259, 346).

With respect to Defendants **Pierce and Smith**, the allegation that they "recommended" her termination and/or the denial of her accommodation is not a basis for Section 1983 liability. In *Hartman v. Thompson*, 931 F.3d 471, 478 (6th Cir. 2019), the Sixth Circuit held that the defendant who recommended a protest zone but did not have the legal authority to put the plaintiffs in it (which authority lay with the Executive Director), could not be liable for the free speech claim. See also *Gilroy v. Baldwin*, 843 F.App'x 194, 196 (11th Cir. 2021) ("***We've explained that a defendant is a decisionmaker subject to individual liability when he has the authority 'not merely to recommend' the plaintiff's termination, 'but to immediately effectuate' it***.") (emphasis added). See also *Amador v. Perello*, No. 99-650, 2000 WL 35593212, at \*6 (S.D. Fla. Aug. 23, 2000) (noting the plaintiff's failure to allege that individual defendant had the authority to suspend or terminate his employment was dispositive even if the job gave him authority to recommend such action), aff'd, 275 F.3d 54 (11th Cir. 2001).

As noted above, Plaintiff must allege that **each** Defendant violated her constitutional rights. *Iqbal, supra*. See also *Burke v. New Mexico*, 696 F.App'x 325, 330 (10th Cir. 2017) ("To state a plausible § 1983 equal-protection claim, a plaintiff must allege facts indicating how **each defendant was personally responsible for treating her 'differently from others similarly situated.'**") (emphasis added); *Castro v. City of Union City*, No. 14-CV-00272-MEJ, 2014 WL 4063006, at \*9 (N.D. Cal. Aug. 14, 2014) ("Plaintiff must **allege specific facts as to each defendant, showing that the defendant engaged in discriminatory or harassing conduct, that the conduct was intentional, and that the conduct was motivated by considerations of Plaintiff's membership in a protected class.**") (emphasis added).

10

Plaintiff asserts, in **_hypothetical_** form, that Defendants Pierce and Smith "**_would_**" treat differently someone seeking such secular accommodations, not that they have actually done so. (PageID.534, 546, 555, ¶¶ 139, 211, 260). *Mitchell v. Wachovia Corp.*, 556 F.Supp.2d 336, 350 (D. Del. 2008) ("Mitchell's belief that Wachovia and its employees **_would have acted differently_** had Mitchell been white or a woman, in the absence of record evidence, is based on Mitchell's speculation and is thus insufficient to prove discrimination.") (emphasis added). Plaintiff generically states, "on information and belief," that Defendants Pierce and Smith recommended the granting of unspecified "secular" accommodations (PageID.534, 546, 555, 568, ¶¶ 139, 211, 260, 348)). However, Plaintiff includes no factual allegations of that sort and does not claim that Defendants Pierce or Smith were involved in decisions relating to physicians or other providers who refused to remove toenails, conduct pelvic or breast exams, or prescribe weight loss medications.

While a plaintiff can satisfy the plausibility standard by pleading facts on "information and belief," the plaintiff "cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory. Those magic words will only make otherwise unsupported claims plausible when "'the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018). "The mere fact that someone believes something to be true does not create a plausible inference that it is true." *In re Darvocet, Darvon, & Propoxyphene Products Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014).

Certainly, Plaintiff cannot claim that the facts are peculiarly within Defendants' possession, particularly when she worked at UMHW for more than 17 years, and identify certain supposed "secular" accommodations, but not claim what role, if any, Defendants Pierce or Smith played in

11

the same. (PageID.511, 533-535 ¶¶ 1, 138-139, 145-146). See e.g., *Citizens United, supra* (rejecting conclusory allegations made on "information and belief" about past public disclosures made by Attorney General of New York where "[t]here is no reason Appellants could not find at least one inadvertent publication without any help from subpoenas, depositions, or interrogatories.").

With respect to Defendants ***Booker and Cole***, who Plaintiff claims made the decisions based on recommendations from Defendants Pierce and Smith, Plaintiff also relies on what hypothetically they "would" do differently with employees seeking secular accommodations. (PageID.534, 546, 555, ¶¶ 139, 211, 260). However, Plaintiff does not plead any facts that Defendants Booker and Cole had ever been presented with a decision on whether to grant any particular "secular" accommodation or whether to terminate an employee to whom they did not grant such an accommodation.

Plaintiff also fails to state a claim with respect to ***Defendant Pai***, who she claims "ratified" the decision. The Amended Complaint contains no facts permitting the Court to conclude that Defendant Pai was even ***aware*** that Plaintiff did not want to use patients' chosen pronouns, even if it is true that he "ratified" the decision to deny her request or terminate her employment or "ratified" the denial. "A person who has ratified is not bound by the ratification if it was made without knowledge of material facts about the act of the agent or other actor." Restatement (Third) Of Agency § 4.06 (2006).  In addition, supervisor liability under Section 1983 requires that "the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending" government employees. *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). "To prove acquiescence, it  is not enough to show that the

actor merely failed to act against misconduct of which he was aware." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Plaintiff does not plead facts that Defendant Pai implicitly authorized, approved or knowingly acquiesced in the allegedly unconstitutional decision-making.

