UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

VALERIE KLOOSTERMAN,

     Plaintiff,

                                     Case No. 1:22-cv-00944

v.                                   Hon. Jane M. Beckering

METROPOLITAN HOSPITAL, d/b/a
UNIVERSITY OF MICHIGAN HEALTH-WEST;
RAKESH PAI, an individual; RHAE-ANN
BOOKER, an individual; MARLA COLE, an
individual; THOMAS PIERCE, an individual; and
CATHERINE SMITH, an individual,

     Defendants.

---

**<u>BRIEF IN SUPPORT OF DEFENDANT UNIVERSITY OF MICHIGAN HEALTH WEST'S  MOTION TO DISMISS PLAINTIFF'S CORRECTED FIRST AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I. Introduction ...................................................................................................... 1

II. Statement of Relevant Facts ............................................................................ 2

III. Statement of Law ............................................................................................. 3

IV. Dismissal of Count IV (Disparate Treatment) against UMHW Is Required. ......................... 5

A. Plaintiff Cannot Establish A Prima Facie Case Of Title Vii Disparate Treatment Religious Discrimination Regarding Her Termination .............................................................. 5

2. Plaintiff Does Not Allege That She Was Treated Differently For "The Same Or Similar Conduct" Because The Complaint Makes Clear That Her Conduct And Actions Were Dissimilar To Other Alleged Comparables ....................................... 8

B. Plaintiff Cannot Establish A Prima Facie Case Of Title Vii Religious Discrimination Disparate Treatment Failure To Accommodate .................................................... 14

1. No Adverse Employment Action ................................................................... 14

2. The Accommodation Would Have Increased UMHW's Risk Of Legal Liability Or Violated Federal Or State Law ................................................................. 15

V. Dismissal of Count V (Title VII Disparate Impact) against UMHW Is Required. ................. 19

A. Plaintiff's Title Vii Disparate Impact Claim Fails Because Plaintiff Did Not Exhaust Her Administrative Remedies ......................................................................... 19

B. Plaintiff's Title Vii Disparate Impact Claim (Count V) Must Be Dismissed Because It Does Not Allege That A Specific Facially-Neutral Policy Had A Disparate Impact On Plaintiff's Protected Group ............................................................................ 20

2. Paragraph 292 Fails to State a Claim ............................................................. 22

3. All of Plaintiff's Disparate Impact Theories Suffer from An Additional Defect ........ 22

VI. Dismissal Of Plaintiff's State Constitution Claims Against UMHW (Counts VI, VII and VIII) And ELCRA Claim Against UMHW (Count IX) Are Required Because They Are Barred By the Eleventh Amendment ............................................................................ 23

VII. Dismissal of Counts VI-VIII (Plaintiff's State Constitution Claims) Are Required For The Additional Reasons That They Fail To State Claims On Which Relief Can Be Granted ............ 26

A. Dismissal Of Count Vi (State Constitution Free Exercise Claim) Is Required ........................ 27

B. Dismissal Of Count Vii (State Constitution Free Speech Claim) Is Required ......................... 28

C. Dismissal Of Count Viii (State Constitution Equal Protection Claim) Is Required ................ 29

VIII. Dismissal of Count IX (ELCRA) is Required For The Additional Reason That It Fails To State a Claim On Which Relief Can Be Granted .............................................................. 29

IX.  CONCLUSION.................................................................................................... 30

LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE ......................................................... 32

# TABLE OF AUTHORITIES

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
   727 F.3d 502, 504 (6th Cir. 2013) ............................................................................... 4

*Abick v. Michigan*,
   803 F.2d 874, 877 (6th Cir. 1986) .............................................................................. 24

*Allen v. Michigan Dep't of Corr.*,
   165 F.3d 405, 410 (6th Cir.1999) ............................................................................... 14

*Arojojoye v. Michigan Dep't of Corr.*,
   No. 14-CV-11136, 2014 WL 6612389, (E.D. Mich. Nov. 20, 2014) ...................................... 26

*Ashcroft v. Iqbal*,
   556 U.S. 662, 679 (2009) .................................................................................. 4, 5

*Assistant Deputy Wardens/Deputy Wardens Ass'n v. City of New York*, No. 14-4308, 2019 WL
   4015119, (E.D.N.Y. Aug. 26, 2019) ........................................................................... 22

*Barsoumian v. Williams*,
   29 F. Supp. 3d 303, 311 (W.D.N.Y. 2014) ..................................................................... 26

*Bd. of Trs. of Univ. of Ala. v. Garrett*,
   531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) ................................................... 25

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 557, 570 (2007) .................................................................................. 4

*Bhatia v. Chevron U.S.A., Inc.*,
   734 F.2d 1382, 1384 (9th Cir.) ................................................................................. 17

*Bostock v. Clayton Cty., Georgia*,
   140 S.Ct. 1731, 1747, 207 L.Ed.2d 218 (2020) ................................................................. 12

*Camara v. Epps Air Serv., Inc.*,
   292 F. Supp. 3d 1314, 1337–38, 2017 WL 5467153 (N.D. Ga. 2017) ......................................... 20

*Carten v. Kent State Univ.*,
   282 F.3d 391, 398 (6th Cir. 2002) .............................................................................. 24

*Chattman v. Toho Tenax Am., Inc.*,
   686 F.3d 339, 347 (6th Cir. 2012) ............................................................................... 6

*Chinn v. City Univ. of New York Sch. of L. at Queens Coll.*,
   963 F. Supp. 218, 227 (E.D.N.Y. 1997) ....................................................................... 26

*Chukwueze v. NYCERS*,
   891 F. Supp. 2d 443, 454 (S.D.N.Y. 2012) .................................................................... 14

*Comerica Bank v. Pratt*,
   2022 WL 16636441 ................................................................................. 4, 5, 11, 13

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
   406 F. Supp. 3d 1258 (M.D. Ala. 2019) *aff'd*, 6 F.4th 1247 (11th Cir. 2021) ................................. 23

*Creusere v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*,
   88 F. App'x 813, 821 (6th Cir. 2003) ........................................................................... 30

*Cruz v. Coach Stores, Inc.*,
   202 F.3d 560, 572 (2d Cir. 2000) ............................................................................... 21

*D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*,
   No. 03-1026, 2012 WL 1079583, (D.N.J. Mar. 30, 2012) aff'd, 552 F. App'x 110 (3d Cir.
   2014) ......................................................................................................... 28

*Davis v. Michigan Med. Univ. Hosp.*,
No. 18-CV-14055, 2019 WL 1746261, (E.D. Mich. Apr. 18, 2019) ..................................... 26
*Dean v. Blum*,
No. 06-3016, 2007 WL 2264615, (D. Neb. Aug. 6, 2007) ....................................................... 8
*E.E.O.C. v. Allendale Nursing Ctr.*,
996 F.Supp. 712 (W.D. Mich. 1998) .......................................................................... 17, 18
*E.E.O.C. v. Oak-Rite Mfg. Corp.*,
2001 WL 1168156, (S.D. Ind. Aug. 27, 2001) ......................................................................... 17
*EEOC v. Joe's Stone Crab, Inc.*,
220 F.3d 1263, 1273 (11th Cir. 2000) ...................................................................................... 22
*EEOC v. N. Mem'l Health Care*,
262 F. Supp. 3d 863, 867 (D. Minn. 2017) .............................................................................. 30
*EEOC v. Peoplemark, Inc.*,
732 F.3d 584, 591 (6th Cir. 2013) ..................................................................................... 20, 22
*Emery v. Michigan Dep't of C.R.*,
No. 15-11467, 2016 WL 1090429 (E.D. Mich. Mar. 21, 2016) ............................................. 26
*Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*,
494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) ......................................................... 28
*Ernst v. Rising*,
427 F.3d 351, 368 (6th Cir. 2005) ............................................................................................ 26
*Ex Parte Young*,
209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908) ................................................................. 24
*Fairport Int'l Expl., Inc. v. Shipwrecked Vessel Known as The Captain Lawrence*,
105 F.3d 1078, 1082 (6th Cir. 1997) .......................................................................................... 4
*Fields v. Doe*,
No. 06-668, 2006 WL 8442258, (S.D. Ohio Dec. 1, 2006) ..................................................... 25
*Flanagan v. Ashcroft*,
316 F.3d 728, 729-30 (7th Cir. 2003) ...................................................................................... 17
*Follis v. State Armory Bldg. Comm'n*,
No. 10-815, 2010 WL 1782181, (D. Minn. Mar. 29, 2010) .................................................... 24
*Francis v. Acosta*,
No. 16-763, 2019 WL 1858302, (D.D.C. Apr. 25, 2019) .......................................................... 7
*Francis v. Scalia*,
No. 19-5162, 2020 WL 282945 (D.C. Cir. Jan. 8, 2020) ........................................................... 8
*Freeman v. Michigan Dep't of State*,
808 F. 2d 1174 (6th Cir. 1987) ................................................................................................ 25
*Freeman v. Michigan Department of State*,
808 F.2d 1174, 1179 (6th Cir. 1987) ....................................................................................... 26
*Gaddy v. Ports Am.*,
No. 13-3322, 2015 WL 3929693, (S.D.N.Y. June 15, 2015) ............................................. 20, 22
*Garcetti v. Ceballos*,
*547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)* ................................................ 28
*Gast Mfg., Inc. v. ByoPlanet Int'l, LLC*,
2022 WL 16636451 ..................................................................................................................... 4
*Gavitt v. Born*,
835 F.3d 623, 640 (6th Cir. 2016) ................................................................................. 5, 11, 13
*Goller v. Ohio Dep't of Rehab. & Correction*,
285 F. App'x 250, 255 (6th Cir. 2008) ..................................................................................... 30

