UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

VALERIE KLOOSTERMAN

      Plaintiffs

                                         Civil Action No. 1:22-cv-00944

v.                                      Hon. Jane M. Beckering

METROPOLITAN HOSPITAL, d/b/a
UNIVERSITY OF MICHIGAN HEALTH-WEST;
RAKESH PAI, an individual; RHAE-ANN
BOOKER, an individual; MARLA COLE, an
individual; THOMAS PIERCE, an individual; and
CATHERINE SMITH, an individual.

      Defendants.

_____

**REPLY BRIEF IN SUPPORT OF DEFENDANTS PAI, BOOKER, COLE,
PIERCE AND SMITH'S MOTION TO DISMISS PLAINTIFF'S
CORRECTED FIRST AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... iii

I.      INTRODUCTION ........................................................................................................ 1

II.     STATEMENT OF LAW.............................................................................................. 1

    A.   THE COURT SHOULD DISMISS COUNTS VI THROUGH VIII AGAINST
          DEFENDANTS IN BOTH CAPACITIES ............................................................. 1

    B.   COUNTS I-III AND VI-VIII: PLAINTIFF DID NOT PLEAD FACTS THAT
          DEFENDANTS VIOLATED HER CONSTITUTIONAL RIGHTS BY THEIR
          OWN INDIVIDUAL ACTIONS ........................................................................... 1

        1.   Counts I, III and VIII ................................................................................ 2

        2.   Counts II, VI and VII .............................................................................. 5

    C.   COUNTS I-III FAIL TO STATE CLAIMS .......................................................... 6

        1.   Count I ...................................................................................................... 6

        2.   Count II .................................................................................................... 7

        3.   Count III .................................................................................................. 8

    D.   COUNTS I-III: NOMINAL DAMAGES ............................................................. 9

        1.   Official Capacities ................................................................................... 9

        2.   Individual Capacities: Qualified Immunity Bars Nominal Damages ........... 9

           a.   Failure to State Constitutional Violations................................................. 9

           b.   No Clearly Established Rights ................................................................. 9

              i.   Count I: No Violation of Clearly-Established Free Exercise Right................. 9

              ii.   Count II: No Violation of Clearly-Established Free Speech Right................. 10

              iii.   Count III: No Violation of a Clearly-Established Equal Protection
                    Right........................................................................................................ 11

              iv.   Additional Qualified Immunity Grounds for Pierce, Smith and Pai............... 12

    E.   NO INJUNCTIVE RELIEF AGAINST DEFENDANTS IN THEIR
          INDIVIDUAL CAPACITIES ................................................................................ 13

    F.   BOOKER, COLE, PIERCE AND SMITH COULD NOT REINSTATE
          PLAINTIFF OR OTHERWISE REMEDY THE ALLEGED VIOLATIONS............... 13

G.    DISMISSAL OF PLAINTIFF'S INJUNCTIVE RELIEF REQUESTS MAKES DECLARATORY RELIEF IMPERMISSIBLE UNDER ELEVENTH AMENDMENT ........................................................................................... 14

IV.    CONCLUSION ........................................................................................... 15

LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE ........................................... 16

# **TABLE OF AUTHORITIES**

**Cases**

*Alozie v. Arizona Bd. of Regents*, 431 F.Supp.3d 1100 (D. Ariz. 2020) ...................................... 11

*Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2 1149 (2011) ................ 10, 11, 12

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.2d 868 (2009) .......................... 1, 2, 3, 5

*Bergman v. Howard*, 54 F.4th 950 (6th Cir. 2022), cert. denied, 2023 WL 3158441
    (May 1, 2023) ................................................................................................................... 12

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 113 S.Ct.
    2217, 124 L.Ed.2d 472 (1993) ...................................................................... 6, 9, 10

*Dye v. Office of Racing Comm'n,* 692 F.Supp.2d 706 (E.D. Mich. 2010) .................................. 13

*Ezekiel v. Michel*, 66 F.3d 894 (7th Cir. 1995) .............................................................................. 8

*Fulton v. City of Philadelphia, Pennsylvania,*  141. S. Ct. 1868, 210 L.Ed.2d 137
    (2021) ................................................................................................................................. 6

*Gutzwiller v. Fenik*, 860 F.2d 1317 (6th Cir. 1988) ...................................................................... 11

*Harris-Reese v. United States*, 615 F. Supp. 3d 336 (D. Md. 2022) ............................................. 8

*Hartman v. Thompson*, 931 F.3d 471 (6th Cir. 2019) .............................................................. 4, 12