Plaintiff's Amended Complaint also does not assert that Defendant Pai had ever been presented with a comparable situation involving employees seeking "secular" accommodations such that he could be liable for discrimination. She generically asserts that "[o]n information and belief, in signing the termination notice and enforcing the hospital's unlawful policies against Ms. Kloosterman, Defendant Pai was aware of Ms. Kloosterman's religious beliefs and acted with the motive to discriminate against her because of them." (PageID.532, ¶ 132).[4] Again, there are no factual allegations to make that assertion plausible. When a pleading includes only conclusory allegations of discriminatory intent without supporting factual allegations, it does not sufficiently state a plausible claim for relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012). It should not be lost on the Court that Plaintiff casts the same broad allegation (of course, on "information and belief") against ***all five*** defendants that they acted with "anti-religious" motivations. (PageID.532, 534, ¶¶ 131, 140). Thus, as with the other defendants, Plaintiff did not adequately plead facts that Defendant Pai's ***own actions*** violated Plaintiff's constitutional rights. *Iqbal, supra.*

In short, Counts I, III and VIII do not sufficiently allege that Defendants, Pai, Booker, Cole, Pierce and Smith ***each*** treated Plaintiff differently than a similarly-situated person outside her protected class with regard to a religious accommodation, a decision which she claims resulted in

---

[4] Curiously, elsewhere in the Amended Complaint, Plaintiff states that Defendant Pai said he had never met Ms. Kloosterman and could not identify what violation she engaged in. (PageID.532, ¶ 121).

her termination. Plaintiff also does not plead a basis for relief that the alleged ***recommendations*** of Defendants Pierce and Smith form the basis for Section 1983 liability. Nor does Plaintiff plead that Defendant Pai is liable for ***ratifying*** discrimination about which he was even aware. Accordingly, the Court should dismiss Counts I, III and VIII against all individual Defendants.

### 2.    <u>Counts II, VI and VII</u>

Counts II, VI and VII of Plaintiff's Amended Complaint allege that Defendants coerced or compelled her to use "biology-obscuring pronouns" in violation of her free speech rights under the First Amendment to the U.S. Constitution and Articles I, §§ 4 and 5 of the Michigan Constitution. (PageID.550, 563, 566, ¶¶ 237, 317, 336). Count VI includes the additional allegation that Defendants compelled her to make referrals for drugs and medical procedures which violated her religious conscience. (PageID.563, ¶ 317).

These claims appear to refer to the allegation in paragraph 113 that UMHW has a policy "to require employees to use pronouns as preferred by patients, regardless of whether they correspond with biological sex." (PageID.529). Plaintiff also claims earlier in the Amended Complaint that "the [training] module contained a requirement to affirm statements concerning sexual orientation and gender identity that her Christian faith prohibited her from affirming." (PageID.523, ¶ 74).[5]

With respect to Defendants ***Booker and Cole***, Plaintiff claims they compelled her to speak such pronouns "by denying [Plaintiff's] religious accommodation request and by making her

---

[5] The reference to compelled referrals in Count VI appears to relate to Plaintiff's belief that "it would be sinful to prescribe or give referrals for 'puberty blockers,' 'hormone therapy,' or 'gender reassignment surgery,' regardless of what medical benefit those drugs and procedures might bring. She believes likewise with respect to the use of biology-obscuring pronouns." (PageID.539, ¶ 175).

failure to speak such pronouns a basis for their decision to terminate" her employment. (PageID.550, 563, 566, ¶¶ 237, 318, 336).

However, Plaintiff's claim based on information and belief does not meet the plausibility requirement. The Amended Complaint describes a July 29, 2021 meeting between Plaintiff and representatives from both the HR and DEI Departments of UMHW: Defendants Cole (HR Director), Pierce (DEI Program Director), and Smith (member of the Advanced Practice Providers' Council). (PageID.525, ¶ 84). Plaintiff states that this meeting "focused on whether Ms. Kloosterman would use gender identity-based pronouns and be willing to refer patients for 'gender reassignment surgery.'" (PageID.525, ¶ 88). And Plaintiff avers that ***unspecified "representatives*** asked Ms. Kloosterman what she would do about pronouns on patient charts." (PageID.526, ¶ 97) (emphasis added). She does not assert that either Defendants Cole or Booker communicated to her that the alleged request was denied. Nor does Plaintiff plead facts (rather than conclusions) permitting the plausible conclusion that they (an HR Director and DEI leader) either made Plaintiff's refusal to speak patients' chosen pronouns a basis for the termination of Plaintiff's employment or that they made the decision to deny the alleged accommodation request. Therefore, the Court should dismiss Counts II, VI and VII against them.

With respect to Defendant ***Pierce***, Plaintiff claims that he compelled Plaintiff to speak "biology-obscuring pronouns" by threatening and berating her for not using them at the July 29 meeting, and by recommending that Defendants Booker and Cole deny her accommodation request and that they terminate her employment. (PageID.550-551, 563, 566, ¶¶ 237, 316, 336). Plaintiff identifies Pierce as a ***Coordinator*** for Diversity, Equity & Inclusion at UMHW. (PageID.516, ¶ 28). Plaintiff does not plausibly claim that Pierce had authority to compel her to say or do ***anything***; indeed, Plaintiff does not claim to have reported to Pierce or even that Pierce supervises anyone.

15

With respect to Defendant **Smith**, Plaintiff states that she compelled Plaintiff to "speak biology-obscuring pronouns by recommending" to Booker and Cole the denial of her accommodation request and the termination of her employment. (PageID.550-551, 563, 566, ¶¶ 237, 316, 336). However, as noted, the authority to **recommend** is not the authority to implement a decision and does not form a basis for Section 1983 liability. *Hartman, supra; Gilroy, supra*.

With respect to **Defendant Pai**, Plaintiff claims that he compelled her to speak the "biology-obscuring pronouns by ratifying the accommodation denial and termination decision of Defendants Booker and Cole," an assertion which again rests on "information and belief". (PageID.534, 550, 566, ¶¶ 139, 237, 336). Yet, the Amended Complaint contains no facts permitting the Court to conclude that Defendant Pai was **aware** that Plaintiff did not want to use patients' chosen pronouns, even if it is true that he "ratified" the decision to deny her request or terminate her employment . As noted, a ratification requires knowledge of the material facts. Restatement (Third) Of Agency § 4.06, *supra.*

In short, Counts II, VI, and VII fail to state claims on which relief can be granted. Accordingly, those claims also should be dismissed.