*Hall v. Dolgencorp, LLC*,
    No. 20-00012, 2020 WL 7388649, (N.D. Ala. Dec. 16, 2020) ............................................. 22
*Hayut v. State University of New York*,
    127 F. Supp. 2d 333, 340 (N.D.N.Y. 2000) ...................................................................... 25
*Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*,
    176 F.3d 921, 926 (C.A.6, 1999) ...................................................................................... 29
*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
    138 S.Ct. 2448, 201 L.Ed.2d 924 (2018) ......................................................................... 28
*Kluge v. Brownsburg Cmty. Sch. Corp.*,
    548 F.Supp.3d 814 (S.D. Ind. 2021) ................................................................................ 17
*Kocsis v. Multi-Care Mgmt., Inc.*,
    97 F.3d 876, 886 (6th Cir. 1996) ..................................................................................... 14
*Kovacevich v. Kent State Univ.*,
    224 F.3d 806, 830 (6th Cir. 2000) .................................................................................... 20
*Kubicki v. Brady*,
    829 F. Supp. 906, 910 (E.D. Mich. 1993), aff'd, 41 F.3d 1507 (6th Cir. 1994) ............... 19, 20
*Lett v. Reliable Ruskin*,
    No. 05479-A(WO), 2005 WL 2128041, (M.D. Ala. Aug. 29, 2005) .................................... 19
*Longmire v. Mich. Dep't of Corrs.*,
    No. 20-1389, 2021 WL 5352809, (6th Cir. June 9, 2021) ....................................................... 24
*Miller v. Davis*,
    123 F. Supp. 3d 924, 943-944 (E.D. Ky. 2015) ..................................................................... 27
*Mitchell v. Toledo Hosp.*,
    964 F.2d 577, 583 (6th Cir. 1992) ...................................................................................... 9
*Monserrate v. New York State Senate*,
    695 F. Supp. 2d 80, 97-98 (S.D.N.Y. 2010) ...................................................................... 26
*Myers v. City of Centerville, Ohio*,
    41 F.4th 746, 757 (6th Cir. 2022) ...................................................................................... 5
*Patane v. Clark*,
    508 F.3d 106, 112 (2d Cir. 2007) ...................................................................................... 7
*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89, 100, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984) ........................................ 25
*Perry v. Universal Med. Staffing, Inc.*,
    62 F.Supp.3d 666 (W.D. Mich. 2014) ................................................................................ 6
*Rouse v. Whitmer*,
    No. 20-12308, 2022 WL 2525434, (E.D. Mich. June 13, 2022), No. 20-CV-12308, 2022 WL
    2517241 (E.D. Mich. July 6, 2022) .................................................................................... 29
*Rumble v. Fairview Health Servs.*,
    2015 WL 1197415, (D. Minn. Mar. 16, 2015) ..................................................................... 11
*Russell v. Enter. Rent-A-Car Co. of RI*,
    160 F. Supp. 2d 239, 257 (D.R.I. 2001) ............................................................................ 20
*Seaworth v. Pearson*,
    203 F.3d 1056, 1057 (8th Cir. 2000) .................................................................................. 17
*Smith v. CommonSpirit Health*,
    37 F.4th 1160, 1165, (6th Cir. 2022) ................................................................................. 4
*State of Ohio ex rel. Manuel v. Ohio Dep't of Health*,
    810 F. Supp. 928 (S.D. Ohio 1992) .................................................................................. 25

*Sutton v. Providence St. Joseph Med. Ctr.*,
  192 F.3d 826, 830 (9th Cir. 1999).................................................................................... 17
*Tagore v. U.S.*,
  735 F.3d 324 (5th Cir. 2013)............................................................................................. 17
*Teamsters v. United States,*
  431 U. S. 324, 335-336, n.15 (1977)........................................................................... 20, 22
*Walker v. Azar*,
  No. 20CV2834FBSMG, 2020 WL 6363970, (E.D.N.Y. Oct. 29, 2020) ............................... 12
*Weber v. Leaseway Dedicated Logistics, Inc.*,
  166 F.3d 1223 (10th Cir. 1999)........................................................................................ 17
*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
  No. CV 20-1630 (JEB), 2021 WL 4033072, (D.D.C. Sept. 3, 2021) ................................... 12
*Yeager v. FirstEnergy Generation Corp.*,
  777 F.3d 362 (6th Cir. 2015).............................................................................................. 16
*Younis v. Pinnacle Airlines, Inc.*,
  610 F.3d 359, 361 (6th Cir. 2010)....................................................................................... 19

**Statutes**
20 U.S.C. § 1681 ................................................................................................................. 11
20 U.S.C. §1681(a) .......................................................................................................... 2, 11
20  U.S.C.  §1682 ............................................................................................................. 2, 11
29 U.S.C. § 794.................................................................................................................... 11
42 CFR § 482.13(b)(1)......................................................................................................... 13
42 CFR § 482.13(c)(3) ......................................................................................................... 13
42 U.S.C. § 18116 ........................................................................................................... 2, 11
42 U.S.C. § 18116(a) ........................................................................................................... 11
42 U.S.C. § 1983 ................................................................................................................. 24
42 U.S.C. § 2000d ............................................................................................................... 11
42 U.S.C. § 2000e-5(f)(1) .................................................................................................... 19
42 U.S.C. § 6101 ................................................................................................................. 11
M.C.L. § 37.2701(a) ............................................................................................................ 30

**Other Authorities**
81 Fed. Reg. at 31,467 ..................................................................................................... 2, 12
86 Fed. Reg.  27,984, 27, 985 .......................................................................................... 2, 12
86 Fed. Reg. 7023 ........................................................................................................... 2, 12
Eleventh Amendment............................................................................................................. 4
Elliott Larsen Civil Rights Act ...................................................................................... 26, 29, 30
Rehabilitation Act of 1973............................................................................................... 11, 13
The Affordable Care Act, Section 1557 ....................................................................... 2, 11, 12, 13
Title IX of the Education Amendments of 1972................................................................... 2, 12
Title VI of the Civil Rights Act of 1964.................................................................................. 11

**Rules**
Fed. R. Civ. P. 8(a)(2)............................................................................................................ 4
Federal Rule of Civil Procedure 12(b)(1). .................................................................................. 4
Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 4, 19, 30

## I.     Introduction

Defendant University of Michigan Health West ("UMHW") was clear with its former employee and physician assistant, Plaintiff Valerie Kloosterman ("Plaintiff"), that it "would ***not*** require [her] to personally provide care to a patient" that she was "not comfortable providing, whether that discomfort was due to lack of professional knowledge and experience, or personal, religious, or other ethical beliefs."  (PageID.616)  However, during those times when Plaintiff "gladly" chose to treat patients ***that she knew*** to be "lesbian, gay, or experiencing gender dysphoria,"[1] UMHW required her to follow its policies and federal law.  But Plaintiff was intentional in her refusal to provide medical treatment and services that were free from discrimination.  After Plaintiff voluntarily chose to treat patients she knew to be lesbian, gay, or experiencing gender dysphoria, she was adamant that she would: (i) ***not*** use patients' preferred pronouns; (ii) ***not*** document patients' preferred pronouns in medical records; and (iii) ***not*** refer patients to alternate providers for medical services.

Given Plaintiff's discriminatory conduct, she was not treated differently from other alleged comparables, and she cannot state a claim for failure to accommodate.  Further, Plaintiff did not exhaust her administrative remedies and has not identified a facially-neutral policy that had a disparate impact on a protected group.  Plaintiff fails to state constitutional claims under the Michigan Constitution, which are also barred by the Eleventh Amendment.

Plaintiff's disagreement with current state and federal law is evident.  However, Plaintiff's desired publicity and intent to judge UMHW in the media[2] does not equate to valid claims against UMHW and the individual Defendants.  Plaintiff's claims must be dismissed.

---

[1] PageID.521, ¶59.

[2] *See* https://www.foxnews.com/us/michigan-health-terminated-physician-assistant-religious-beliefs-serious-injustice.print wherein Plaintiff's counsel is quoted and claims (erroneously) that UMHW engaged in a "serious injustice" that violated "both federal and state law."

1

**II.    Statement of Relevant Facts**

Plaintiff is a physician assistant formerly employed by UMHW. (PageID.515, ¶20).  Defendant UMHW is an affiliate of the University of Michigan Health System, operated by the Board of Regents for the University of Michigan. (PageID.515-16, ¶21).

In May 2021, Plaintiff and other UMHW employees were required to complete mandatory training modules.  (PageID.523,¶74).  The training included certain modules related to sexual orientation and gender identity.  (PageID.523,¶74).  Plaintiff "decided to complete the training module and to explain her position to [UMHW] separately." (PageID.524, ¶79) Subsequent meetings took place with Plaintiff and UMHW representatives (PageID.524-25, ¶¶82-88) to address whether Plaintiff "would use gender identity-based pronouns and be willing to refer patients for 'gender reassignment surgery.'" (PageID.525, ¶88)   Plaintiff was reminded of UMHW's policies to ensure all patients have the right to impartial access to medical treatment, regardless of race, religion, sex/gender, sexual orientation, gender identity, ethnicity, age, or disability. (Ex. 1, Policy RM-27)  UMHW's policies are consistent with federal regulations and law, including Section 1557 of the Patient Protection and Affordable Care Act  ("ACA").[3]