*Heard v. Strange*, No. 17-13904, 2018 WL 4178496 (E.D. Mich. Aug. 31, 2018) ..................... 2

*Hickman v. Valley Loc. Sch. Dist. Bd. of Ed.*, 619 F.2d 606 (6th Cir. 1980) .......................... 4, 12

*Horacek v. Heyns*, No. 13-280, 2016 WL 11263235 (W.D. Mich. Dec. 15, 2016),
    *report and recommendation adopted*, 2017 WL 1190551 (W.D. Mich. Mar. 31,
    2017) ................................................................................................................................. 13

*InterVarsity Christian Fellowship v. Wayne State Univ.*, 534 F.Supp.3d 785 (E.D.
    Mich. 2021) ...................................................................................................................... 10

*Janus v. AFSCME,*  138 S. Ct. 2448 (2018) ............................................................................... 11

*Johnson v. Collins*, No. 07-211, 2007 WL 1306596 (N.D. Ohio May 3, 2007) ........................... 2

*Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022) ............................................................ 6

*Kerr v. Hurd*, 694 F.Supp.2d 817 (S.D. Ohio 2010) ..................................................................... 7

*Ladach v. City of Romulus*, No. 17-10554, 2018 WL 5077181 (E.D. Mich. Aug. 24,
    2018) ................................................................................................................................... 2

*Lautermilch v. Findlay City Schs.*, 314 F.3d 271 (6th Cir. 2003)..................................................11

*Lilly v. Fieldstone*, 876 F.2d 857 (10th Cir. 1989) ..................................................................8

*Lurch v. United States*, 719 F.2d 333 (10th Cir. 1983)..................................................................8

*Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 213 L.Ed.3d 755
    (2018) ..................................................................................................6, 9, 10, 12

*Moncier v. Jones*, 557 F.App'x 407 (6th Cir. 2014) ..................................................................13

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra* (*NIFLA*), 138 S. Ct. 2361, 201 L.Ed.2d
    835 (2018) ..................................................................................................11

*Quilico v. Kaplan*, 749 F.2d 480 (7th Cir. 1984)..................................................................8

*Saucier v. Katz,* 533 U.S. 194 (2001) ..................................................................9, 10, 11, 12

*Swartz Ambulance Serv., Inc. v. Genesee Cnty.*, 666 F.Supp.2d 721 (E.D. Mich. 2009)..............3

*Tandon v. Newsom*, 141 S. Ct. 1294, 209 L.Ed.2d 355 (2021) ..................................................6

*Ward v. Polite*, 667 F.3d 727 (6th Cir. 2012) ..................................................................8, 11

*Willard v. Huntington Ford, Inc*., 952 F.3d 795 (6th Cir. 2020) ..................................................8

*Yerkes v. Ohio State Highway Patrol*, No. 22-3030, 2022 WL 17753528 (6th Cir.
    Dec. 19, 2022) ..................................................................................................2

*Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173 (3d Cir. 1988)..................................................5

## I.      INTRODUCTION

Although Plaintiff's Response withdraws some claims and requests for relief from her First Amended Complaint ("FAC"), many issues remain for consideration. As shown herein, the remainder also should be dismissed.

## II.      STATEMENT OF LAW

### A. THE COURT SHOULD DISMISS COUNTS VI THROUGH VIII AGAINST DEFENDANTS IN BOTH CAPACITIES

Plaintiff admits that her official-capacity claims under the Michigan Constitution are barred by the Eleventh Amendment. (PageID.982). Separately, Plaintiff withdraws any requests for injunctive relief against them in their individual capacities. (PageID.1010).

Although Plaintiff claims she can seek **damages** against Defendants in their individual capacities (PageID.983), Plaintiff omitted such a request in Counts VI-VIII. (PageID.565-566, 568, ¶¶ 331, 339, 351).[1] Nevertheless, Defendants address this new request for damages in response to Plaintiff's Motion to Amend wherein she proposes to add such damages. (PageID.1019-21). The Court should dismiss Counts VI-VIII.

### B. COUNTS I-III AND VI-VIII: PLAINTIFF DID NOT PLEAD FACTS THAT DEFENDANTS VIOLATED HER CONSTITUTIONAL RIGHTS BY THEIR OWN INDIVIDUAL ACTIONS

Under *Iqbal,* Plaintiff must plead facts that each Defendant, "through [their] own individual actions," violated her constitutional rights.[2] Plaintiff says that she needs to only allege that they "personally participated" in the challenged decisions. (PageID.985).[3] This is a misleadingly lesser statement of her burden.