## C. THE COURT SHOULD DISMISS PLAINTIFF'S SECTION 1983 CLAIMS (COUNTS I-III) BECAUSE PLAINTIFF FAILS TO STATE CLAIMS FOR CONSTITUTIONAL VIOLATIONS

In Section II, Defendants explained how Counts I-III fail to state claims as to the specific individuals. In Section III, Defendants write separately to argue that Counts I-III fail to state claims on the whole.

1. <u>**Plaintiff Fails To State A Section 1983 Claim For Violating Her First Amendment Right To Free Exercise Of Religion (Count I)**</u>

16

Defendants do not dispute that the Free Exercise Clause of the First Amendment includes "the right to believe and profess whatever religious doctrine one desires." *Emp. Div., Dep't. of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 877, 110 S. Ct. 1595, 1599, 108 L. Ed. 2d 876 (1990). However, Plaintiff's failure to plead violations of this right, in accordance with principles of law, requires dismissal of Count I. As the Sixth Circuit set out in *Meriwether v. Hartop*, 992 F.3d 492, 512 (6th Cir. 2021), "laws that burden religious exercise are presumptively unconstitutional unless they are both neutral and generally applicable." "[A] law that is neutral and of general applicability need not be justified by a compelling state interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993). However, if a law is not neutral and of generally applicable, then it "must undergo the most rigorous of scrutiny." *Id*. at 546. To afford a person's protections under the Free Exercise Clause, the government is obligated "to proceed in a manner neutral toward and tolerant of [one's] religious beliefs." *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Com'n*, 138 S. Ct. 1719, 1721, 201 L.Ed.2d 35 (2018). Evaluation of governmental neutrality requires courts to "look beyond the text and scrutinize the history, context, and application of the challenged law." *Meriwether*, 992 F.3d at 512.

As the Supreme Court held in *Masterpiece,* 138 S. Ct. at 1732, a plaintiff is "entitled to a neutral decisionmaker who would give full and fair consideration to his religious objection as he sought to assert it in all of the circumstances in which this case was presented, considered, and decided." Plaintiff's hostility theory fails to state a claim on which relief can be granted because the allegations reflect that Defendants carefully considered and reviewed Plaintiff's objections with fairness.

First, the Amended Complaint claims that Defendant Pierce made express statements which were "hostile" to her religious faith. (PageID.525-526, 545, ¶¶ 90-91, 94-95, 200).

17

Specifically, Plaintiff alleges that Defendant Pierce called her "evil" and a "liar", told her she could not take the Bible to work with her, and asked her whether she knew that by using a patient's name instead of preferred pronouns, it would cause him or her to commit suicide. (PageID.525-526, ¶¶ 90, 95). As alleged, the July 29, 2021 meeting was Plaintiff's only interaction with Defendant Pierce. (PageID.525, ¶ 84). Further, as noted above, the allegation that Defendant Pierce "recommended" Plaintiff's termination and/or her denial of accommodation is insufficient to impose Section 1983 liability. *Hartman,* 931 F.3d at 478.

Second, Plaintiff makes a conclusory statement that Defendant Booker was hostile because she suggested that her "sincerely held religious beliefs equate with discrimination." (PageID.545, ¶ 200). However, the Amended Complaint demonstrates Defendant Booker's fairness and neutrality when she met with Plaintiff on July 1, 2021. (PageID.524-525, ¶¶ 82-83). The Amended Complaint lacks any indication of objection by Defendant Booker when Plaintiff "corrected" her and "explained that she had seen several LGBTQ patients during her 17 years of employment and that she would gladly continue seeing them." (PageID.524-525, ¶ 83).

Third, when Plaintiff's meeting with Defendants Cole, Pierce, and Smith on July 29, 2021 to discuss her accommodation request became "intense," Defendant Cole said that "everyone should take a breath." (PageID.525, 527, ¶¶ 84, 99). The Amended Complaint does not assert that Defendants made a decision regarding Plaintiff's accommodation request or her employment at that time. Instead, Plaintiff neither spoke nor met with Defendants until weeks later on August 24, 2021, when she received her termination notice from Defendants Cole and Smith. (PageID.527, ¶¶ 101-102, ¶ 105). There are no allegations in the Amended Complaint which connect the alleged statements or lack of statements in previous weeks to UMHW's decision to terminate Plaintiff's employment.

The disparate treatment Defendants allegedly exhibited between her and other providers who expressed their objections to procedures or referrals are also insufficient to demonstrate Defendants' hostility toward her religious beliefs. In *Masterpiece*, 138 S. Ct. at 1730, the Supreme Court examined how the Colorado Civil Rights Commission treated other bakers' who refused "to create cakes with images that conveyed disapproval of same-sex marriage, along with religious text," but found that, unlike the plaintiff bake shop owner, they "acted lawful in refusing service." *Id.* The requested cakes by the other bakers in *Masterpiece* included language, images, or messaging deemed "derogatory," "hateful," or "discriminatory." *Id.* The Supreme Court in *Masterpiece* found that the commission's treatment of the conscience-based objections at issue in the three other bakers' cases contrasted with the commission's treatment of plaintiff bake shop owner and wrote:

> The Commission ruled against Phillips in part on the theory that any message the requested wedding cake would carry would be attributed to the customer, not to the baker. Yet the Division did not address this point in any of the other cases with respect to the cakes depicting anti-gay marriage symbolism. Additionally, the Division found no violation of CADA in the other cases in part because each bakery was willing to sell other products, including those depicting Christian themes, to the prospective customers. But the Commission dismissed Phillips' willingness to sell "birthday cakes, shower cakes, [and] cookies and brownies," App. 152, to gay and lesbian customers as irrelevant.