---

[3] Section 1557 of the ACA prohibits UMHW from engaging in discrimination. 42 U.S.C. § 18116. And under Title IX, forbidding discrimination "on the basis of sex," (20 U.S.C. §1681(a)), federal administrative agencies may  revoke federal  funding ( 20  U.S.C. § 1682) and may  also  pursue "any other means authorized by law," including civil enforcement proceedings, debarment from doing business with the federal government, lawsuits under the False Claims Act, and even criminal penalties. *Id*.  The 2016 regulation that defined discrimination "on the basis of sex" includes "sex stereotyping" and "gender identity" (81 Fed. Reg. at 31,467) ("2016 Rule").  Section 1557's prohibition on discrimination on the basis of sex, which includes discrimination on the basis of gender identity, is confirmed by Executive Order 13,988, 86 Fed. Reg. 7023 (Jan. 20, 2021) and Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972. ("Notification") 86 Fed. Reg.  27,984, 27, 985 (May 25, 2021).   The Notification states: *"OCR will interpret and enforce Section 1557's prohibition on discrimination on the basis of sex to include: (1) discrimination on the basis of sexual orientation; and (2) discrimination on the basis of gender identity."*  And the Department of Health and Human Services' March 2, 2022, Notice and Guidance on Gender Affirming Care, Civil Rights, and Patient Privacy ("Guidance") (Doc. No. 38-1) states "[p]arents or caregivers who believe their child has been denied health care, including gender affirming care, on the basis of

2

Plaintiff's Physician Assistant Employment Agreement provides that "[e]ither party may terminate this Agreement for any reason at any time on ninety (90) days written notice to the other." (PageID.596, ¶11.d)  On August 24, 2021, to ensure compliance with federal law and regulations, Defendant UMHW triggered the 90-day termination provision. (PageID.612)

Subsequent to Plaintiff's termination she requested "documented reasons and rationale for the separation" which was provided.  (PageID.616)  UMHW "respect[s] that your personal beliefs may differ from that of the patient, and [UMHW] would never ask you to change or abandon those." (PageID.616)  And UMHW "also would not require you to personally provide care to a patient that you were not comfortable providing, whether that discomfort was due to lack of professional knowledge and experience, or personal, religious, or other ethical beliefs." (PageID.616)  UMHW's decision to separate Plaintiff's employment was based on her "refusal to provide respectful evidence-based care to [UMHW's] diverse patient population, specifically the LGBTQIA+ population."  (PageID.616)  Specifically, Plaintiff's "refusal to utilize a patient's preferred pronouns" and "refusal to provide a referral to another provider for a gender transitioning patient seeking consultation, discussion, and shared-decision making about evidence-based treatment options."  (PageID.616) Plaintiff then brought this lawsuit against UMHW and multiple individual Defendants claiming discrimination under federal and state statutes and violations of the U.S. and Michigan Constitutions.

**III.  Statement of Law**

---

that child's gender identity, may file a complaint with the OCR." *Id.*  "Similarly, federally-funded *covered entities restricting an individual's ability to receive medically necessary care,  including gender-affirming care, from their health care provider solely on the basis of their sex assigned at birth or gender identity **likely violates Section 1557.**" Id.* (emphasis added).

Federal Rule of Civil Procedure 12(b)(1) provides that where claims are barred by immunity under the Eleventh Amendment, the court lacks subject matter jurisdiction. *Fairport Int'l Expl., Inc. v. Shipwrecked Vessel Known as The Captain Lawrence*, 105 F.3d 1078, 1082 (6th Cir. 1997).

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a claim for relief in any pleading if the claim "fail[s] to state a claim upon which relief can be granted[.]" As this Court has held, to "survive a motion to dismiss under Rule 12(b)(6), a complaint must present 'enough facts to state a claim to relief that is plausible on its face.'" *Comerica Bank v. Pratt*, No. 1:21-cv-905, 2022 WL 16636441, *4 (W.D. Mich. Sept. 2, 2022)  (Slip Copy) (W.D. Mich. Sept. 2, 2022) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007).  A claim has facial plausibility:

> when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although the plausibility standard is not equivalent to a " 'probability requirement,' . . . ***it asks for more than a sheer possibility that a defendant has acted unlawfully***." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556"[W]here the well-pleaded facts do not permit the court to infer ***more than the mere possibility of misconduct,*** the complaint has alleged—***but it has not 'show[n]'—that the pleader is entitled to relief."*** *Id*. at 679. (quoting Fed. R. Civ. P. 8(a)(2)).

*Gast Mfg., Inc. v. ByoPlanet Int'l, LLC,* No. 1:21-cv-597, 2022 WL 16636451, *3 (W.D. Mich. May 5, 2022) (Slip Copy) (W.D. Mich. May 5, 2022)  "Plausibility" requires the plaintiff to "plead sufficient facts and law to allow 'the court to draw the ***reasonable inference that the defendant is liable for the misconduct alleged***. *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1165, (6th Cir. 2022) (quoting *Ashcroft, supra* at 678)  And the "plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."  *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).

"In deciding a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the non-movant and accept all well-pleaded factual allegations in the complaint as true." *Comerica Bank, supra* (citing *Myers v. City of Centerville, Ohio*, 41 F.4th 746, 757 (6th Cir. 2022)).  "'[T]he tenet that a court must accept as true all of the allegations contained in a complaint *is inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, *do not suffice*." *Comerica Bank, supra* (quoting *Iqbal* at 678)  The Court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Comerica Bank, supra* (quoting *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016)). !

## IV.   Dismissal of Count IV (Disparate Treatment) against UMHW Is Required.

UMHW did not violate Plaintiff's Title VII rights when it terminated her employment and refused to adopt her preferred accommodations.[4]  Accepting Plaintiff's Complaint as true, she first fails to allege that *others* (outside of her class) were not terminated for the same or similar conduct because she does not claim that *others* refused to refer patients to other providers.  Second, with respect to her disparate treatment failure to accommodate claim, Plaintiff does not allege an adverse employment action and her preferred accommodations, as set forth in the Complaint, would have resulted in an "undue hardship" by risking liability for violating federal law and regulations.

### A.  Plaintiff Cannot Establish A Prima Facie Case of Title VII Disparate Treatment Religious Discrimination Regarding Her Termination

---

[4] Plaintiff's assertion that Plaintiff is "protected by a federal court's permanent injunction" (*Franciscan All., Inc., v. Becerra*, 553 F.Supp.3d 361, 378 (N.D. Tex. 2021) is misplaced. (PageID.539, ¶174)  The Fifth Circuit Court's affirmation (47 F.4th 368 (5th Cir. 2022)) was filed on August 26, 2022, over a full year *after* UMHW gave notice of termination (PageID 527, ₱104)

To make out a prima facie case of disparate treatment because of Plaintiff's religious beliefs, she must establish that she: (i) was a member of a member of a protected class, (ii) suffered an adverse employment action, (iii) was qualified for the position, and (iv) was treated differently from similarly situated employees of an unprotected class *for same or similar conduct*. *Perry v. Universal Med. Staffing, Inc.*, 62 F.Supp.3d 666 (W.D. Mich. 2014); *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 347 (6th Cir. 2012)  Plaintiff's Complaint makes clear that she did not engage in the same or similar conduct.

Plaintiff's "objections" to providing certain patient care, just as other providers' preferences for providing certain patient care, were accommodated by UMHW.  (PageID.616)  UMHW did not, and "would not require [Plaintiff] to personally provide care to a patient" that she was "not comfortable providing, whether that discomfort was due to lack of professional knowledge and experience, or personal, religious, or other ethical beliefs."  (PageID.616)  If Plaintiff objected to treating certain patients, that decision was accepted and Plaintiff was ***not*** forced, coerced or mandated to treat any such patient.  While Plaintiff may have been similar to other providers who also expressed preferences,[5] she does not allege that she was similar in terms of her conduct because once she engaged with patients and treatment began, Plaintiff's "actions and refusals fundamentally alter[ed] the nature of the services" UMHW was lawfully obligated to provide. (PageID.616)

### 1. Plaintiff Does Not Allege That Employees With Different "Religious Beliefs" Were Treated Differently

As noted, Count IV includes a claim of discriminatory termination. However, the claim rests on the allegation that Plaintiff was terminated because of her religious beliefs, which she refers to

---

[5] Plaintiff does ***not*** allege that providers to whom she compares herself sought any accommodations at all.

variously as "religious beliefs about gender and sexuality" and "biblically-based, traditional Christian beliefs that God created humans in His image as male and female, and that male and female are defined by biological difference between the sexes." (PageID.558, 557, ¶¶279, 274). In other words, Plaintiff's claim is not that she was terminated for being Christian, but because she holds particular beliefs based on her biblical interpretation. Plaintiff's narrow definition of her alleged protected classification therefore confines her claim very narrowly.

Plaintiff does not claim that *any* employee who held opposing or contrary biblical religious beliefs about the "biological differences between the sexes" were not terminated for the same or similar conduct. Indeed, the Complaint contains *no allegations at all* about the religious beliefs held by anyone to whom she compares herself, let alone that UMHW was aware of such individuals' contrary religious beliefs about gender identity.[6] Therefore, Plaintiff cannot establish the fundamental component of a prima facie case of discrimination that she was treated differently than someone outside of her very narrowly-defined protected class. *See e.g., Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (affirming dismissal of gender-based discrimination claim where, among other things, complaint contained no allegation that male employees were given preferential treatment when compared to Plaintiff); *Francis v. Acosta*, No. 16-763, 2019 WL 1858302, at *8 (D.D.C. Apr. 25, 2019) (dismissing discrimination claim where the plaintiff failed to identify comparable employees of different races, gender, national origin, or age who were treated more favorably because "[s]uch facts are the *sine qua non* of a claim of disparate treatment based on protected status,…"), aff'd sub nom. *Francis v. Scalia*, No. 19-5162, 2020 WL 282945

---

[6] Elsewhere in Plaintiff's Complaint, Plaintiff asserts that UMHW was willing to accommodate the "nonreligious personal and medical objections" of certain providers but not her own religious objections. (PageID.534, ¶142). However, Plaintiff never states whether those individuals shared or opposed her religious beliefs. Nor does Plaintiff allege that their beliefs – religious or otherwise - were inconsistent with her belief that persons born biologically as males must always be referred to as males.