---

[1] Plaintiff falsely asserts that Defendants conceded such relief was permissible under the Michigan Constitution, citing PageID. 675 n.8. Defendants made no such statement.

[2] *Ashcroft v. Iqbal,* 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L.2d 868 (2009).

[3] Plaintiff argues in n.2 that she can pursue her multiple **official-capacity** claims without specifying their individual unconstitutional actions and cites cases holding that official-capacity

1

Plaintiff cites two unpublished district court decisions[4] which do not involve pleading obligations and which state that, in ***retaliation*** cases, individual liability may lie if they were a "link in the causal chain that leads to the adverse employment action." This is not a retaliation case and the question is whether Plaintiff pleaded each Defendant's ***individual*** actions in violation of the Constitution. Plaintiff cites ***no*** authority holding that a state official may be held liable for being a "link in the causal chain" of a compelled speech, Equal Protection or Free Exercise claim by participating in a meeting or calling someone a "liar," let alone for failing to disavow the statement made by another.

Defendants turn now to an application of the *Iqbal* standard to Plaintiff's specific allegation against them.

### 1.      Counts I, III and VIII

Plaintiff's federal Free Exercise claim and Federal and State Equal Protection claims rest on allegations that she was treated differently than employees who were allegedly afforded "secular" accommodations.[5] Despite making the allegation in her FAC, she asserts that she "need not show disparate treatment" for her Free Exercise claim and then attempts to show she pleaded it. (PageID.999).

---

suits are another way of suing the government entity itself. (PageID.985). However, as shown in Section C, *infra*, all six counts fail to state claims. Further, there is no reason to prosecute the ***same injunctive relief*** against ***all five individuals*** if they are all to stand in UMHW's shoes. See e.g., *Johnson v. Collins*, No. 07-211, 2007 WL 1306596, at *2 (N.D. Ohio May 3, 2007) (dismissing multiple official-capacity claims and allowing only one, as "there is no need to proceed with this action against all of them").

[4] *Ladach v. City of Romulus*, No. 17-10554, 2018 WL 5077181, at *11 (E.D. Mich. Aug. 24, 2018); *Heard v. Strange*, No. 17-13904, 2018 WL 4178496, at *2 (E.D. Mich. Aug. 31, 2018). Plaintiff also cites to *Yerkes v. Ohio State Highway Patrol*, No. 22-3030, 2022 WL 17753528, at *5 (6th Cir. Dec. 19, 2022), another retaliation case which cites authority that individual liability may be imposed against government actors whose retaliatory ***animus*** contributes to a constitutional violation.

[5] PageID.545-546, 554-555, 568, ¶¶ 205-206, 259-260, 348. Plaintiff's Michigan Constitution Free Exercise claim (Count VI) does not assert disparate treatment.

Defendants argued that Plaintiff did not plead a plausible disparate treatment theory because the specific "secular accommodations" described in the FAC did not, as a matter of law, state a plausible claim. (PageID.655-656). Plaintiff ignores that. Instead, she merely asserts – without any authority – that the "management team knew or reasonably should have known that other providers' secular preferences and independent medical judgment were routinely accommodated." (PageID.999).[6] Yet, contrary to her obligation under *Iqbal*, the FAC does not **plead facts** supporting that assertion. Nor does Plaintiff allege that **any** of the supposed comparators asked **any** individual Defendant for their supposed accommodations. Further, Plaintiff offers **no** authority for the proposition that a "should have known" standard governs disparate treatment claims against individuals.[7] In fact, it is contrary to the cases cited by Defendants requiring that Plaintiff allege facts indicating "how each defendant was personally responsible for treating her differently from others similarly situated." (PageID.657).

Plaintiff also argues that she need not plead the elements of a prima facie case. However, the FAC still must plausibly allege entitlement to relief under *Iqbal*. "**After identifying the well-pleaded factual allegations, the Court must scrutinize these facts to see if they 'plausibly suggest an entitlement to relief.'**" *Swartz Ambulance Serv., Inc. v. Genesee Cnty.*, 666 F.Supp.2d 721, 724 (E.D. Mich. 2009) (citing *Iqbal*) (emphasis added). Thus, because plaintiff asserts a disparate treatment theory and the facts on which it supposedly rests, those facts must state a plausible claim. (See cases cited at PageID.655-656). And, as noted, Plaintiff must assert how **each** individual's actions violated the Constitution.