*Id.*

Contrary to the disparate treatment demonstrated in *Masterpiece*, Plaintiff's Amended Complaint does not allege discriminatory treatment sufficient to demonstrate hostility toward her beliefs. First, unlike in *Masterpiece*, where the other bakers and bake shop owner refused to bake cakes or perform the same service, the procedures and services that Plaintiff's comparators who were allegedly accommodated for their non-religious objections are not the same as Plaintiff's request "to abstain from using biology-obscuring pronouns, prescribing cross-sex hormones, or referring for 'gender reassignment' surgeries." (PageID.548, ¶ 219). See also PageID.547, ¶ 207

("Defendants easily accommodate other medical professionals who have non-religious objections to ***far more common procedures***..." (emphasis added)). Second, nothing in the Amended Complaint states ties any of the individual Defendant's involvement to the clinic's accommodations of other providers' objections.

For the reasons given above, this Court should dismiss Count I pursuant to Rule 12(b)(6).

2. **Plaintiff Fails To State A Section 1983 Claim For Violating Her First Amendment Rights To Free Speech (Count II)**

In Count II, Plaintiff purports to bring a freedom of speech claim under the First Amendment. (See PageID.550-554, ¶¶ 234-252). However, Plaintiff has not stated a viable claim. The Sixth Circuit recognized in *Meriwether*, 992 F.3d at 503–04, that "free-speech rules apply differently when the government is doing the speaking. And that remains true even when a government employee is doing the talking." Courts evaluating a governmental employee's free speech claim employ a two-step inquiry. *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2423 (2022). First, the court examines the nature of the speech at issue, and "[i]f a public employee speaks 'pursuant to [his or her] official duties,'"[6] *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)). Second, the court must consider "whether an employee's speech interests are outweighed by 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* at 2423-2424 (quoting *Garcetti*, 547 U.S. at 417; 126. S.Ct. at 1957).

Plaintiff alleges that Defendants violated the Free Speech Clause by "compelling [her] to speak biology obscuring pronouns." (PageID.550, ¶ 236). The use of addressing patients with their preferred pronouns was part of her official duties as a physician assistant at UMHW, and not a

_____

[6] In *Kennedy*, 142 S.Ct. at 2423, the Supreme Court explained that the "Free Speech Clause generally will not shield the individual from an employer's control and discipline because that kind of speech is—for constitutional purposes at least—the government's own speech."

forum to express her personal beliefs. See *Garcetti*, 547 U.S. at 1954; 126 S. Ct. at 411 (finding that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created."); *Kluge v. Brownsburg Cmty. Sch. Corp.*, 432 F.Supp.3d 823, 837-839 (S.D. Ind. 2020) (dismissing free speech claim brought by teacher claiming that he was subject to punishment "'for refusing to communicate a school corporation-mandated ideological message regarding gender dysphoria'" because what he called the students was part of his official duties); *D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, No. 03-1026, 2012 WL 1079583, at \*22 (D.N.J. Mar. 30, 2012) ("compelled speech" claim dismissed because the plaintiff was not acting other than an employee "in the scope of his official duties"), aff'd, 552 F.App'x 110 (3d Cir. 2014). Plaintiff's objection from using patients' preferred pronouns arose after UMHW required her to complete a mandatory training module at UMHW which "contained a requirement to affirm statements concerning sexual orientation and gender identity…" (PageID.523-524, ¶¶ 74, 79-80). In *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 201 L.Ed.2d 924 (2018), the Supreme Court observed, "if the speech in question is part of an employee's official duties, the employer may insist that the employee deliver any lawful message." *Id*. at 2473.

Plaintiff also alleges that the "Defendants' speech code violates the First Amendment to the U.S. Constitution because it is content and viewpoint based, overbroad, and vague." (PageID.553, ¶ 249). As noted above, this "speech" is unprotected by the First Amendment. Moreover, the Amended Complaint fails to state a plausible claim to allow the court to make a reasonable inference that Defendants are liable here. A plaintiff is required to plead "sufficient factual matter…to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570)). Plaintiff's conclusory statement without supporting facts

that Defendants' "speech code" is a violation of the First Amendment because "it is content and viewpoint based, overbroad, and vague" (PageID.553, ¶ 249) fails to meet the plausibility standard set forth in *Iqbal and Bell Atl Corp v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

Because the Amended Complaint fails to state a claim for violation of Plaintiff's right to free speech, dismissal of Count II is required.

### 3.   Plaintiff Fails To State A Section 1983 Equal Protection Claim (Count III)

The Equal Protection Clause of the Fourteenth Amendment "embodies the principle that all persons similarly situated should be treated alike." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). In Count III, Plaintiff alleges that Defendants violated the Equal Protection Clause by (1) discriminating against her by refusing to accommodate her religious beliefs while providing numerous accommodations for other employees' non-religious preferences; and (2) their actions were "not narrowly tailored to serve a compelling governmental interest." (PageID.554-556, ¶¶ 258-261, 263).

To prevail on an equal protection claim, a plaintiff must establish that the state made a distinction which (1) burdened a fundamental right, (2) targeted a suspected class, or (3) intentionally treated one individual different from others similarly situated without any rational basis. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). In addition to differential treatment, a plaintiff alleging an equal protection violation must also establish discriminatory intent or purpose. *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019). When an action "invades a 'fundamental right,' such as speech or religious freedom, the [action] will be sustained only if it is 'suitably tailored to serve a compelling state interest.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005)(quoting *City of Cleburne, Tex. v. Cleburne Living Ctr, Inc.,* 473 U.S. 432, 440, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)).