(D.C. Cir. Jan. 8, 2020); *Dean v. Blum*, No. 06-3016, 2007 WL 2264615, at \*7 (D. Neb. Aug. 6, 2007) (dismissing equal protection discrimination claim where, the plaintiff "contains no allegation that those worshiping the Ma'at religion were singled out for unfair treatment as compared to those practicing other religions in the prison."). For this reason alone, the Court must dismiss Plaintiff's discriminatory termination claim.

> **2. Plaintiff Does Not Allege That She Was Treated Differently For "The Same Or Similar Conduct" Because The Complaint Makes Clear That Her Conduct And Actions Were Dissimilar To Other Alleged Comparables**

Plaintiff admits that she "gladly served people of all beliefs and backgrounds and was committed to giving the best possible care to all her patients, ***including those who identified as lesbian, gay, or experiencing gender dysphoria.***" (PageID.521, ¶59)  And Plaintiff "provided ongoing care for approximately a dozen patients ***whom she knew to identify as lesbian***." (PageID.521, ¶60)  Plaintiff  does not claim that she requested an alternate schedule to avoid providing care to gay or lesbian patients who may seek "puberty blockers," "hormone therapy," or "gender assignment surgery."  (PageID.536, ¶152)  It is only ***after*** Plaintiff choose to engage and provide medical treatment to such patients that she attempted to "fundamentally alter" the nature of these services and engage in conduct that was NOT the same or similar to other providers. (PageID.616)   Thus, Plaintiff's allegation is that she: (i) engaged with patients that would necessarily require referrals to other providers; AND THEN (ii) refused those patients' specific requests and/or refused to make referrals to other providers.

To be deemed "similarly-situated," the individuals with whom Plaintiff seeks to compare her treatment generally "must have dealt with the same supervisor, have been subject to the same standards, ***and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish [her] conduct or [UMHW's] treatment of them for it.***"

*Mitchell v. Toledo Hosp*., 964 F.2d 577, 583 (6th Cir. 1992) (emphasis added). [7]  Plaintiff admits in her Complaint that she would ***not*** use patients' preferred pronouns[8] and would ***not*** document in medical records using patients' preferred pronouns.[9]  Plaintiff also admits that ***after*** she voluntarily chose to treat patients ***whom she knew*** to identify as lesbian, and other patients who may seek "puberty blockers," "hormone therapy," or "gender assignment surgery,"[10] ***she then refused*** to refer patients to other providers if she became uncomfortable or found objection.[11]

Plaintiff's "objections" to these actions came only AFTER she was engaged in ongoing care with patients ***that she knew*** were "lesbian, gay, or experiencing gender dysphoria." (PageID.521, ¶59-60)   Plaintiff's actions in this regard are NOT the same or similar to anyone else as alleged. The other providers to whom Plaintiff improperly compares herself did not, in the Corrected First Amended Complaint, (i) engage with a patient that would necessarily require referrals to other providers; AND THEN (ii) subsequently refuse those patients' specific requests and/or refuse to make medical referrals to other providers.[12]

Courts routinely dismiss complaints for failure to state a claim where the facts alleged in the

---

[7] *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 566-567 (6th Cir. 2004); *Prater v. City of Burnside, Ky*., 289 F.3d 417, 429 (6th Cir. 2002).

[8] See PageID.518, ¶39, "Ms. Kloosterman believes that she must not speak against these truths by using pronouns [ ]."

[9] See PageID.519, ¶46, "Ms. Kloosterman's medical judgment also counsels against entering in documentation pronouns [ ]."  (See also PageID.616)

[10] PageID.521, ¶60 and PageID.536, ¶152.

[11] PageID.520, ¶47, "Ms. Kloosterman believes that it would be dishonest and sinful to violate her conscience and Hippocratic oath by acting against her medical judgment to prescribe ***or to refer patients*** for 'puberty blockers,' 'hormone therapy,' or 'gender reassignment surgery,' ***or by entering in documentation pronouns*** that obscure or misrepresent a patient's biological sex." (emphasis added).

[12] "None of the providers at the clinic are willing to perform toenail removals. The office staff directs patients with toenail-removal needs directly to a podiatrist."  PageID.535, ¶144; Dr. Kogut "is a male doctor who does not perform female pelvic exams, breast exams, or prescribe hormones. [ ]  The office staff knows about his objection and will often schedule female patients to meet with him for their physical but then to meet with a female provider for their pelvic and/or breast exam." PageID.535, ¶145-46)

9

complaint do not reflect that the plaintiff was treated differently than a similarly-situated person or entity. *See e.g., Ross v. Michigan State Univ. Bd. of Regents*, 837 F.Supp.2d 712 (W.D. Mich. 2011) (plaintiff failed to state discriminatory denial of promotion claim where the individual to whom he compared himself was not given a promotion at the time he applied and was denied); *Bojicic v. DeWine*, 569 F.Supp.3d 669, 688 (N.D. Ohio 2021) (dismissing equal protection claim under Rule 12(b)(6) because the plaintiffs dance studio owners "have failed to allege any facts that would show that the essential businesses that Ohio allowed to remain open were similarly situated to their dance studios"); *Ctr. for Cmty. Just. & Advoc. v. RBS Citizens, NA*, 776 F.Supp.2d 460, 468 (E.D. Mich. 2011) (dismissing federal housing discrimination claim because the plaintiff did not allege that the facts involving an allegedly similar situation involving a white client were comparable). And when other individuals' conduct is not of a "comparable seriousness," a prima facie case of religious discrimination cannot be made. *See Bolden v. Lowes Home Centers, LLC*, 783 F.App'x 589, 593-97 (6th Cir. 2019)(affirming district court's dismissal of Title VII religious discrimination claim, among others, brought by former employee who was not similarly situated to an employee who detained a shoplifter, but did not leave the store, and another who pursued a shoplifter outside, but "halted just outside the door before the 'yellow lines,' and went no further until he contacted a loss-prevention manager.") In this case, Plaintiff's conduct and actions— first engaging in treatment of patients ***that she knew*** to be "lesbian, gay, or experiencing gender dysphoria" ***and then*** subsequently refusing to: (i) use patients' preferred pronouns; (ii) document patients' preferred pronouns in medical records; and (iii) refer patients to alternate providers— is dissimilar to any other alleged conduct as set forth in the Complaint.

3. **Plaintiff Was Not Treated Differently For "The Same Or Similar Conduct" Because Plaintiff's Continued Conduct And Actions (Unlike Any Other Providers) Would Have Increased UMHW's Risk Of Legal Liability Or Violated Federal Law or Regulations**

Plaintiff's distinguishable action and conduct— first engaging in treatment of patients that she

10

knew to be "lesbian, gay, or experiencing gender dysphoria" and then refusing to: (i) use patients' preferred pronouns; (ii) document patients' preferred pronouns in medical records; and (iii) refer patients to alternate providers— is dissimilar to any other providers' actions because only her actions likely would subject UMHW to violation of federal law and regulations.

To be clear, it is not only UMHW's policy to ensure all patients have the right to impartial access to medical treatment, regardless of race, religion, sex/gender, sexual orientation, gender identity, ethnicity, age, or disability (Ex. 1, Policy RM-27), but it's also the law.[13] Section 1557 of The Affordable Care Act ("ACA") prohibits federally funded or administered health programs or activity from engaging in discrimination. 42 U.S.C. § 18116.[14] Of particular importance to this case is Title IX, forbidding discrimination "on the basis of sex."[15] Under Title IX, administrative agencies may revoke federal funding for an offending health program or activity.[16] Agencies may also pursue "any other means authorized by law," including civil enforcement proceedings, debarment from doing business with the federal government, lawsuits under the False Claims Act, and even criminal penalties. *Id.* In addition, Section 1557 supports a private right of action for damages and attorney's fees.[17] Thus, UMHW's failure to comply with federal law and

---

[13] Plaintiff references UMHW's "policies" more than twenty times in her Corrected First Amended Complaint. The Court may consider records and materials "so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *See Comerica Bank, supra* (quoting *Gavitt v. Born* at 640).

[14] The grounds for discrimination are set forth in four preexisting civil rights statutes: (1) Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) (prohibiting discrimination based on race, color, or national origin); (2) Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.) (prosecuting discrimination based on sex); (3) the Age Discrimination Act of 1975 (42 U.S.C. § 6101 et seq.) (prohibiting discrimination based on age); and (4) the Rehabilitation Act of 1973 (29 U.S.C. § 794) (prohibits discrimination based on disability). Section 1557 also adopts the enforcement mechanisms available under each incorporated statute. 42 U.S.C. § 18116(a).

[15] 20 U.S.C. § 1681(a).

[16] 20 U.S.C. § 1682.

[17] *See Rumble v. Fairview Health Servs.*, No. 14-CV-2037 (SRN/FLN), 2015 WL 1197415, at *7 n.3 (D. Minn. Mar. 16, 2015).

regulations  (through Plaintiff's actions or inactions) may subject it to a variety of civil and even criminal actions.

The 2016 regulation that defined discrimination "on the basis of sex" to include "sex stereotyping" and "gender identity," as promulgated by the Department of Health and Human Services ("HHS") (81 Fed. Reg. at 31,467 ("2016 Rule")) has been subject to much history, subsequent order and interpretation.[18]  However, there is no dispute that UMHW, as a federally funded covered entity restricting an individual's ability to receive medically necessary care, including gender-affirming care, from their health care provider solely on the basis of their sex assigned at birth or gender identity, would likely violate Section 1557.

Section 1557's prohibition against discrimination on the basis of sex, which includes discrimination on the basis of gender identity, is confirmed by Executive Order 13,988, 86 Fed. Reg. 7023 (Jan. 20, 2021) and Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972. ("Notification") 86 Fed. Reg.  27,984, 27, 985 (May 25, 2021). The Notification stated: ***"OCR will interpret and enforce Section 1557's prohibition on discrimination on the basis of sex to include: (1) discrimination on the basis of sexual orientation; and (2) discrimination on the basis of gender identity***." (emphasis added).