Separately, Plaintiff asserts that **Pierce** and **Smith** are liable for their "recommendations" to Booker and Cole. (PageID.991). She attempts to distinguish *Hartman v. Thompson*, 931 F.3d

---

[6] The statement that Defendants represented a "management team" is not supported in the FAC.

[7] Rather, that is a standard applicable to an organization to which knowledge can be imputed.

471 (6th Cir. 2019), because they "clearly had decision-making authority," which assertion rests solely on Plaintiff's claim that they "set into motion" the denial of her accommodation and termination. But, that begs the question because, like in *Hartman*, Pierce and Smith lacked "authority to make the decision." 931 F.3d at 478 (emphasis added).

Plaintiff relies on *Hickman v. Valley Loc. Sch. Dist. Bd. of Ed*., 619 F.2d 606 (6th Cir. 1980), and suggests it controls because *Hartman* did not cite to it 39 years later. (PageID.991, 993). But *Hickman,* a First Amendment retaliation case, is inapposite. That Court affirmed summary judgment on the basis of immunity for Defendant Young, a school district Superintendent who recommended the non-renewal of the plaintiff's employment. *Id.* at 610. Further commentary on liability against him was therefore dictum. Additionally, in that dictum, the Court relied on "a sufficient causal link" between the plaintiff's union activity and his recommendation, *id*., which was significant because Defendant Young had "ordered [a subordinate] to 'document' Hickman as a result of her union activities." *Id.* (emphasis added). Here, Plaintiff does not allege facts that Pierce and Smith had authority over her, let alone that her alleged Free Exercise activity influenced their "recommendations."[8]

With respect to **Booker, Cole, Pierce** and **Smith**, Plaintiff also ignores the fact that her FAC merely makes the hypothetical allegation that Defendants **would** have treated others differently, not that they did. (PageID.658-659). This too is dispositive.

Finally, Plaintiff does not address how she can state a plausible claim against Defendant **Pai** for "ratifying" the alleged actions without pleading his knowledge of the material facts. (PageID.659-660). Counts I, III and VIII should be dismissed.

---

[8] Plaintiff fails to address the fact she relies insufficiently on "information and belief" for the allegation that they made the recommendations at issue. (See PageID.658).

### 2.    Counts II, VI and VII

Plaintiff fails to identify allegations in the FAC that each Defendant, through their own individual actions, "compelled her to speak biology-obscuring pronouns."[9] *Iqbal, supra*.

First, with regard to ***Smith*** (from the Advanced Practice Providers' Council) and ***Pierce*** (DEI Coordinator),[10] Plaintiff again relies on their alleged "recommendations." As shown, that is legally insufficient to support liability.[11] (PageID.657).

Plaintiff does not identify what ***Booker*** and ***Cole*** allegedly did to mandate her use of patients' chosen pronouns. First, she asserts that she requested an accommodation from Booker, who allegedly said she "would speak with management," and that Booker and Cole "scheduled a meeting with Ms. Kloosterman and management." (PageID.978). Again, these are not factual allegations that Booker and Cole "decided" anything, particularly when Plaintiff describes Pai as the "the final decisionmaker with regard to the policy and practice." (PageID.528, ¶ 110).

Finally, the notion that ***Defendant Pai*** compelled Plaintiff to speak "biology-obscuring pronouns" rests on his alleged "ratification" of the denial of her accommodation. Plaintiff cites nothing in the FAC alleging that Pai was even ***aware*** that she did not want to use patients' chosen pronouns. Counts II, VI, and VII should be dismissed.

---

[9] In these claims, the allegation that Plaintiff was compelled to make referrals for drugs and medical procedures appears only in Count VI. (PageID.563). Nevertheless, the same arguments applicable to Plaintiff's claimed compelled speaking of pronouns applies to this allegation.

[10] At one point in her Brief, Plaintiff calls Pierce a "manager" (as if to suggest he was Plaintiff's boss). However, this contradicts the FAC, which identifies Pierce as a "Coordinator" for DEI. (PageID.516, ¶ 26). "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988).

[11] Although Plaintiff states in her Brief that ***all five*** individuals "decided" they would deny her accommodation (PageID.980), this too is not in the FAC; in fact, it contradicts the FAC, which says they merely "recommended" denying the accommodation to Booker and Cole, who allegedly made the decision. (PageID.544, 554-555, 568, ¶¶ 198, 259, 346).