As shown in Section II.A, Plaintiff's claim that Defendants treated her alleged accommodation request differently than others' secular accommodation requests (PageID.555, ¶ 260) is insufficient to state a plausible claim for relief. To establish an equal protection claim, plaintiff must be "similarly situated" to the comparators in "all relevant respects." *Paterek v. Vill. of Armada, Michigan*, 801 F.3d 630, 650 (6th Cir. 2015). Plaintiff fails to allege that she was treated differently than similarly situated individuals in all relevant respects.

Plaintiff's equal protection claim also fails because the Complaint fails to allege that Defendants' actions were done for a discriminatory purpose or intent. As noted, Plaintiff merely alleges that Defendants Pierce and Smith set her accommodation denial and termination in motion, Defendants Cole and Booker made the decision to deny the accommodation request and terminate Plaintiff's employment, and Defendant Pai ratified the decision. (PageID.554-555, ¶ 259). The burden for a plaintiff alleging that defendants purposefully discriminated against her in violation of the Equal Protection Clause is a "heavy one to satisfy." *Ryan v. City of Detroit*, 174 F.Supp.3d 964, 971–972 (E.D. Mich. 2016) (quoting *Sampson v. Town of Salisbury,* 441 F.Supp.2d 271, 279 (D. Mass. 2006)). The court in *Ryan* explained that "without the proverbial 'smoking gun of an overtly discriminatory statement by a decision maker, it may be very difficult to offer sufficient proof of' discriminatory purpose." *Id*. (quoting *Soto v. Flores*, 103 F.3d 1056, 1067 (1st Cir. 1997)). Here, Plaintiff alleges no smoking gun. Plaintiff merely alleges disparate treatment and knowledge by Defendants. As the court in *Ryan* found, disparate treatment and knowledge is insufficient to state a claim of discrimination. *Id*. at 974.

Plaintiff alleges that Defendants' actions of treating her differently on the basis of religion "triggers strict scrutiny." (PageID.556, ¶ 262). However, strict scrutiny review does not apply here. The court recently explained in *Rouse v. Whitmer*, No. 20-12308, 2022 WL 2525434 (E.D. Mich. June 13, 2022), that where a plaintiff's equal protection claim is based on an asserted fundamental

right to free exercise of religion, the Supreme Court has applied only a rational basis review of the equal protection claim if the same set of facts fail to state a free exercise claim. *Id*. at *12. Because the Amended Complaint fails to state a violation of Plaintiff's free exercise rights for the reasons set forth in Section III.A. above, Plaintiff's equal protection claim is subject to a rational basis review.

The Sixth Circuit held in *Tiwari v. Friedlander*, 26 F.4th 355, 361 (6th Cir. 2022), that "[r]ight or wrong, rational basis review epitomizes a light judicial touch." According to the Sixth Circuit, as long as "some plausible reason exists for the law—any plausible reason, even one that did not inspire the enacting legislators—the law must stand, no matter how unfair, unjust, or unwise the judges may see it as citizens." *Id.*

Here, there is a plausible reason for allegedly treating Plaintiff differently.  It is not only UMHW's policy to ensure that all patients have the right to impartial access to medical treatment, regardless of race, religion, sex/gender, sexual orientation, gender identity, ethnicity, age or disability, but it is also the law. Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116, prohibits any federally funded or administrated health program or activity from engaging in discrimination. UMHW's compliance with this federal law (i.e., ***not*** restricting any patient's ability to receive medically necessary care, including gender-affirming care, solely on the basis of the patient's sex assigned at birth or gender identity) required Plaintiff to accommodate patients' desires (i.e., using their preferred pronouns), and Plaintiff's refusal to do so resulted in her termination. There was a rational basis for this difference in treatment. Plaintiff's equal protection claim thereby fails to state a claim, and Count III must be dismissed.

**D. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR NOMINAL DAMAGES IN COUNTS I-III BECAUSE SECTION 1983 DOES NOT PERMIT SUCH RELIEF AGAINST THEM IN THEIR OFFICIAL CAPACITIES AND QUALIFIED IMMUNITY PROTECTS THEM FROM NOMINAL DAMAGES IN THEIR INDIVIDUAL CAPACITIES**

24

Counts I-III assert claims under Section 1983 against Defendants Pai, Booker, Cole, Pierce and Smith. (PageID.543-550, 550-554, 554-560, ¶¶ 191-233, 234-252, 253-298). These claims seek "nominal damages" from them. (PageID.550 554, 556, ¶¶ 233, 254, 265).

### 1.   No Nominal Damages Against Defendants In Their Official Capacities

In their *official* capacities, Defendants cannot be liable for nominal damages under Section 1983. *McKinley v. Kaplan*, 177 F.3d 1253, 1256 (11th Cir. 1999); *Does 1-7 v. Round Rock Indep. Sch. Dist.*, 540 F.Supp.2d 735, 746 (W.D. Tex. 2007) ("a suit for nominal  damages against a state [or state officials acting in their official capacity] is not cognizable under § 1983 and can be barred under the Eleventh Amendment." (citing *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 69 (1997)); *Baughns v. Williams*, No. 22-0020, 2022 WL 17480357, at *3 (M.D. Ga. Nov. 10, 2022) ("Section 1983 itself also precludes any official-capacity claims against Defendants for nominal damages because the state is not a person for under the meaning of § 1983"), report and recommendation adopted, No. 22-20, 2022 WL 17477920 (M.D. Ga. Dec. 6, 2022).

### 2.   Qualified Immunity Bars Nominal Damages Against Defendants In Their Individual Capacities

In Defendants' *individual* capacities, qualified immunity serves as a defense against even nominal damages. See e.g., *James v. Anderson*, No. 12-10273, 2018 WL 6171474, at *25 (E.D. Mich. Nov. 26, 2018) (finding that qualified immunity "operated as a bar to recovery of even nominal damages"); *Colvin v. Caruso*, 852 F.Supp.2d 862, 879, 870 (W.D. Mich. 2012)(ordering nominal damages against Defendants Riley and Burnett who were not entitled to qualified immunity, and dismissing the claims against other individual defendants who were entitled to qualified immunity).