Finally, on March 2, 2022, HHS issued Notice and Guidance on Gender Affirming Care, Civil Rights, and Patient Privacy ("Guidance").  Doc. No. 38-1.  The Guidance notes "[p]arents or

---

[18] See *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1747 (2020) ("discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex."); *Walker v. Azar*, No. 20CV2834FBSMG, 2020 WL 6363970, at *1 (E.D.N.Y. Oct. 29, 2020) ("The definitions of 'on the basis of sex,' 'gender identity,' and 'sex stereotyping' currently set forth in 45 C.F.R. §92.4 will remain in effect."); *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. CV 20-1630 (JEB), 2021 WL 4033072, at *2 (D.D.C. Sept. 3, 2021) ("In its September 2, 2020, preliminary-injunction Opinion, the Court barred HHS from "enforcing the repeal of the 2016 Rule's of discrimination '[o]n the basis of sex' insofar as it includes 'discrimination on the basis of ... sex stereotyping.'")

12

caregivers who believe their child has been denied health care, including gender affirming care, on the basis of that child's gender identity, may file a complaint with the OCR." *Id.*  "Similarly, federally-funded ***covered entities restricting an individual's ability to receive medically necessary care, including gender-affirming care, from their health care provider solely on the basis of their sex assigned at birth or gender identity likely violates Section 1557." Id.*

UMHW's policies include Patient Rights and Responsibilities, RM-27 (Ex. 1, p.1) which are consistent with federal law and provide in relevant part that UMHW "respects, supports and protects the basic human, civil, constitutional, and statutory rights of each patient."[19]  Consistent with federal law, it is the policy of UMHW "not to discriminate on the basis of race, religion, sex/gender, sexual orientation, gender identity, ethnicity, age, or disability." (Ex. 1, p. 1)   All patients at UMHW are provided "[i]mpartial access to treatment, regardless of race, religion, sex/gender, sexual orientation, gender identity, ethnicity, age, or disability" and the right to "[e]xercise his/her rights while receiving care or treatment in the hospital without coercion, discrimination or retaliation."  (Ex. 1, p. 3)  Further, all UMHW patients have "[t]he right to participate in the development and implementation of his or her plan of care"[20] (Ex. 1, p. 3) and also "[t]he right to be free from all forms of abuse or harassment."[21]  (Ex. 1, p. 3)  This is why UMHW patients have the option to disclose their sexual orientation and gender identity as part of their Medical Record forms during treatment. If UMHW patients decide to disclose this information to UMHW, it is viewed by providers and becomes part of patients' Medical Record

---

[19]Plaintiff references UMHW's "policies" more than twenty times in her Complaint. The Court may consider records and materials "so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *See Comerica Bank, supra* (quoting *Gavitt v. Born* at 640).

[20] 42 CFR § 482.13(b)(1)

[21] 42 CFR § 482.13(c)(3)  And in the event of a complaint or grievance regarding patient care, UMHW patients may contact the Patient Relations Coordinator and also examine "Section 1557 of the Affordable Care Act, Section 504 of the Rehabilitation Act, and their implementing regulations."  (Ex. 1, p. 6)

(Ex. 2, Patient Policy Flyer)

When UMHW patients identify and select their sexual orientation and gender identity as part of their medical treatment, and that information becomes part of their Medical Record, Plaintiff's refusal to use patients' preferred pronouns, and refusal to document patients' preferred pronouns in the Medical Record violates UMHW policies and likely federal law.  Plaintiff's refusals interfered with patients' rights to participate in their plan for medical care, and also interfered with patients' rights to receive treatment in the hospital without coercion, discrimination or harassment. Plaintiff's refusal "to provide respectful evidence-based care to [UMHW's] diverse patient population" (PageID.616) increased UMHW's risk for liability.

Other alleged comparable providers, including those who allegedly have preferences for avoiding "hemorrhoid removals"; "toenail-removal needs"; "female pelvic exams, breast exams"; or prescribing hormones, do not increase UMHW's potential for liability when voluntarily choosing to not perform treatment.  (PageID.535, ¶143-145) For this reason, Plaintiff does not allege that she was comparable to other providers and treated differently as a result.

### B. Plaintiff Cannot Establish A Prima Facie Case of Title VII Religious Discrimination Disparate Treatment Failure To Accommodate

#### 1.    No Adverse Employment Action

Plaintiff's claim that UMHW discriminated against her by failing to grant accommodations does not allege an adverse employment action, one of the required elements of a Title VII claim. An adverse employment action under Sixth Circuit authority is a "materially adverse change in the terms or conditions of employment because of the employer's actions." *Allen v. Michigan Dep't of Corr.*, 165 F.3d 405, 410 (6th Cir.1999) (quotation marks omitted). It "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 886 (6th Cir. 1996). Thus, in *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 454 (S.D.N.Y. 2012), the Court dismissed the plaintiff's claim that his employer failed to grant him

religious accommodations in the form of days off. The Court found that such a claim did not amount to an adverse employment action. Plaintiff's allegations that she was denied religious accommodation therefore cannot survive as a claim separate and distinct from her claim of disparate treatment with regard to her termination and must be dismissed.

### 2. The Accommodation Would Have Increased UMHW's Risk Of Legal Liability Or Violated Federal Or State Law

Plaintiff cannot state a prima facie case of Title VII disparate treatment failure to accommodate because accommodating her religious beliefs would have increased UMHW's risk of legal liability or required UMHW to violate federal law or regulation.  This increased potential for risk creates an "undue hardship" for which UMHW is not required to accommodate.

Each patient at UMHW has the right to impartial access to treatment, regardless of race, religion, sex/gender, sexual orientation, gender identity, ethnicity, age, or disability. (Ex. 1, Policy RM-27) Among the lawful steps that UMHW has taken to date to help ensure LGBTQIA+ patients' healthcare needs are met include creating space in MyChart patient-access portal for individuals to note their sexual orientation and personal pronoun information during eCheck-In; and implementing sexual orientation and gender identity ("SOGI") data collect in the Electronic Medical Record (EMR), including the name the patient would like to be called (if different from legal name), personal pronouns, sexual  orientation, gender identity, transition status/transition planning as well as an organ inventory.[22] Health providers (including Plaintiff when she was employed) view this information for purposes of attempting to meet patients' healthcare needs and ensure compliance with state and federal law.  Responses to SOGI questions are recorded and become part of patients' medical records. This information is confidential and protected by law,

---

[22] Adolescent and adult patients at UMHW, regardless of age, gender, race, martial status, income level, etc., are asked questions regarding their sexual orientation and gender identity (SOGI).

just like all other health information.

It is undisputed that Plaintiff was not obligated to meet or treat patients if she was not comfortable providing treatment to such patients.  (PageID.616)  But, as a provider who provided "ongoing care for approximately a dozen patients whom she knew to identify as lesbian," and "gladly served" patients identifying as "lesbian, gay, or experiencing gender dysphoria," (PageID.521, ¶59, 60)  Plaintiff was obligated to comply with federal law and regulations and not increase UMHW's potential for risk of liability when treating such patients.

Instead of adhering to federal law when treating such patients (that she voluntarily chose to treat), Plaintiff allegedly proposed accommodations of (i) UMHW "posting a notice that welcomes patients who missed any requested services to call the Wyoming or Ann Arbor hospitals for assistance" and (ii) permitting Plaintiff to use "patients' names rather then [ ] pronouns" of a patient's choosing. (PageID.536, ¶153)

Accommodating Plaintiff by knowingly authorizing her to "miss" requested services from patients despite their pleas, and instead post a notice somewhere in the office, is an increased risk of potential liability for UMHW or violates federal law.  Further, knowingly authorizing Plaintiff to ignore patients' preferred pronouns, which is health data incorporated into patients' Electronic Medical Record (EMR), also is an increased risk of potential liability.  Knowingly "missing" requested medical treatment and/or refusing to refer patients to other providers for such treatment as "puberty blockers," "hormone therapy" or "gender reassignment surgery," Plaintiff increases the potential risk of liability for UMHW.

Courts are clear that Title VII religious discrimination failure to accommodate claims cannot be established when a defendant employer is placed in the position of accommodating a request *that places it on the "razor's edge" of increasing its risk of legal liability or violating federal or state law*.  *See Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015) ("every

16

circuit to consider the issue" has held "that Title VII does not require an employer to reasonably accommodate an employee's religious beliefs if such accommodation would violate a federal statute."); *E.E.O.C. v. Allendale Nursing Ctr.*, 996 F.Supp. 712 (W.D. Mich. 1998) (former employee "did not show that her religious beliefs conflicted with employment requirement for purposes of prima facie case of Title VII religious discrimination, where employer was simply complying with IRS requirements and could be subject to penalties for failure to do so.")[23]

Plaintiff cannot allege that her actions or inactions (***not*** using patients' preferred pronouns[24]; ***not*** documenting in medical records patients' preferred pronouns[25]; and ***refusing*** to refer patients

---

[23] *Tagore v. U.S.*, 735 F.3d 324 (5th Cir. 2013) (employer need not accommodate an employee's religious practice, and "cannot be deemed legally responsible for discriminating" when making such accommodation would place the employer "in the position of violating federal law.")*; Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999) ("[C]ourts agree that an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law."); *Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1384 (9th Cir. 1984) (employer established that if it were to retain employee and provide accommodation, it "would risk liability for violating California Occupational Safety and Health Administration standards."); *Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000) (defendant need not accommodate plaintiff's religious beliefs when doing so would require defendant to violate federal law, which creates an undue hardship); *Flanagan v. Ashcroft*, 316 F.3d 728, 729-30 (7th Cir. 2003) (employers cannot be place in the position of ignoring complaints of sexual harassment and face Title VII liability if the complaints are meritorious, or investigate them thoroughly and face discrimination claims from the targeted employees); *Weber v. Leaseway Dedicated Logistics, Inc.*, 166 F.3d 1223 (10th Cir. 1999)(unpublished) ("to require an employer to subject itself to potential fines also results in undue hardship."); *Kluge v. Brownsburg Cmty. Sch. Corp.*, 548 F.Supp.3d 814, 846 (S.D. Ind. 2021) (employer "demonstrated as a matter of law that it cannot accommodate" employee's "religious belief against referring to transgender students using their preferred names and pronouns without incurring undue hardship." Permitting continued use of names instead of preferred pronouns "could potentially have subjected [employer] to a Title IX discrimination lawsuit." "Whether such lawsuit would ultimately have been successful is not for the Court to decide." "The increased risk of liability also constitutes an undue hardship that Title VII does not require [the employer] to bear."); and *E.E.O.C. v. Oak-Rite Mfg. Corp.*, No. IP99-1962-C-H/G, 2001 WL 1168156, at *10 (S.D. Ind. Aug. 27, 2001) (undue hardship is established by showing "that the proposed accommodation would either cause or increase . . . the risk of legal liability for the employer").