### C. COUNTS I-III FAIL TO STATE CLAIMS

#### 1. <u>Count I</u>

In opposing dismissal of her Free Exercise claim, Plaintiff asserts that Defendants "unlawfully targeted" her religious beliefs by making hostile statements, denying her accommodation request with a "draconian policy" and firing her. Plaintiff relies on *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), where the Court struck down an ordinance prohibiting animal sacrifice because the ***ordinance was established*** to target Santeria practices. By contrast, Plaintiff does not allege (nor could she) that the training module and referral "policies" themselves ***targeted*** Plaintiff and those who share her religious beliefs. Instead, the policies as described are religion-neutral on their face and the FAC does not allege that it was discriminatorily enforced.

Plaintiff also relies on *Fulton v. City of Philadelphia*, *Pennsylvania*,  141. S. Ct. 1868, 210 L.Ed.2d 137 (2021), and *Tandon v. Newsom*, 141 S. Ct. 1294, 209 L.Ed.2d 355 (2021), for the proposition that treating her request for accommodation differently than "secular" accommodations violates the Free Exercise clause. In both cases, the facially-neutral policies were applied in discriminatory fashion. However, Plaintiff does not allege that those who received "secular" accommodations requested an accommodation ***from*** the supposed pronoun and referral policies. Instead, Plaintiff claims they had accommodations from other, ***unrelated*** customs.

Plaintiff next argues that Defendants violated her Free Exercise rights because they "attacked" her religious beliefs and this "hostility" "accompan[ied]" UMHW policies. In support of this theory, Plaintiff cites footnote 1 in *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022), which quotes *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1732, 213 L.Ed.3d 755 (2018). *Kennedy* did not apply that principle and is therefore inapposite.

*Masterpiece* involved "expressions of hostility" made by the very civil rights commissioners who ruled in Phillips' case ***when applying a public accommodation law to it***. However, unlike the disparate treatment in *Masterpiece*, 138 S. Ct. at 1730, Plaintiff does not allege that a non-Christian was treated differently when seeking to deviate ***from*** the supposed pronoun and referral policies.[12] Again, Plaintiff asserts that the "accommodations" afforded to other UMHW employees, like not having to perform pelvic exams, have ***nothing*** to do with the pronoun and referral "policies." And, of equal importance, the supposed failure of some commissioners in *Masterpiece* to disavow other commissioners' comments did not form the basis for individual liability. The Court should dismiss Count I.

2. <u>Count II</u>

Defendants explained that Plaintiff's "compelled speech" theory is not plausible because the alleged speech related to Plaintiff's official duties. (PageID.667-668). Plaintiff calls this a "unique approach to medical care," but she offers no contrary authority.

Plaintiff interprets *Kerr v. Hurd*, 694 F.Supp.2d 817 (S.D. Ohio 2010), as implying otherwise. But the Court in *Kerr* simply acknowledged an "academic freedom exception" to cases which hold that government employers can regulate speech undertaken pursuant to an official's duties. Importantly, in *Kerr*, the Court was bound by its prior decisions which applied an academic freedom exception. In addition, unlike the *Kerr* plaintiff, who was a teacher and department chair, the "academic freedom exception" cannot apply, as Plaintiff does not claim to

---

[12] The ***only*** person who Plaintiff even claims mentioned her religion is Pierce, a DEI Coordinator, who Plaintiff does not claim made the decision to deny her requested accommodation. And, even if true that Pierce said "she could not could not take the Bible or her religious beliefs to work with her," that does not plausibly state a claim that ***all*** Defendants relied on his supposed hostility to her beliefs.

have performed teaching or academic duties.[13]

Plaintiff's request that this Court create an exception of its own for healthcare professionals lacks any precedent. She relies on five cases which evaluated independent contractor status for physicians under federal tort immunity statutes. In none of those cases did the courts assess whether the plaintiff could bring a Free Speech claim, let alone whether they were performing their official duties.[14] Nor did *Ward v. Polite*, 667 F.3d 727, 740 (6th Cir. 2012), another retaliation case, create a "healthcare exception." And, the Court in *Ward* did not determine whether the plaintiff's speech was made pursuant to his official duties. Count II should be dismissed.

### 3. <u>Count III</u>

Defendants argued that the facts Plaintiff pleaded did not state a plausible Equal Protection claim because her allegations did not, as a matter of law, reflect disparate treatment of similarly-situated circumstances. Although Plaintiff argues this is not required at the pleading stage, she cannot avoid a determination based on the facts she alleges. (*See Swartz*, *supra,* and PageID.655-656).