The doctrine of qualified immunity shields governmental employees from individual liability under Section 1983 "insofar as their conduct does not violate clearly

established…constitutional rights of which a reasonable person would have known." *Hearring v. Sliwowski*, 712 F.3d 275, 279 (6th Cir. 2013) (internal quotations and citations omitted). Whether the uncontested facts demonstrate a constitutional violation is a question of law. *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997).

Courts analyzing qualified immunity employ a two-step inquiry. *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001).  First, the court must decide if the facts alleged or shown establish the violation of a constitutional right. *Id.* at 201. If the plaintiff has made this showing, the court must determine if the constitutional right was "clearly established" when the alleged misconduct occurred. *Id*.

To overcome qualified immunity, Plaintiff must show (1) that the individual Defendant violated Plaintiff's constitutional rights, and (2) that the constitutional right allegedly violated was clearly established. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999). Here, the answer to each of the questions of the two-prong qualified immunity is no.

### a.   Plaintiff Fails to State Claims of Constitutional Violations.

As detailed above in Sections II and III above, Plaintiff failed to state claims that the individual Defendants violated Plaintiff's constitutional rights. Thus, Plaintiff cannot satisfy the first prong of the analysis. *Saucier*, 553 U.S. at 201.

### b.   Plaintiff Fails To State Claims That Each Individual Defendant Violated A Clearly Established Constitutional Right.

Even assuming Plaintiff stated claims of constitutional violations, dismissal is nevertheless proper because she has not sufficiently alleged that the constitutional rights that each individual Defendant allegedly violated were clearly established. The Sixth Circuit recently explained Plaintiff's burden on the second part of the inquiry:

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that ***every***

26

> ***reasonable official would have understood that what he is doing violates that
> right***. *Ashcroft*, 563 U.S. at 741, 131 S.Ct. 2074 (cleaned up). ***To be clearly
> established, a legal principle must have a sufficiently clear foundation in then-
> existing precedent.*** *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577,
> 589, 199 L.Ed.2d 453 (2018). There does not need to be a case directly on point,
> but existing precedent must have placed the statutory or constitutional question
> ***beyond debate***. *Ashcroft*, 563 U.S. at 741, 131 S.Ct. 2074 (citing *Anderson v.
> Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

*Moderwell v. Cuyahoga Cnty., Ohio*, 997 F.3d 653, 659-660 (6th Cir. 2021) (internal quotations

omitted; emphasis added).

Further, the Court must consider the law "in light of the specific context of the case, not as

a broad general proposition." *Saucier*, 533 U.S. at 201. For example, a court may not deny qualified

immunity because of the general proposition that an unreasonable search or seizure violates the

Fourth Amendment. *Ashcroft v al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 2084, 179 L. Ed. 2d

1149 (2011). Instead, it must look first to Supreme Court decisions, then Sixth Circuit precedent,

then other appellate courts, and then must determine if "these precedents placed the . . .

constitutional question beyond debate." (emphasis added) *Id*. at 2083. As the Supreme Court

explained and reiterated, "the clearly established law must be 'particularized' to the facts of the

case." *White v. Pauly*, 580 U.S. 73, 79, 137 S. Ct. 548, 552, 196 L.Ed.2d 463 (2017), quoting

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987)

(emphasis added) (qualified immunity applied because the "plaintiff failed to identify a case where

an officer acting under similar circumstances as Officer White was held to have violated the Fourth

Amendment").

Plaintiff's failure to state claims for Defendants' liability based on their alleged roles in the

decision-making process (See Section II) is ***alone*** a basis to grant qualified immunity. See e.g.,

*Sims v. City of Madisonville*, 894 F.3d 632, 641 (5th Cir. 2018) (per curiam) (holding that caselaw

had not clearly established "whether First Amendment liability can attach to a public official who

did not make the final employment decision"); *Montoya v. Morgan*, No. 16-92, 2018 WL 4701795, at *17 (N.D. Fla. Sept. 30, 2018) (granting qualified immunity when Section 1983 individual liability for one who allegedly recommended demotion was not clearly established).[7]

The authority in this Brief otherwise makes clear that the individual Defendants did not, in the context of this specific case, violate a clearly established right with regard either to the Free Exercise Clause, the Free Speech Clause, or the Equal Protection Clause. Indeed, the many decisions, which predate 2021, make that abundantly clear.

Therefore, the individual Defendants are entitled to qualified immunity from Plaintiff's claims for nominal damages sought in Counts I-III and such claims should be dismissed. !

### E. THE COURT SHOULD DISMISS ALL OF PLAINTIFF'S CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES (IN COUNTS I-III AND VI-VIII) BECAUSE THE INJUNCTIONS SOUGHT RELATE ONLY TO THEIR JOBS AND ALLEGE ACTIONS TAKEN ONLY IN THEIR OFFICIAL CAPACITIES

In all three of Plaintiff's Section 1983 claims (Counts I-III) and her state constitution claims (Counts VI-VIII), she names Defendants in their individual and their official capacities. (PageID.543, 550, 554, 563, 565, 567, ¶¶ 192, 235, 254, 316, 333, 341).[8] In all six claims, Plaintiff

---

[7] Even in *Masterpiece,* no defendant was named in their ***individual*** capacity for an act of "recommending" or "ratifying" a decision. Instead, the commission was named as a body, not as individuals, for the action it took as a body.