[24] See PageID.518, ¶39, "Ms. Kloosterman believes that she must not speak against these truths by using pronouns [ ]."

[25] See PageID.519, ¶46, "Ms. Kloosterman's medical judgment also counsels against entering in documentation pronouns [ ]."

17

to other providers[26]) did ***not*** increase the risk of legal liability for UMHW. Plaintiff violated UMHW's policies and increased its risk of liability.  Under *E.E.O.C. v. Allendale Nursing Ctr.*, *supra*, Plaintiff in this case has also "failed to establish a prima facie case of religious discrimination."

### 3.    Plaintiff Was Not Similarly Situated Because She Does Not Allege That Other Providers To Whom She Attempts To Compare Herself Made Any Requests For Accommodation

Plaintiff was also not treated differently, for the same or similar conduct, because she does not allege that the providers to whom she compares herself sought any accommodations at all, much less accommodations from the "speech code" about which she complains. Although "[t]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered `similarly-situated;' . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the relevant aspects." *Arendale v. City of Memphis*, 519 F.3d 587, 604 (6th Cir. 2008).

Specifically, Plaintiff does not allege that the providers to whom she compares herself sought or were given any accommodations at all. She does not claim that the physician who does not perform breast or pelvic exams, or the providers who do not prescribe diet pills, ever asked for any "accommodation."  Plaintiff does not allege when these supposed practices began, who granted them, or whether there was even a UMHW policy that would require carving out an accommodation. Nor can Plaintiff aver that she was being treated differently from "all providers" (who presumably ***includes*** Plaintiff) who refused to remove toenails.  See *Bajestani v. Tennessee Valley Auth.*, 61 F.Supp.3d 759, 763-764 (E.D. Tenn. 2014) ("Because Plaintiff's conduct differs

---

[26] PageID.520, ¶47, "Ms. Kloosterman believes that it would be dishonest and sinful to violate her conscience and Hippocratic oath by acting against her medical judgment to prescribe ***or to refer patients*** for 'puberty blockers,' 'hormone therapy,' or 'gender reassignment surgery,' ***or by entering in documentation pronouns*** that obscure or misrepresent a patient's biological sex."

in highly relevant aspects from the conduct of those he argues are similarly situated to him, Plaintiff has failed to allege facts sufficient to establish the fourth element of the Title VII claim."). Plaintiff's disparate treatment claim fails to state claims on which relief can be granted.

## V.    Dismissal of Count V (Title VII Disparate Impact) against UMHW Is Required.

### A.  Plaintiff's Title VII Disparate Impact Claim Fails Because Plaintiff Did Not Exhaust Her Administrative Remedies

Count V of the Complaint alleges that UMHW policy had a "disparate impact" on Plaintiff and persons like her in violation of Title VII. Plaintiff filed an EEOC charge prior to proceeding with this matter. The EEOC Charge (Ex. 3) alleged that UMHW (i) compelled her to "use speech" that violated her sincerely held religious beliefs; (ii) forced her "to affirm and participate in activities"; (iii) refused to accommodate her religious beliefs in a manner that allegedly "would have little to no impact on patients"; and (iv) terminated her employment because of her religion.

Plaintiff's Charge did ***not*** assert a claim of disparate impact. There was no allegation, nor even a suggestion, that a facially-neutral UMHW policy had a disparate impact on a particular group of employees. That fact disposes of Plaintiff's claim under Title VII. Generally, a plaintiff seeking relief under Title VII cannot bring claims in a lawsuit that were not included in their EEOC charge. See 42 U.S.C. § 2000e-5(f)(1); *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). The failure to exhaust administrative remedies is a condition precedent to suit and is properly construed as a basis to dismiss under Rule 12(b)(6).[27]

Thus, the *Younis* plaintiff's EEOC charge alleging that he was subjected to several discriminatory comments was not sufficient to bring an uncharged claim that he was subjected to a hostile work environment.[28]   610 F.3d at 372. See also *Camara v. Epps Air Serv., Inc.*, 292

---

[27] *Kubicki v. Brady*, 829 F.Supp. 906, 910 (E.D. Mich. 1993).
[28] *See-also Lett v. Reliable Ruskin*, No. 05479-A(WO), 2005 WL 2128041, at *3 (M.D. Ala. Aug. 29, 2005) (disparate  impact claim must be dismissed where plaintiff's EEOC charge alleged

F.Supp.3d 1314, 1337–38 (N.D. Ga. 2017) (holding that the plaintiff's disparate treatment EEOC charge was insufficient to allege disparate impact claim in lawsuit and citing cases).

Because Plaintiff's EEOC charge did not allege disparate impact, the Court must dismiss Count V. *See Kubicki, supra.*

### B. Plaintiff's Title VII Disparate Impact Claim (Count V) Must Be Dismissed Because it Does Not Allege that a Specific Facially-Neutral Policy Had a Disparate Impact on Plaintiff's Protected Group

Plaintiff's Title VII disparate impact claim (Count V) also reflects a plain misunderstanding of that legal theory. In a disparate impact claim, the Plaintiff must prove "that a particular employment practice, although neutral on its face, has produced a significant adverse effect on a protected group to which the plaintiff belongs." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 830 (6th Cir. 2000). "In contrast, a disparate treatment claim arises when an employee is treated differently than others because of her [religion] or another protected characteristic." *Russell v. Enter. Rent-A-Car Co. of RI*, 160 F.Supp.2d 239, 257 (D.R.I. 2001).

The Complaint must allege a specific employment practice at issue. *EEOC v. Peoplemark, Inc.*, 732 F.3d 584, 591 (6th Cir. 2013) (citing cases). It also must contain facts sufficient to support a plausible claim that UMHW's facially neutral policy disproportionately and ***adversely affects a particular protected group***. *Gaddy v. Ports Am.*, No. 13-3322, 2015 WL 3929693, at *5 (S.D.N.Y. June 15, 2015) (holding that the plaintiff's disparate impact theory failed to state a claim because it "does not explain how the physical examination policy would have a disproportionate and adverse effect on security officers of a particular group…"). See also *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 335-336, n.15, 97 S. Ct. 1843, 1854, 52 L. Ed. 2d 396 (1977) ("employment practices that are facially neutral in their treatment of different groups but that in

---

only intentional discrimination *and did not mention "disparate impact"* or refer to any facially neutral policy).

20

fact fall ***more harshly on one group than another*** and cannot be justified by business necessity.") (emphasis added).

Count V of Plaintiff's Complaint rests on various allegations that UMHW policies and/or practices have a disparate impact. These appear in paragraphs 303-307. (PageID.561).

### 1.  Paragraphs 303-304 and 306-307 Fail to State a Claim

First, Plaintiff states that UMHW had a policy prohibiting discrimination in employment. (PageID.561, ¶303). Plaintiff does not claim that this employment non-discrimination policy, although neutral on its face, impacted people in her protected group more harshly than others. Instead, she claims that Defendant "***violated its own policy when it . . . treated her differently because of her religion.***" (PageID.561, ¶304) (emphasis added). Plaintiff does not allege that that the employment non-discrimination policy itself disparately impacted people in a particular protected group.

Similarly, in paragraphs 293-294, Plaintiff asserts that UMHW "maintained a policy or practice against respecting independent medical judgment on 'gender reassignment' treatments, which policy or practice disproportionately impacts those with traditional religious beliefs concerning sex and gender." (PageID.561, ¶306). However, in elaborating on this assertion, she clarifies that UMHW ***did not respect*** medical judgment on gender reassignment treatments ***but did respect*** medical judgment on various other treatment issues, which practice "disparately impacts employees with traditional religious beliefs about the biological differences between the sexes." (PageID.561, ¶307).

The allegations that the employer engaged in ***discriminatory enforcement of its policies*** is not a claim of disparate impact. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 572 (2d Cir. 2000) ("***She further alleges, however, that this disparity is due to discriminatory enforcement of the no-assault policy, not to the disparate effect of the policy as neutrally applied***."); *Assistant Deputy*

21

*Wardens/Deputy Wardens Ass'n v. City of New York*, No. 14-4308, 2019 WL 4015119, at \*2 (E.D.N.Y. Aug. 26, 2019) ("***the disparity must result from the neutral application of a policy, not from the discriminatory enforcement of a neutral policy***.") (emphasis added). Accordingly, paragraphs 290-291 and 293-294 fail to state claims of disparate impact.