Plaintiff argues alternatively that her FAC alleges "direct evidence" of discrimination. She recites the July 29, 2021, meeting where Pierce allegedly told her that she could not bring her beliefs to work and, when she said she had treated gay and lesbian patients for several years without complaints, he called her a "liar." That is not direct evidence, i.e., evidence that "proves

---

[13] Although Plaintiff notes that the Court found the *Kerr* plaintiff's speech to medical students was of "public concern," it did not consider that in determining whether his speech was pursuant to his official duties. The Court in *Kerr* found that the plaintiff *was* acting pursuant to his official duties but that the exception applied.

[14] *Quilico v. Kaplan*, 749 F.2d 480 (7th Cir. 1984); *Harris-Reese v. United States*, 615 F. Supp. 3d 336 (D. Md. 2022); *Ezekiel v. Michel*, 66 F.3d 894, 902 (7th Cir. 1995); *Lilly v. Fieldstone*, 876 F.2d 857, 858–59 (10th Cir. 1989); and *Lurch v. United States*, 719 F.2d 333, 337–38 (10th Cir. 1983).

the existence of a fact without requiring any inferences." *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 806-807 (6th Cir. 2020). Here, the facts alleged certainly ***require inferences*** that Pierce recommended the denial of Plaintiff's accommodation request or her termination based on religion. At most, Plaintiff alleges that Pierce did not want Plaintiff's religious beliefs to influence patient care, not that he acted on her religion in his subsequent "recommendation." In addition, for any other Defendants it would certainly require ***inference*** to conclude that Pierce's comments ***influenced*** their actions. Count III should be dismissed.[15]

### D. COUNTS I-III: NOMINAL DAMAGES

#### 1. Official Capacities

Plaintiff concedes that she cannot pursue nominal damages from Defendants in their official capacities. (PageID.1009).

#### 2. Individual Capacities: Qualified Immunity Bars Nominal Damages

##### a. Failure to State Constitutional Violations.

Plaintiff's failure to state claims, as set forth in Sections II.B-C, *supra*, show that Plaintiff cannot defeat the first prong of qualified immunity. Therefore, nominal damages are not available.

##### b. No Clearly Established Rights.

Nor can Plaintiff establish that her claims present the violation of rights that were "clearly established" at the time of the action. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

###### i. Count I: No Violation of Clearly-Established Free Exercise Right

As to all Defendants, Plaintiff argues that "free exercise jurisprudence under *Lukumi* and *Masterpiece* was clearly established when Defendants acted." (PageID.999). She further cites a

---

[15] Plaintiff does not address an important decision relied on by Defendants for the proposition that her Equal Protection claims falsely rest on a "strict scrutiny" standard, rather than rational basis. For that reason, too, the Court should dismiss these claims.

case from the Eastern District of Michigan for the proposition that "government actions are not neutral and generally applicable for purposes of the Free Exercise Clause when they treat religious activities more harshly than similar secular activities." *Id.* (citing *InterVarsity Christian Fellowship v. Wayne State Univ.*, 534 F.Supp.3d 785, 833 (E.D. Mich. 2021)). However, Plaintiff cannot defeat qualified immunity based on such "broad general proposition[s]" and must instead offer controlling precedent "in light of the specific context of the case." *Saucier*, 533 U.S. at 201.

Plaintiff relies on UMHW's allegedly discriminatory accommodation of "secular" requests. However, unlike *Masterpiece*, Plaintiff does not allege that Defendants treated someone with different religious beliefs differently in ***applying*** the challenged referral and pronoun "policies." And, unlike *Lukumi*, Plaintiff does not allege that these rules ***targeted*** her beliefs (let alone on their face). Nor does *Intervarsity* defeat qualified immunity. There, the university defendants revoked the plaintiffs' registered student organization status because the plaintiffs limited their leaders to those who supported their religious beliefs, all while allowing secular groups to limit their leaders to those who agreed with the groups' mission principles. *Intervarsity*, 534 F.Supp.3d at 798-799. But, again, Count I does not allege that Defendants here permitted secular accommodations from the ***same*** policies she disliked.

Certainly, the notion that the conduct alleged here violated Plaintiff's Free Speech rights was not "beyond debate" as required to defeat qualified immunity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2083, 179 L.Ed.2 1149 (2011).