[8] A Section 1983 claim against a person in their official capacity is, in essence, a claim against the State itself. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent"). As a result, Plaintiff's official capacity claims against the various individual defendants are essentially claims against the State. By contrast, a Section 1983 claim against a person in their ***individual*** capacity is where "the real party in interest is the individual, not the sovereign." *Lewis v. Clarke*, ___ U.S. ___, 137 S.Ct. 1285, 1291, 197 L.Ed.2d 631 (2017). Instead, individual capacity "suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Monetary relief against Defendants in their official capacities would be barred by the Eleventh Amendment. See e.g., *Ford Motor Co. v. Dep't of Treas.*, 323 U.S. 459, 464 (1945). Monetary relief against them in their individual capacities would be barred by qualified immunity. See e.g., *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

seeks relief from them in the forms of: (1) "an order against Defendants directing them to reinstate" Plaintiff; and (2) "prohibiting future such [unconstitutional] acts by Defendants." (PageID.550, 553, 556, 565, 566, 568, ¶¶ 223, 252, 265, 331, 339, 351). Requests seeking injunctive relief of that kind against state officials in their *individual* capacities are uncommon.

The Sixth Circuit and other courts have made clear that claims for injunctive relief against state officials in their *individual capacities*, which relate only the individuals' jobs, cannot be sustained. "Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, i.e., his official capacity." *Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd.*, 150 F.App'x 389, 401 (6th Cir. 2005). Accord: *Shah v. Univ. of Toledo*, No. 21-581, 2021 WL 5140969, at *11 (N.D. Ohio Nov. 4, 2021), *dismissed*, No. 21-4153, 2022 WL 17493374 (6th Cir. July 18, 2022). See also *Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) ("Section 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."); *Blackwell v. City of Inkster*, 596 F.Supp.3d 906, 923 (E.D. Mich. 2022) (dismissing claim against mayor for injunctive relief in his individual capacity because such relief could be directed against him in his official, but not his individual, capacity) (citing *Gay v. Cabinet for Health & Fam. Servs. Dep't for Cmty. Based Servs.*, No. 18-5285, 2019 WL 1338524, at *5 (6th Cir. Jan. 23, 2019) ("injunctions run against the office, not the individual")).

The same is true here. Plaintiff's requests for injunctive relief relate only to Defendants' jobs, i.e., their roles in Plaintiff's employment. Accordingly, Plaintiff's claims in Counts I-III and VI-VIII, brought for injunctive relief against Defendants in their individual capacities, should be dismissed. Fed. R.Civ. P. 12(b)(6).

**F.  THE COURT SHOULD DISMISS PLAINTIFF'S REQUESTS FOR INJUNCTIVE RELIEF AGAINST DEFENDANTS BOOKER, COLE, PIERCE AND SMITH IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES (IN COUNTS I-III AND VI-VIII) BECAUSE PLAINTIFF DID NOT PLEAD THAT THEY POSSESS THE POWER TO REINSTATE HER OR TO REMEDY THE OTHER ALLEGED VIOLATIONS**

As noted above, the claims against all five defendants seek injunctive relief in the forms of reinstatement and an order "prohibiting future such [unconstitutional] acts by Defendants." (PageID.550, 553-554, 556, 565, 566, 568, ¶¶ 223, 252, 265, 331, 339, 351).

However, Plaintiff has not pled facts that four of the five individual defendants named have the authority to reinstate her or to prohibit future conduct that would violate her rights. The latter would require them to either revise the allegedly unconstitutional policies at UMHW, or to direct others as to how they are implemented.

This omission is dispositive of Plaintiff's claims against them. *Leon v. Rockland Psychiatric Ctr.*, 232 F.Supp.3d 420, 436 (S.D.N.Y. 2017) (dismissing federal age discrimination claim seeking prospective injunctive relief against defendant Soto because "Plaintiff has not pled that she has the authority or ability to offer him a job with RPC."); *Duncan v. Nighbert*, No. 06-34, 2007 WL 2571649, at *4 (E.D. Ky. Aug. 31, 2007) ("Defendants Fletcher and Adams do not have the authority to reinstate Plaintiff to his previous position as Staff Assistant; therefore, Plaintiff's claims for injunctive relief [under Section 1983] against Defendants Adams and Fletcher fail, as they cannot provide the relief requested."); *Brown v. Timmerman-Cooper*, 2013 WL 430262, at *3 (S.D. Ohio Feb. 4, 2013) (prison officials sued in their official capacities must "possess the power or authority to remedy unconstitutional condition"), report and recommendation adopted, No. 2:10-CV-283, 2013 WL 1344857 (S.D. Ohio Apr. 2, 2013).[9]

_____

[9] In the above cases, courts analyzed the plaintiff's obligation to plead the individual defendant's authority to grant the relief requested in the context of Eleventh Amendment immunity. *Accord: Kmetz v. State Hist. Soc.*, 304 F.Supp.2d 1108, 1137 (W.D. Wis. 2004) (*Ex parte Young* "exception

In an earlier-filed Motion, the individual Defendants explained the above and sought dismissal of Plaintiff's claims against them. Instead of responding to the Motion, Plaintiff amended her Complaint. Plaintiff seems now to ***attempt*** a partial correction of this deficiency by repeated reliance on the old crutch, "[o]n information and belief." Plaintiff repeatedly recites "on information and belief" what actions the individual Defendants' supposedly took against Plaintiff. (PageID.528-528, 531-534, ¶¶ 110-111, 112-114, 129, 131, 133, 136, 138, 139, 141).

Plaintiff makes the express accusation, again "[o]n information and belief," that ***three*** of the five Defendants have broad authority: "On information and belief, Defendants ***Pai, Booker, and Cole*** have the authority to reinstate Ms. Kloosterman, to rescind the unlawful policies at issue, to ensure that the hospital's policies are not enforced or implemented in a discriminatory manner against religious employees, and to grant employees' religious accommodation requests." (PageID.534, ¶ 141) (emphasis added).[10] Plaintiff does not allege which of these three defendants can reinstate, rescind policy, ensure a non-discriminatory enforcement, and/or grant her accommodation requests.