### 2.   Paragraph 305 Fails to State a Claim

Plaintiff further avers, in paragraph 305, that UMHW has "a policy or practice of disciplining employees for expressing, mentioning, or suggesting that they hold traditional beliefs on issues related to sexual morality, sexual orientation, or gender identity." (PageID.561, ¶305). Of course, that stated policy (assuming it exists) would not be ***neutral*** on its face but, instead, one that treats people differently on its face. Thus, it does not allege that Defendant had a facially-neutral policy which disparately impacted people in a particular group. *Hall v. Dolgencorp, LLC*, No. 20-00012, 2020 WL 7388649, at \*4 (N.D. Ala. Dec. 16, 2020) ("[A] plaintiff alleging a disparate  impact claim need only show that a neutral employment practice which is ***non-discriminatory on its face*** has a disproportionate impact on a protected class.") (emphasis added) (citing *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1273 (11th Cir. 2000)). Plaintiff also fails to state a claim in this regard because she fails to identify the specific policy; instead, as noted, Plaintiff generically refers to an unstated "policy or practice" and that it either "mention[s] or suggest[s]" the alleged discriminatory objective. *Peoplemark, supra*. Thus, paragraph 305 fails to state a claim.

### 3.   All of Plaintiff's Disparate Impact Theories Suffer from An Additional Defect

All of Plaintiff's Title VII disparate impact allegations fail to state a claim because they do not identify a ***particular protected group*** on which the policies and/or practices had a disparate impact. *See Gaddy* and *Teamsters, supra.* Instead, Plaintiff asserts in paragraphs 303-304 that UMHW's employment non-discrimination policy has a disparate impact on ***people with "traditional religious beliefs concerning sex and gender*.**" (PageID.561, ¶306). (emphasis added)  And, in

22

paragraphs 306-307, she claims that the policies described in the paragraphs previously discussed have a disparate impact on that same group, plus those with "***traditional religious beliefs about the biological differences between the sexes***." *Id.* (emphasis added).

Plaintiff's self-serving definitions of a class of people with "traditional religious beliefs concerning sex and gender" are not employees in a particular protected class; instead, at most, they are ill-defined and limited subsets of a certain religions. In *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F.Supp.3d 1258 (M.D. Ala. 2019), the Court observed:

> Disparate-impact claims require evaluating the impact of a policy or practice on members of a protected class as compared to persons outside the protected class. The court reads the relevant protected class alleged here to be a Christian or religious organization, ***not a Christian organization whose religious views oppose homosexual conduct. If a plaintiff could narrowly define its class based on its particular religious belief, rather than the broader religious faith or group to which it belongs, then disparate-impact claims would have a nearly limitless reach. This is because any policy impacting a plaintiff's specific religious belief would generally impact 100 % of the members of a class defined by that belief, which would virtually always amount to a disproportionate impact as compared to those falling outside the class*. For example, a Jewish man impacted by a policy affecting a belief rooted in his idiosyncratic, personalized interpretation of Judaism could claim disparate impact even though no other Jewish people hold that belief.***

406 F.3d at 1306 n.36 (internal citation omitted), *aff'd*, 6 F.4th 1247 (11th Cir. 2021).

As in *Coral Ridge Ministries,* Plaintiff may not make out a claim that UMHW policies had a disparate impact on people with "traditional religious views of sex and gender," and as otherwise described in paragraphs 291-294. These are self-serving definitions of a group or groups, 100% of whom would be disparately impacted by the supposed policies and practices. For this reason, too, Count V fails to state a claim on which relief can be granted.

**VI.   Dismissal Of Plaintiff's State Constitution Claims Against UMHW (Counts VI, VII and VIII) And ELCRA Claim Against UMHW (Count IX) Are Required Because They Are Barred By the Eleventh Amendment**

Plaintiff's Complaint alleges and concedes that Defendant UMHW is a state entity.[29] She asserts that Defendant UMHW is part of "the University of Michigan Health System (now called 'Michigan Medicine'), which in turn is operated by the University of Michigan Board of Regents." (PageID.520, ¶48).[30] Article VIII, Sec. 5 of the Michigan Constitution created the University and its Board of Regents. The Complaint also seeks relief from UMHW under three different provisions of the Michigan Constitution. (PageID.563-568).

Under the Eleventh Amendment to the U.S. Constitution, states are generally immune from suit by private parties in federal court. The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State.

U.S. Const. amend. XI.   There are generally three exceptions to this rule: (1) abrogation by Congress; (2) waiver by the State; and (3) suits against state officers for prospective relief to end an ongoing violation of federal law. *Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir. 2002). Plaintiff does not and cannot suggest that the first two exceptions apply in this case.[31]

With respect to the third exception, outlined in *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), state officers may be sued in their individual capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law. *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017).

---

[29] *Follis v. State Armory Bldg. Comm'n*, No. 10-815, 2010 WL 1782181, at *1 (D. Minn. Mar. 29, 2010) ("Here, the Plaintiffs have explicitly alleged in their Complaint that the named Defendant, State Armory Building Commission, 'is an arm of a state, or state entity'"), report and recommendation adopted, No. 10-815, 2010 WL 1782178 (D. Minn. May 4, 2010).

[30] The individually-named defendants, all employees of UMHW, are also named in claims brought for alleged violations of the United States Constitution under 42 U.S.C. § 1983. (PageID.543-556). She states that all of those Defendants acted "under color of state law." (PageID.517, ¶ 30).

[31] "Michigan has not consented to civil suits in federal court." *Longmire v. Mich. Dep't of Corrs.*, No. 20-1389, 2021 WL 5352809, at *2 (6th Cir. June 9, 2021) (citing *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986)).

24

However, the *Ex parte Young* exception does not permit federal courts to enjoin violations of *state law* against a state or state agency. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984). In *Freeman v. Michigan Dep't of State*, 808 F.2d 1174 (6th Cir. 1987), the plaintiff brought a three-count complaint in federal court, the third of which sought relief under a state civil rights law and the Michigan Constitution. *Id.* at 1176. In affirming dismissal of the state law claims, the Sixth Circuit explained:

> Turning to the plaintiff's state law claims, the Supreme Court held in *Pennhurst* that the authority of federal law is not implicated when a plaintiff charges state officials with violating state law, and when this is the violation charged, the basis for permitting even injunctive relief against state officials as in Ex parte Young and Edelman disappears. *Pennhurst*, 465 U.S. at 106, 104 S.Ct. at 911. ***Thus, the Eleventh Amendment forbids federal courts from enjoining state institutions and state officials for violation of state law.*** *Id*. at 124, 104 S.Ct. at 920. The *Pennhurst* Court also held that the judge-made doctrine of pendent jurisdiction does not "override" the Eleventh Amendment. *Id*. at 121, 404 S.Ct. at 919. While the plaintiff's state claims could be filed in this action as pendent claims to those asserted under Title VII and § 1981, as pendent claims they are subject to the same Eleventh Amendment limitations on relief.

!
808 F.2d at 1179-80 (emphasis added).[32]   Many other federal courts have concluded that they cannot exercise jurisdiction over claims against a state or state agencies alleging violations of state law.[33]   Thus, Plaintiff's claims under the Michigan Constitution are barred by the Eleventh Amendment and Counts VI-VIII must be dismissed.

---

[32] "Although by its terms the [Eleventh] Amendment applies only to suits against a State by citizens of another State, our cases have extended the Amendment's applicability to suits by citizens against their own States." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).

[33] *See e.g., State of Ohio ex rel. Manuel v. Ohio Dep't of Health*, 810 F.Supp. 928 (S.D. Ohio 1992) (citing *Pennhurst* and holding that Eleventh Amendment deprived the district court of jurisdiction to award injunctive relief against the state for alleged violation of Ohio law); *Fields v. Doe*, No. 06-668, 2006 WL 8442258, at *4 (S.D. Ohio Dec. 1, 2006) (recommending dismissal of state law claims for injunctive and monetary relief against state and its department of health because "***the Eleventh Amendment prohibits a federal court from awarding monetary or injunctive relief for alleged violations of state law asserted against a State or  its  agencies***" (citing  *Pennhurst*) (emphasis added), *report and recommendation adopted*, No. 1:06-CV-668, 2007 WL 9729246 (S.D. Ohio Mar. 22, 2007); *Hayut v. State University of New York*, 127 F Supp.2d 333, 340 (N.D.N.Y. 2000) (***dismissing state constitutional tort claims against state university as barred by***

25

The same is true of Plaintiff's claim against UMHW under the Elliott-Larsen Civil Rights Act

(Count IX). In *Emery v. Michigan Dep't of C.R.*, No. 15-11467, 2016 WL 1090429 (E.D. Mich.

Mar. 21, 2016), the plaintiff brought various claims against the Michigan Department of Civil

Rights, including race and age discrimination in violation of ELCRA. The Court dismissed the

claims under the Eleventh Amendment. The Honorable Gerald Rosen wrote:

> ***Turning first to Plaintiff's state-law ELCRA claims against Defendant MDCR,
> the Sixth Circuit has observed that "the States' constitutional [Eleventh
> Amendment] immunity from suit prohibits all state-law claims filed against a
> State in federal court, whether those claims are monetary or injunctive in
> nature."*** *Ernst* [*v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005)]; see also *Freeman* [*v.
> Michigan Department of State*, 808 F.2d 1174, 1179 (6th Cir. 1987)] (***explaining
> that Michigan's enactment of the ELCRA did not operate to waive the state's
> Eleventh Amendment immunity, as it did not "establish that [the state] has agreed
> to become a defendant in federal court suits based on violations of either state or
> federal law***"). Accordingly, Plaintiff's state-law ELCRA claims against Defendant
> MDCR are barred by Eleventh Amendment immunity, and Plaintiff does not
> contend otherwise in her response to the MDCR's motion.

2016 WL 1090429, at *4-5 (emphasis added).[34] In short, Counts VI-IX must be dismissed for lack

of subject matter jurisdiction.