### ii. Count II: No Violation of Clearly-Established Free Speech Right

Plaintiff premises Count II on a proposed "healthcare professionals exception" to authority holding that government employers may regulate speech undertaken pursuant to an official's duties. Although an academic freedom exception has been applied, there is ***no*** clearly-

established "healthcare professionals" exception. Indeed, Plaintiff admits that "the Sixth Circuit has not directly addressed the issue of medical speech." (PageID.1003). Thus, Plaintiff is not claiming the violation of a clearly-established right. *See e.g., Alozie v. Arizona Bd. of Regents*, 431 F.Supp.3d 1100, 1119 (D. Ariz. 2020) (although circuit precedent clearly established an academic speech exception to *Garcetti*, the plaintiff's claim was barred by qualified immunity because precedent did not clearly establish what constituted academic speech).

Plaintiff further asserts that qualified immunity does not bar Count II "because compelled speech jurisprudence," under three particular decisions, "was clearly established when Defendants acted." (PageID.1004). Again, this is a broad general proposition. *Saucier, supra.* Further, none of the three cases[16] alter the fact that the speech at issue related to Plaintiff's official duties.

### iii.    Count III: No Violation of a Clearly-Established Equal Protection Right

In opposing qualified immunity for Count III, Plaintiff relies solely on *Lautermilch v. Findlay City Schs.*, 314 F.3d 271 (6th Cir. 2003), and *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988) (PageID.1008). Contrary again to *Saucier*, she cites both cases only for a ***general*** proposition: that the Title VII legal framework applies to Equal Protection claims. (PageID.1005). Neither decision involved treating a religious accommodation request differently than non-religious accommodations of a different kind. There is simply no Supreme Court or Sixth Circuit precedent supporting such a claim, particularly where the "secular"

---

[16] In *Janus v. AFSCME*,  138 S. Ct. 2448 (2018), the Court held that the First Amendment prohibited a public employer from extracting agency fees from non-consenting employees. In *Nat'l Inst. of Fam. & Life Advocs. v. Becerra* (*NIFLA*), 138 S. Ct. 2361, 2368–69, 2378, 201 L.Ed.2d 835 (2018), the Court held that the Free Speech challenge to a California law requiring pregnancy centers to distribute government notices about publicly-funded abortion services was likely to succeed on the merits. And, in *Ward*, the Court held that the plaintiff's claim could proceed to a jury based on allegations that she was expelled from school for expressing her beliefs. *Ward*, 667 F.3d at 735.

accommodations allegedly given were from a ***different*** policy than the one from which the plaintiff asked to be excused. Certainly, the question was not "beyond debate." *al-Kidd, supra.*

### iv. Additional Qualified Immunity Grounds for Pierce, Smith and Pai

Plaintiff cites to dictum from the 1980 Sixth Circuit decision in *Hickman* (a retaliation case) to argue that the alleged recommendations of ***Pierce*** and ***Smith*** could make them liable. Retaliation is not claimed here. Further, *dictum* does not create a "clearly established right." *Bergman v. Howard*, 54 F.4th 950, 957 (6th Cir. 2022), cert. denied, 2023 WL 3158441 (May 1, 2023). And, as discussed, the Sixth Circuit's decision in *Hartman* (not a retaliation case) is more apposite. Plaintiff provides ***no*** controlling precedent allowing constitutional liability when considering the specific context of this case. *Saucier, supra.* Certainly, such basis for constitutional liability against Pierce and Smith was not "beyond debate" *al-Kidd, supra.*

Second, Plaintiff does not allege that ***Pai, Booker, Cole,*** or ***Smith*** harbored the alleged animus toward her religion that she attributes to Pierce. Instead, she alleges that their failure to "disavow" Pierce's alleged statements can form the basis for individual liability.[17] Plaintiff offers ***no*** clearly-established authority allowing individual liability under Section 1983 for not "disavowing" alleged discriminatory statements by a colleague. Thus, even ***if*** the claim against Pierce could survive, qualified immunity precludes damages against the other Defendants. Finally, with regard to ***Defendant Pai***, Plaintiff offers no controlling precedent that he can be liable for his alleged "ratification" without knowledge of material facts relating to the decisions at issue.

---

[17] Although Plaintiff premises her theory on *Masterpiece*, where certain of the voting commissioners did not "object" to the allegedly hostile commissioners, that decision has ***nothing*** to do with individual liability.