Plaintiff's omission of Defendants Pierce and Smith from that list of individuals with authority is glaring. Plaintiff did not even attempt to claim that they have the authority to implement the relief Plaintiff seeks. All of Plaintiff's claims for injunctive relief against Defendants Pierce and Smith must be dismissed for that reason alone.

---

applies only when the state official has the authority to perform the requested act."). But, irrespective of whether the claim seeks injunctive relief against a state employee in their official or individual capacity, the key point remains the same: if an individual does not have authority implement the injunctive relief being sought, there is no basis to seek injunctive relief against them.

[10] Further, in amending her Complaint, Plaintiff ***removed*** Defendants Pierce and Smith from the allegation that all Defendants "participated in the decision to terminate" Plaintiff's employment. (Compare PageID.21, ¶133 to PageID.532, ¶ 133).

Further, the allegations that Defendants Cole and Booker, on "information and belief," can variously reinstate her, rescind the policies at issue, and ensure that the hospital's policies are not enforced or implemented in a discriminatory manner (PageID.534, ¶ 141), fail to meet the plausibility standard required by *Twombly* and *Iqbal*. A claim has facial plausibility when the pleaded factual allegations permit the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly, supra* at 556.

With regard to reinstatement, Plaintiff pleads no facts that an HR Director (Cole) or Vice President for DEI (Booker) can reinstate a terminated employee. Indeed, the Amended Complaint claims that **Defendant Pai** "made the ultimate decision to fire" Plaintiff and signed the termination letter and that Defendant Pai "bears final responsibility for the unlawful termination." (PageID.532, ¶ 120, 132). With regard to the rescinding and non-discriminatory enforcement and implementation of policies, Plaintiff again claims that Defendant Pai "implements and enforces [the alleged speech code] through his own personnel actions and through the personnel actions of his subordinates." (PageID.528, ¶ 110). Accordingly the injunctive relief sought against Defendants Cole and Booker should be dismissed.

Because Plaintiff did not plausibly allege that Defendants Cole, Booker, Pierce and Smith can reinstate her, change UMHW policies, grant her accommodations and/or direct others as to how policies should be enforced, the Court should dismiss these claims against them for injunctive relief. Fed. R.Civ. P. 12(b)(6).

**G. THE DISMISSAL OF PLAINTIFF'S FEDERAL CLAIMS AGAINST DEFENDANTS FOR INJUNCTIVE RELIEF (IN COUNTS I-III) REQUIRES DISMISSAL, PURSUANT TO THE ELEVENTH AMENDMENT, OF THE SAME CLAIMS AGAINST THEM IN THEIR OFFICIAL CAPACITIES FOR DECLARATORY RELIEF**

The dismissal of Plaintiff's federal claims for injunctive relief, for the reasons given above, requires dismissal of those same claims against defendants in their official capacities which seek

declaratory relief. That is because Plaintiff's claims for declaratory relief are retrospective in nature, only. Specifically, Plaintiff's requests for declaratory relief in all six counts against Defendants seek a "declaration that" they violated her rights under the various provisions of the Michigan and U.S. Constitutions. (PageID.530, 553-554, 556, 565, 566, 568, ¶¶ 223, 252, 265, 331, 339, 351).

As discussed above, *Ex parte Young* permits state officers to be sued in their official capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law. *Boler, supra.* However, courts have routinely held that claims for declaratory relief against state officials in their official capacities, uncoupled with claims for prospective injunctive relief, are barred by the Eleventh Amendment. See e.g., *Brown v. Strickland*, 2010 WL 2629878, at *4 (S.D. Ohio June 28, 2010) ("***a declaratory judgment against state officials declaring that they violated federal law in the past constitutes retrospective relief, and is barred by the Eleventh Amendment***") (emphasis added) (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985); *Knisley v. Bowman*, 656 F.Supp. 1540, 1554 (W.D. Mich. 1987) ("***the Court holds that the remaining claims for declaratory and "notice relief" relate to past violations of federal law and that retrospective relief for such claims is barred by the Eleventh Amendment***") (emphasis added).

As a result, dismissal of Plaintiff's claims against Defendants for injunctive relief also requires dismissal of Plaintiff's claims for declaratory relief (in Counts I-III) in their official capacities. Fed. R.Civ. P. 12(b)(1).

IV.    **CONCLUSION**

For the foregoing reasons, Defendants Pai, Cole, Pierce, Smith and Booker respectfully request that this Honorable Court grant their Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), dismiss all of Plaintiff's claims pending against them, and grant Defendants their costs and such other relief as this Court deems proper.

HALL RENDER KILLIAN HEATH & LYMAN, PC

/s/ Jonathon A. Rabin
Jonathon A. Rabin (P57145)
Larry R. Jensen (P60137)
Attorneys for Individual Defendants
101 W. Big Beaver Road, Suite 745
Troy, MI  48084
(248) 740-7505
jrabin@hallrender.com
ljensen@hallrender.com

February 20, 2023

## <u>LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE</u>

This Brief complies with the word limit of L. Civ. R. 7.2(b)(i) because, excluding the parts exempted by L. Civ. R. 7.2(b)(i), it contains 10,770 words. The word count was generated using Microsoft Word for Microsoft 365 MSO.

Respectfully submitted,

HALL RENDER KILLIAN HEATH & LYMAN, PC

/s/ Jonathon A. Rabin
Jonathon A. Rabin (P57145)
Larry R. Jensen (P60137)
Attorneys for Individual Defendants
101 W. Big Beaver Road, Suite 745
Troy, MI  48084
(248) 740-7505
jrabin@hallrender.com
ljensen@hallrender.com

February 20, 2023

4887-9098-2479v7

35