**VII.    Dismissal of Counts VI-VIII (Plaintiff's State Constitution Claims) Are Required For
The Additional Reasons That They Fail To State Claims On Which Relief Can Be
Granted**

---

***Eleventh Amendment***); *Monserrate v. New York State Senate*, 695 F. Supp. 2d 80, 97-98
(S.D.N.Y. 2010) (denying request for injunctive relief under state law against state legislative body
because doing so would violate the Eleventh Amendment); *Barsoumian v. Williams*, 29 F.Supp.3d
303, 311 (W.D.N.Y. 2014) (dismissing fraud and tortious interference claims against S.U.N.Y.
medical school for alleged fraud and tortious interference with ultimate relief sought being an
injunction because "there has been no clear consent to suit in this federal forum, neither legal nor
equitable relief is available against S.U.N.Y. at Buffalo School of Medicine and Biomedical
Sciences"); *Chinn v. City Univ. of New York Sch. of L. at Queens Coll.*, 963 F.Supp. 218, 227
(E.D.N.Y. 1997) (***dismissing state law discrimination claims for monetary and injunctive relief
against City University of New York, an arm of the State, as barred by Eleventh Amendment***).
[34] Accord: *Davis v. Michigan Med. Univ. Hosp.*, No. 18-CV-14055, 2019 WL 1746261, at *1 (E.D.
Mich. Apr. 18, 2019) (applying Eleventh Amendment immunity and dismissing the plaintiff's
ELCRA claims against University of Michigan Medicine University Hospital); *Arojojoye v.
Michigan Dep't of Corr.*, No. 14-CV-11136, 2014 WL 6612389, at *2 (E.D. Mich. Nov. 20, 2014)
(dismissing the plaintiff's ELCRA claims against Michigan Department of Corrections as barred
by the Eleventh Amendment).

**A.  Dismissal of Count VI (State Constitution Free Exercise Claim) Is Required**

Count VI asserts that all Defendants violated Plaintiff's right to the free exercise of religion under the Michigan Constitution "when they compelled Ms. Kloosterman to speak biology-obscuring pronouns and to make referrals for drugs and medical procedures that violate her religious conscience." (PageID.563, ¶317). Plaintiff relies on Article I, § 4 of the Michigan Constitution.

Plaintiff does not allege a key requirement of such a claim: a substantial burden on her right to the free exercise of religion. In *Miller v. Davis*, 123 F.Supp.3d 924, 943-944 (E.D. Ky. 2015),[35] for instance, the Court held that the Governor's directive to issue marriage licenses to gay couples did not substantially burden the plaintiff county clerk in violation of Kentucky constitution's free exercise clause because she was "simply being asked to signify that couples meet the legal requirements to marry," rather than "condone" the union; she remained free to practice her Apostolic Christian beliefs, attend church, Bible Study and to minister to inmates.

Plaintiff remained free to worship and does not claim that UMHW directed her to ***participate in, or even to endorse or condone***, medical procedures with which she disagreed. To be clear, Plaintiff is not a physician; she is a physician assistant. She does not claim she has been asked to perform a gender reassignment procedure or even to provide support to a physician who did. Instead, she claims she was asked to refer such patients and not by endorsing such procedures. Therefore, Count VI fails to state a claim.[36]

---

[35] Vacated on other grounds in 2016 WL 11695944 (E.D. Ky. Aug. 8, 2016).

[36] In fact, Plaintiff asserts that "***during the entire duration of her employment, no patient ever asked her for a referral to another provider for 'gender reassignment' drugs or procedures***." (PageID.522, ¶67) (emphasis added). In other words, her claim is based on the speculative possibility that she might actually be required to violate her religious convictions. The conclusory assertion that Defendant substantially burdened her free exercise of religion is contradicted by her own allegations. For this reason, too, the Court must dismiss Count VI.

Plaintiff also fails to state a claim because the entire premise of Count VI, that UMHW's rule is subject to the "compelling governmental interest" standard, is erroneous. (PageID.564, ¶¶320-323). A religion-neutral regulation is not subject to that standard. *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). Certainly, Plaintiff does not claim that UMHW's rules are directed at Christians who share her beliefs that those born biologically as one gender must always be considered as such. For this reason, too, the Court must dismiss Count VI.

### B. Dismissal of Count VII (State Constitution Free Speech Claim) Is Required

Count VII alleges that all Defendants violated the Michigan Constitution by compelling her to speak "biology-obscuring pronouns." (PageID.566, ¶¶336). However, Plaintiff can offer no authority for the proposition that a public employee, outside of the academic freedom context, has the right to use pronouns of their choice in performing their duties. In *Garcetti v. Ceballos*, the U.S. Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). Thus, in *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S.Ct. 2448, 201 L.Ed.2d 924 (2018), the Supreme Court observed, "[o]f course, if the speech in question is part of an employee's official duties, the employer may insist that the employee deliver any lawful message." 138 S. Ct. at 2473.

Plaintiff is a physician assistant whose job was to provide clinical services; being asked to use pronouns chosen by the patient (rather than "biological" pronouns) certainly was part of her official duties for UMHW, not a directive about her private conduct. Thus, Plaintiff does not allege a plausible compelled speech claim. See e.g., *D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, No. 03-1026, 2012 WL 1079583, at *22 (D.N.J. Mar. 30, 2012) ("compelled speech" claim

dismissed because the plaintiff was not acting other than an employee "in the scope of his official duties"), aff'd, 552 F. App'x 110 (3d Cir. 2014). Count VII fails to state a claim.

### C. Dismissal of Count VIII (State Constitution Equal Protection Claim) Is Required

Count VIII alleges that Defendants discriminated against Plaintiff because of her religion in violation of the Michigan Constitution, Article I, § 2. She alleges disparate treatment and, "[i]n the alternative," for "enforcing their nondiscrimination policies in such a way that disparately impacted religious employees" including Plaintiff. (PageID.568, ¶¶346-347). She states that UMHW's actions trigger a "strict scrutiny" standard. (PageID.568, ¶348).[37]

Defendant adopts and incorporates by reference many of the same arguments applicable to Counts IV and V. *See* Sections IV and V.B., *supra*. Count VIII therefore must be dismissed.

### VIII.    Dismissal of Count IX (ELCRA) is Required For The Additional Reason That It Fails To State a Claim On Which Relief Can Be Granted

Count IX alleges that Defendant violated ELCRA by terminating her due to her religion and relies specifically on the theory that her termination and the "conversations leading up to it constitute ***direct evidence*** of discrimination." (PageID.570, ¶358) (emphasis added). She further claims that Defendant terminated her in retaliation "for requesting a religious accommodation after she completed the mandatory training segment on gender identity training." (PageID.570, ¶359)

Plaintiff's Complaint fails to state a claim based on a "direct evidence" theory, the only discrimination theory recited in Count IX. Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). However, the alleged name-calling of Plaintiff ("evil" or "liar") for refusing to use patients'

---

[37] Again, Plaintiff relies upon the wrong standard. See e.g. *Rouse v. Whitmer*, No. 20-12308, 2022 WL 2525434, at *12 (E.D. Mich. June 13, 2022), report and recommendation adopted, No. 20-CV-12308, 2022 WL 2517241 (E.D. Mich. July 6, 2022).

chosen pronouns or to refer them to other providers is not "direct evidence" of religious discrimination. See e.g., *Goller v. Ohio Dep't of Rehab. & Correction*, 285 F.App'x 250, 255 (6th Cir. 2008) (affirming decision that plaintiff being called names like "white barbie" was not direct evidence of race discrimination because "a significant inference would be required for a factfinder to conclude that Smith's racial animosity motivated Shewalter's decision to terminate Goller").[38]

Plaintiff also fails to state a claim for retaliation under ELCRA. A request for accommodation is not protected activity under ELCRA, which prohibits retaliation "because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." M.C.L. § 37.2701(a). *See e.g., EEOC v. N. Mem'l Health Care*, 262 F.Supp.3d 863, 867 (D. Minn. 2017) (requesting religious accommodation not a protected activity under Title VII).[39] For this reason, too, Plaintiff fails to state a claim in Count IX.

## IX.   CONCLUSION

For the foregoing reasons, Defendant University of Michigan Health West respectfully requests that this Honorable Court grant its Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), dismiss all of Plaintiff's claims pending against it, and grant Defendant UMHW costs and such other relief as this Court deems proper.

---

[38] As noted in the individual Defendants' Motion, Plaintiff does not adequately allege that Defendant Pierce, a DEI Coordinator, was a decisionmaker in Plaintiff's termination. Further, even assuming that Defendant Pierce called Plaintiff "evil" or a "liar," such alleged statements made no reference to her religion.

[39] The Sixth Circuit stated a different conclusion but only in dicta. *Creusere v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*, 88 F.App'x 813, 821 (6th Cir. 2003).

Respectfully submitted,

HALL RENDER KILLIAN HEATH & LYMAN, PC

/s/ Jonathon A. Rabin
Jonathon A. Rabin (57145)
Larry R. Jensen (60137)
Attorneys for Defendant UMHW
101 W. Big Beaver Road, Suite 745
Troy, MI  48084
(248) 740-7505
jrabin@hallrender.com
ljensen@hallrender.com

February 20, 2023

31

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

This Brief complies with the word limit of L. Civ. R. 7.2(b)(i) because, excluding the parts exempted by L. Civ. R. 7.2(b)(i), it contains 10,788 words. The word count was generated using Microsoft Word for Microsoft 365 MSO.

Respectfully submitted,

HALL RENDER KILLIAN HEATH & LYMAN, PC

/s/ Jonathon A. Rabin
Jonathon A. Rabin (57145)
Larry R. Jensen (60137)
Attorney for Defendant UMHW
101 W. Big Beaver Road, Suite 745
Troy, MI  48084
(248) 740-7505
jrabin@hallrender.com
ljensen@hallrender.com

February 20, 2023

4881-4548-3087v6