## E. NO INJUNCTIVE RELIEF AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

Plaintiff withdraws all injunctive relief sought from Defendants in Counts VI-VIII. (PageID.1010). She also withdraws her reinstatement request against Defendants in their individual capacities, which was sought in Counts I-III and VI-VIII. *Id.* Thus, the only injunctive relief Plaintiff seeks against Defendants in their individual capacities is the generic one in Counts I-III to prohibit "future such [unconstitutional] acts."[18]

The latter request is entirely inconsistent with Plaintiff's acknowledgment that she cannot seek reinstatement against Defendants in their individual capacities. (PageID.1010). Of course, if Plaintiff is not reinstated she cannot be subject to allegedly unconstitutional acts. Plaintiff cites *Moncier v. Jones*, 557 F.App'x 407 (6th Cir. 2014), where the Court, in dictum, simply questioned why the plaintiff did not name the successor of a defendant who left the job. It did not award injunctive relief against individuals acting in their individual capacities.[19] Further, that would contradict the express contrary authorities from the Sixth Circuit and elsewhere cited by Defendants. (PageID.676). Plaintiff's remaining individual-capacity claims for injunctive relief should be dismissed.

## F. BOOKER, COLE, PIERCE AND SMITH COULD NOT REINSTATE PLAINTIFF OR OTHERWISE REMEDY THE ALLEGED VIOLATIONS

Plaintiff insists that because ***Booker*** and ***Cole*** allegedly (on "information and belief") terminated her, she also necessarily pleaded facts that they have authority to reinstate her.[20] However, Plaintiff alleges that Defendant ***Pai*** "made the ultimate decision to fire" her and was

---

[18] PageID.550, 553-554, 556, ¶¶ 233, 252, 265.

[19] Nor did this Court rule on the issue in *Horacek v. Heyns*, No. 13-280, 2016 WL 11263235 (W.D. Mich. Dec. 15, 2016), *report and recommendation adopted*, 2017 WL 1190551 (W.D. Mich. Mar. 31, 2017).

[20] As noted, Plaintiff withdraws her request for reinstatement against Defendants in their individual capacities. (PageID.1010).

the "final decisionmaker" with regard to policies. (PageID.528, 531, ¶¶ 110, 120). Therefore, there should be no request for injunctive relief from **Booker** and **Cole**. See e.g., *Dye v. Office of Racing Comm'n,* 692 F.Supp.2d 706, 708,  711 (E.D. Mich. 2010) (although the plaintiff alleged that Racing Commissioner White and Deputy Commissioner Post terminated him, the Court dismissed the request for reinstatement against Post because "[t]he Court cannot issue an injunction that requires Defendant Post to take an employment action when authority to take that action rests with the racing commissioner; not with Defendant Post"). Nor has Plaintiff pleaded facts that **Pierce** and **Smith** have authority to reinstate her or rescind or alter enforcement of UMHW policy. The claims for injunctive relief against Booker, Cole, Pierce and Smith should be dismissed.

### G. DISMISSAL OF PLAINTIFF'S INJUNCTIVE RELIEF REQUESTS MAKES DECLARATORY RELIEF IMPERMISSIBLE UNDER THE ELEVENTH AMENDMENT

With respect to Counts I-III, Plaintiff does not dispute that if the claims for injunctive relief cannot proceed, her claims for declaratory relief are uncoupled from the injunctive relief and thus barred by the Eleventh Amendment. Further, as noted, Plaintiff withdrew her official-capacity requests for injunctive relief in Counts VI-VIII, which requires dismissal of the associated claims for declaratory relief.

### III.    CONCLUSION

For the foregoing reasons, Defendants Pai, Cole, Pierce, Smith and Booker respectfully

request that this Honorable Court grant their Motion to Dismiss.

HALL RENDER KILLIAN HEATH & LYMAN, PC

/s/ Jonathon A. Rabin
Jonathon A. Rabin (P57145)
Larry R. Jensen (P60137)
Attorneys for Individual Defendants
101 W. Big Beaver Road, Suite 745
Troy, MI  48084
(248) 740-7505
jrabin@hallrender.com
ljensen@hallrender.com

June 1, 2023

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

This Brief complies with the word limit of L. Civ. R. 7.2(c) because, excluding the parts exempted by that Rule, it contains 4,277 words. The word count was generated using Microsoft Word for Microsoft 365 MSO.

Respectfully submitted,

HALL RENDER KILLIAN HEATH & LYMAN, PC

/s/ Jonathon A. Rabin
Jonathon A. Rabin (P57145)
Larry R. Jensen (P60137)
Attorneys for Individual Defendants
101 W. Big Beaver Road, Suite 745
Troy, MI  48084
(248) 740-7505
jrabin@hallrender.com
ljensen@hallrender.com

June 1, 2023
4873-4134-0772v9