UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

VALERIE KLOOSTERMAN

    Plaintiffs

v.

METROPOLITAN HOSPITAL, d/b/a
UNIVERSITY OF MICHIGAN HEALTH-WEST;
RAKESH PAI, an individual; RHAE-ANN
BOOKER, an individual; MARLA COLE, an
individual; THOMAS PIERCE, an individual; and
CATHERINE SMITH, an individual.

    Defendants.

Civil Action No. 1:22-cv-00944
Hon. Jane M. Beckering

**REPLY BRIEF IN SUPPORT OF DEFENDANT UNIVERSITY OF MICHIGAN HEALTH WEST'S MOTION TO DISMISS PLAINTIFF'S CORRECTED FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.   INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF LAW .............................................................................................. 1

   A.  PLAINTIFF DOES NOT ALLEGE A PLAUSIBLE TITLE VII RELIGIOUS
       DISCRIMINATION CLAIM BASED UPON DISPARATE TREATMENT
       (COUNT IV) ........................................................................................................... 1

   B.  PLAINTIFF DOES NOT ALLEGE A PLAUSIBLE TITLE VII DISPARATE
       TREATMENT FAILURE TO ACCOMMODATE CLAIM (COUNT IV) ...................... 5

   C.  THE COURT SHOULD DISMISS PLAINTIFF'S TITLE VII DISPARATE
       IMPACT CLAIM (COUNT V) ................................................................................. 8

   D.  PLAINTIFF CONCEDES THAT THIS COURT SHOULD DISMISS ALL
       STATE LAW CLAIMS AGAINST UMHW BASED UPON ITS ELEVENTH
       AMENDMENT IMMUNITY ................................................................................. 12

III. CONCLUSION ........................................................................................................... 12

LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE ........................................................ 13

# **TABLE OF AUTHORITIES**

**Cases**

*Adams v. City of Indianapolis*, 742 F.3d 720 (7th Cir. 2014) .......................................................... 9

*Ali v. Ashcroft*, 213 F.R.D. 390 (W.D. Wash. 2003) ...................................................................... 8

*Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 107 S. Ct. 367, 93 L. Ed. 2d 305 (1986) ............................................................................................................................................ 6

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................... 4

*Blalack v. Metals Trades, Inc.*, 775 F.2d 703 (6th Cir. 1985) ....................................................... 2

*Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141 (5th Cir. 1982) ..................................................... 6

*Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725 (N.D. Ill. 2017) .................................. 8

*Bush v. Dictaphone Corp.*, 161 F.3d 363 (6th Cir. 1998) .............................................................. 3

*Coe v. Yellow Freight System, Inc.*, 646 F.2d 444 (10th Cir. 1981) ........................................... 11

*Coral Ridge Ministries v. Amazon.com, Inc*, 406 F.Supp.3d 1258 (M.D. Ala. 2019), *aff'd*, 6 F.4th 1247 (11th Cir. 2021) ................................................................................................. 11

*Darby v. Temple Univ.*, 216 F. Supp. 3d 535 (E.D. Pa. 2016) ...................................................... 5

*Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929 (CS), 2023 WL 3467143 (S.D.N.Y. May 15, 2023) ................................................................. 7

*Dunbar v. Walt Disney Co.*, No. 22-1075, 2022 WL 18357775 (C.D. Cal. July 25, 2022) .......................................................................................................................................... 11

*EEOC v. Arlington Transit Mix*, 957 F.2d 219 (6th Cir. 1991) ...................................................... 5

*EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307 (4th Cir. 2008) .................................... 6

*EEOC v. Peoplemark*, Inc., 732 F.3d 584 (6th Cir. 2013) ............................................................. 8

*Franciscan All. Inc. v. Becerra*, 553 F.Supp.3d 361 (N.D. Tex. 2021) ........................................ 7

*Goller v. Ohio Dep't of Rehab & Correction*, 285 F.App'x 250 (6th Cir. 2008) ......................... 4

*Goodrich v. Good Samaritan Reg'l Health Ctr.*, No. 22-cv-2950-DWD, 2023 WL 3043282 (S.D. Ill. Apr. 21, 2023) ......................................................................................... 7

*Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1972) ...................... 11

*Harris v. Mayorkas*, No. 21-CV-1083 (GMH), 2022 WL 3452316 (D.D.C. Aug. 18, 2022) ................................................................................................................................. 4

*Harris v. Vanguard Grp., Inc.*, No. 15-00382, 2016 WL 110600 (W.D.N.C. Jan. 8, 2016), *aff'd sub nom. Harris v. The Vanguard Grp., Inc.*, 667 F. App'x 815 (4th Cir. 2016) ................................................................................................................................. 4

*Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F3d. 921 (6th Cir. 1999) ................................................................................................................................. 1

*Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523 (6th Cir. 2012) ................................................................................................................................. 3

*Johnson v. United Parcel Serv., Inc.*, No. 14-4003, 2015 WL 404019 (D. Md. June 30, 2015) ................................................................................................................................. 6

*McDaniel v. Essex International, Inc.*, 571 F.2d 338 (6th Cir. 1978) ............................................ 5

*Moallin v. Cangemi*, 427 F. Supp. 2d 908 (D. Minn. 2006) ............................................................ 7

*Murdick v. Catalina Mktg. Corp.*, 496 F. Supp. 2d 1337 (M.D. Fla. 2007) .................................. 3

*Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333 (2d Cir. 1974) ........................................ 11

*Preston v. Berendsen Fluid Power*, 125 F. Supp. 2d 245 (W.D. Mich. 2000)(*quoting Venters v. City of Delphi*, 123 F.3d 956, 973 (7th Cir. 1997) ...................................................... 2

Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) ............... 3

*Reidt v. Cnty. of Trempealeau*, 975 F.2d 1336 (7th Cir. 1992) ................................................... 11

*Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544 (6th Cir. 2004) ................................ 1

*SKS Merch, LLC v. Barry*, 233 F. Supp. 2d 841 (E.D. Ky. 2002) .................................................. 8

*Slater v. Douglas Cnty*, 743 F. Supp. 2d 1188 (D. Or. 2010) .......................................................... 5

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 135 S. Ct. 2507, 192 L. Ed. 2d 514 (2015) ......................................................................... 9

*Von Behren v. Plainfield Cmty. Consol. Sch. Dist. 202*, No. 14 C 4618, 2014 WL 6819538 (N.D. Ill. Dec. 2, 2014) ................................................................................................. 11

*Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362 (6th Cir. 2015) ...................................... 6

**Other Authorities**

Elliott-Larsen Civil Rights Act ...................................................................................................... 12

Internal Revenue Code .................................................................................................................... 7

Michigan Constitution ............................................................................................................ 12

Title II of the Civil Rights Act............................................................................................... 11

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 6, 12

## I. INTRODUCTION

Plaintiff Valerie Kloosterman ("Plaintiff") concedes in her Response to Defendant University of Michigan Health-West's ("UMHW" or "Defendant") Motion to Dismiss that her state law claims against UMHW (Counts VI through IX) are barred by the Eleventh Amendment and "agrees to dismiss" them. (PageID.822). Plaintiff's two remaining claims against UMHW seek relief under Title VII based upon a disparate treatment theory (Count IV) and a disparate impact theory (Count V). For the reasons stated herein and in UMHW's initial Brief (ECF No. 37), Plaintiff's remaining counts fail to state claims and therefore, should be dismissed too.

## II. STATEMENT OF LAW

### A. PLAINTIFF DOES NOT ALLEGE A PLAUSIBLE TITLE VII RELIGIOUS DISCRIMINATION CLAIM BASED UPON DISPARATE TREATMENT (COUNT IV).

Plaintiff is mistaken that her Corrected First Amended Complaint ("FAC") pleads both direct and circumstantial evidence of disparate treatment. (PageID.798). First with regard to Plaintiff's theory of direct evidence, Plaintiff claims that the FAC includes "multiple allegations of hostile statements *demonstrating animus to her religious beliefs*." (PageID.800). However, a closer examination of the FAC reveals only that alleged hostile statements were made by one UMHW representative, Defendant Pierce, who supposedly called Plaintiff "evil" and a "liar." (PageID.525-26, ¶¶91, 94).

These alleged "hostile statements" do not, however, give rise to a plausible Title VII direct evidence discrimination claim for two reasons. First, the two words allegedly uttered by Defendant Pierce are not direct evidence as a matter of law. According to the Sixth Circuit, direct evidence of discrimination is "evidence that provides the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). *See also*, *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F3d. 921, 926 (6th Cir. 1999)

1

(holding that direct evidence in discrimination cases is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.").[1]

Plaintiff, unpersuasively and unsuccessfully, attempts to equate the two words supposedly uttered by Defendant Pierce to the "religious charged language" in *Blalack v. Metals Trades, Inc.*, 775 F.2d 703 (6th Cir. 1985). (PageID.800-01). In *Blalack*, the Sixth Circuit found that direct evidence of discrimination included when, at the plaintiff's termination, the plaintiff's supervisor made biblical reference to "feigned obedience" and told the plaintiff to "consider yourself laid off…until the situation with you and [a mutual acquaintance, who was a self-described apostle,] is settled." *Blalack*, 775 F.3d at 705, 708. Here, the alleged name calling of Plaintiff ("evil" or a "liar") by Defendant Pierce occurred at a meeting almost one month before her termination. (PageID.525-26, 527-58, ¶¶ 91, 94, 105). Unlike in *Blalack*, the FAC here reflects that Defendant Pierce's two alleged words make ***no*** reference or inference to Plaintiff's religious beliefs or, more importantly, to the alleged adverse employment action, her termination. *See Preston*, 125 F. Supp. 2d at 251 (rejecting the plaintiff's claim that sales manager's comments to the plaintiff's co-workers, to the effect that women did not belong in industrial sales, was direct evidence that she was given less favorable sales accounts due to her sex because there was no "evidence linking [the sales manager's] remarks to the particular [adverse] actions she complains of"). The allegations here require inference to conclude that Defendant Pierce was calling Plaintiff "evil" or a "liar" *because of* her particular beliefs and, more importantly, that his supposed views impacted her termination nearly a month later.

---

[1] Further, "inappropriate but isolated comments that amount to no more than 'stray remarks' in the workplace will not do." *Preston v. Berendsen Fluid Power*, 125 F. Supp. 2d 245, 250–51 (W.D. Mich. 2000)(quoting *Venters v. City of Delphi*, 123 F.3d 956, 973 (7th Cir. 1997).

Instead, *Murdick v. Catalina Mktg. Corp.*, 496 F. Supp. 2d 1337 (M.D. Fla. 2007), is instructive here. In *Murdick*, the plaintiff alleged that a statement made by a supervisor (on whose review the termination decision was allegedly made), that the plaintiff was "evil" because he was Buddhist, constituted direct evidence. *Murdick*, 496 F. Supp. 2d at 1349. However, the *Murdick* court rejected the plaintiff's contention, instead finding:

> Murdick's statements, if true, clearly prove that he considered Buddhists evil, but standing alone ***they do not prove that he would take adverse action based on his negative feelings***. They might suggest that he would [take adverse action] given the context in which they were said, but the requirement of knowing the context, i.e. inferring the true meaning, makes them circumstantial evidence, not direct evidence. Therefore, a direct evidence approach is not applicable to the instant case…

*Id*. at 1350 (emphasis added). As in *Murdick*, the allegations here that Defendant Pierce called Plaintiff "evil" and a "liar" are insufficient to state a plausible Title VII disparate treatment claim based upon direct evidence.

Additionally, even if Defendant Pierce called Plaintiff "evil" and a "liar," Plaintiff does not allege that he was a decision-maker in Plaintiff's termination such that direct evidence could be found. "'[S]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden ...' of demonstrating animus." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (quoting *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring)). *See also Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 534–35 (6th Cir. 2012) (rejecting assertion that Deputy Anderson's memo constituted direct evidence of reverse discrimination because Deputy Anderson was not the decision maker in the promotion process, but only participated in the process by completing a supervisor survey.). Plaintiff's Response fails to allege that Defendant Pierce was a decision-maker. Plaintiff also ignores UMHW's reliance on *Goller v. Ohio Dep't of Rehab & Correction*, 285 F.App'x 250, 255

3

(6th Cir. 2008). (PageID.721). For these reasons too, Plaintiff fails to state a Title VII disparate treatment claim based upon direct evidence.

As to Plaintiff's Title VII disparate treatment claim based upon circumstantial evidence, Plaintiff contends that she is not required to identify her comparators to survive a motion to dismiss. (PageID.799-800). Plaintiff disregards the authority cited in UMHW's Brief that courts within the Sixth Circuit routinely dismiss complaints at the motion to dismiss stage for failure to allege that they were treated differently than their comparables. (PageID.700-701). *See also Harris v. Mayorkas*, No. 21-CV-1083 (GMH), 2022 WL 3452316, at *6 (D.D.C. Aug. 18, 2022) (summarizing over a dozen federal cases where courts "have not hesitated to dismiss disparate treatment Title VII claims with comparable pleading deficiencies."). Plaintiff is required to plead "sufficient factual matter…to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotations and citation omitted). The court aptly explained in *Harris v. Vanguard Grp., Inc.*, No. 15-00382, 2016 WL 110600 (W.D.N.C. Jan. 8, 2016), "[a]s to the requirement of pleading that she was treated differently than a person who did not share her beliefs, plaintiff's obligation was to plead some plausible facts that, if later proven, could support a jury in finding that similarly situated, non-Christian employees of defendant received better treatment." *Harris*, No. 315CV00382MOCDSC, 2016 WL 110600, at *2 (W.D.N.C. Jan. 8, 2016), *aff'd sub nom. Harris v. The Vanguard Grp., Inc.*, 667 F. App'x 815 (4th Cir. 2016).

Rather than alleging a plausible theory that similarly situated individuals were treated differently than Plaintiff, she simply offers the vague allegation that other "coworkers in her clinic at the same or higher level commonly declined to provide certain services and were not fired as result" is sufficient to withstand UMHW's motion to dismiss. (PageID.803). The authority cited on pages 9 and 10 of UMHW's initial Brief establish otherwise. (PageID.700-701). Moreover,

4

there are no factual allegations to make Plaintiff's assertion plausible. While Plaintiff contends that Dr. Kogut is a "comparable nonprotected person [who] was treated better," missing from the FAC are allegations about the religious beliefs held by Dr. Kogut or anyone else to whom Plaintiff compares herself. (PageID.802) *Cf. Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 542–43 (E.D. Pa. 2016) (finding that the plaintiff's comparative evidence was sufficient to state a plausible discrimination claim based upon religion where plaintiff, a housekeeper, alleged that a co-worker who was also a housekeeper and a Muslim was not disciplined for threatening coworkers, while plaintiff, a Baptist, was fired for the same thing).

As such, whether based upon a direct or circumstantial evidence theory, Plaintiff's FAC fails to state a claim for Title VII disparate treatment based upon her religious beliefs. Therefore, Count IV must be dismissed.

### B. PLAINTIFF DOES NOT ALLEGE A PLAUSIBLE TITLE VII DISPARATE TREATMENT FAILURE TO ACCOMMODATE CLAIM (COUNT IV).

Defendant argued that the alleged failure to accommodate Plaintiff was not, in itself, an adverse employment action such that this would itself be actionable. (PageID.705-706). Plaintiff offers no contrary authority. Defendant does not dispute that termination constitutes an adverse employment action, but that is not the subject of Section IV.B.1 of Defendant's initial Brief. Plaintiff's disparate treatment failure to accommodate claim must be dismissed.

Nevertheless, according to Plaintiff, UMHW made "no attempt" or "any effort whatsoever" to accommodate Plaintiff's religious beliefs. (PageID.804, 807). In Plaintiff's cited cases, the defendants had a "wait-and-see posture," made no inquiry to find out about the accommodation request, or otherwise failed to make some effort to accommodate. *EEOC v. Arlington Transit Mix*, 957 F.2d 219, 222 (6th Cir. 1991); *McDaniel v. Essex International, Inc.*, 571 F.2d 338, 342 (6th Cir. 1978); and *Slater v. Douglas Cnty*, 743 F. Supp. 2d 1188, 1193 (D. Or. 2010). Contrary to

5

Plaintiff's cited cases, but consistent with Plaintiff's allegations, UMHW cooperated and made an effort to accommodate her by meeting Plaintiff on July 1, 2021, and again on July 29, 2021, to discuss and ask questions related to her religious accommodation request. (PageID.524, 525, 526, ¶¶ 82, 84, 97). *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69, 107 S. Ct. 367, 372, 93 L. Ed. 2d 305 (1986) (*quoting Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 145-56 (5th Cir. 1982) ("bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business.").

Plaintiff argues that it is "premature" to make a decision on her claim at the motion-to-dismiss stage. (PageID.806, 788). However, the case law cited by Plaintiff does not aid Plaintiff in refuting UMHW's argument that she fails to state a Title VII disparate treatment claim alleging failure to provide a religious accommodation.[2]

Controlling authority cited in UMHW's Brief makes clear that Title VII does **not** require employers to provide accommodation that place it on the "razor's edge" of increasing its risk of legal liability or violating federal or state law. (PageID.707-08). Nor does Title VII require an employer "'to wait until it [feels] the effects' of the proposed accommodation before determining its reasonableness." *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 317 (4th Cir. 2008) (citations omitted). Additionally, courts routinely dismiss Title VII failure to accommodation claims based upon the pleadings where the employer's granting of the employee's requested religious accommodation would violate law.[3]

---

[2] Plaintiff also attempts to argue for the reasonableness of her accommodation request by outlining non-binding guidance from the EEOC and the legal standard for what constitutes a reasonable accommodation under Title VII. (PageID.805-06). However, unlike the question of whether Plaintiff has stated a claim, "[t]he reasonableness of the accommodation, if indeed feasible and provided, is a question reserved for a later stage" and not the motion to dismiss stage. *Johnson v. United Parcel Serv., Inc.*, No. 14-4003, 2015 WL 404019, *9 (D. Md. June 30, 2015).

[3] *See Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363-64 (6th Cir. 2015)(affirming district court's dismissal of the complaint alleging a Title VII violation under Fed. R. Civ. P.

6

Plaintiff erroneously argues in her Response that "the Hospital admitted that any hardship from accommodating Ms. Kloosterman was purely hypothetical, citing Ms. Kloosterman's complaint…" (PageID.810). UMHW did not make such admission. There is no basis to conclude that UMHW's obligation to comply with *existing* federal law represents a "hypothetical" hardship. Further, Plaintiff cannot dispute that accommodating Plaintiff's requests to: (i) not use patients' preferred pronouns, (ii) not document patients' preferred pronouns in medical records, and (iii) not refer to patients to alternate providers for medical services, would have---at a minimum---increased UMHW's *risk* of legal liability.

Plaintiff relies on a Texas federal district court's order, in *Franciscan All. Inc. v. Becerra*, 553 F.Supp.3d 361 (N.D. Tex. 2021), enjoining enforcement of Section 1557 against current and future members of the Christian Medical and Dental Association ("CMDA"), 15 days prior to Plaintiff's termination.[4]  She argues that this order "undercuts any argument the Hospital could have incurred liability for accommodating her religious beliefs." (PageID.816). Plaintiff, however, fails to allege that UMHW knew or even had reason to know, that: (i) Plaintiff is a CMDA member, and (ii) UMHW, a health system in West Michigan, was aware that a non-binding court in North Texas enjoined enforcement of Section 1557 against CMDA members. *Cf. Moallin v. Cangemi*, 427 F. Supp. 2d 908, 912 (D. Minn. 2006) (petitioner received written notice from ICE of

---

12(b)(6) where defendant employer's requirement to collect plaintiff's social security numbers was required by the Internal Revenue Code); *Goodrich v. Good Samaritan Reg'l Health Ctr.*, No. 22-cv-2950-DWD, 2023 WL 3043282, *5 (S.D. Ill. Apr. 21, 2023)("dismissal of an employee's Title VII claim because of undue hardship is appropriate where, in granting the employee's accommodation request, the employer would be required to violate state or federal law."); and *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929 (CS), 2023 WL 3467143, at *5-6 (S.D.N.Y. May 15, 2023)("Title VII cannot be used to require employers to break the law.").

[4] The August 24, 2021 *Franciscan Alliance* decision from the Northern District of Texas is referred to as "*Franciscan Alliance* IV."  The case continued however with additional holdings made in 2022 (well after Kloosterman's termination), often referred to as ""*Franciscan Alliance* V."

7

nationwide injunction barring removal of certain aliens to Somali as required by *Ali v. Ashcroft*, 213 F.R.D. 390, 397 (W.D. Wash. 2003)); and *SKS Merch, LLC v. Barry*, 233 F. Supp. 2d 841, 851 (E.D. Ky. 2002) ("Rule 65(d) requires actual notice, by service or otherwise, for an unnamed person acting in concert or participation with a named defendant to be bound by an injunction. Actual notice can and will be given when the nationwide injunction is served upon bootleg vendors throughout the country.").

Plaintiff's historical review of Section 1557 in her Response confuses the issues and deflects from the fact that Section 1557 prohibited UMHW, a federally funded covered entity, from discriminating against patients on the basis of sex, including gender identity. Furthermore, UMHW's increased liability risk was real, as courts have implicitly recognized that a private right of action exists under Section 1557. *Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725, 737 (N.D. Ill. 2017).

Finally, Plaintiff fails to plead facts that individuals like Dr. Kogut, who allegedly received accommodations from having to provide "certain services," requested accommodations or that they sought accommodation from a particular UMHW policy. For each of these additional reasons, the Court should dismiss Plaintiff's Title VII disparate treatment failure to accommodate claim.

### C. THE COURT SHOULD DISMISS PLAINTIFF'S TITLE VII DISPARATE IMPACT CLAIM (COUNT V).

Plaintiff appears to argue that her burden, to survive UMHW's Motion to Dismiss her Title VII disparate impact claim, is "to *simply* allege a specific practice that plausibly causes a disparate impact on a protected group." (PageID.817) (emphasis added) (*citing EEOC v. Peoplemark*, Inc., 732 F.3d 584, 591-92 (6th Cir. 2013). Plaintiff, however, oversimplifies her burden here. Plaintiff has not stated a Title VII disparate impact claim upon which relief can be granted.

Plaintiff ignores the authority cited in UMHW's Brief (PageID.711-712) that, in addition to alleging a specific employment practice, she must *also* allege facts to support a plausible claim that UMHW's facially neutral policy ***disproportionately and adversely affects a particular protected group***. Instead, Plaintiff contends that she does not have to prove that a policy or practice exists and causes a disparate impact on a protected group until after discovery. (PageID.818). Such contention is contrary to binding authority. In *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 135 S. Ct. 2507, 192 L. Ed. 2d 514 (2015), the Supreme Court explained that a plaintiff bringing a disparate impact claim must allege more than a specific practice or policy and found that "[a] plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection [between the policy and a disparate impact] cannot make out a prima facie case of disparate impact." *Texas Dep't of Hous.*, 576 U.S. at 543.[5] *See also*, *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014) (holding that, although "[d]isparate-impact plaintiffs are permitted to rely on a variety of statistical methods and comparison to support their claims," the "amended complaint contains no allegations of the kind, nor any other factual material to move the disparate-impact claims over the plausibility threshold.").[6]

Here, the FAC *lacks* allegations that UMHW's policies or practices of (1) respecting independent medical judgment on issues but not on gender reassignment issues and (2) disciplining employees for expressing, mentioning or suggesting that they hold traditional beliefs on issues

---

[5] In *Texas Dep't of Hous.*, the Supreme Court examined whether the Fair Housing Act prohibited housing decisions which had a disparate impact. *Texas Dep't of Hous.*, 576 U.S. at 530. In its analysis of such issue, the Supreme Court closely examined Title VII and found that "cases interpreting Title VII and the ADEA provide essential background and instruction in the case before the Court." *Id.* at 533.

[6] The FAC lacks any statistical or factual allegations that UMHW's policies or practices disparately impact Plaintiff's alleged protected group.

9

related to sexual morality, sexual orientation, or gender identity, disparately impact a protected group of professionals. Instead, Plaintiff asserts that UMHW's alleged policies or practices have a disparate impact upon (a) multiple religious groups with particular belief(s) and (b) Plaintiff. *See* PageID.561, ¶304 ("University of Michigan Health-West violated its own policy when it excluded Ms. Kloosterman and treated her differently because of her religion."); PageID.562, ¶310 ("This policy or practice has a disparate impact on religious employees and Christian employees in particular, including Ms. Kloosterman"); and PageID.562, ¶311 ("This policy or practice has a disparate impact on employees like Ms. Kloosterman with traditional religious views on sex or gender.").

Plaintiff maintains in her Response that "employees who share ***her*** religious beliefs" is an appropriate protected group to make out a Title VII disparate impact claim. (PageID.788, 821-22) (emphasis added). According to Plaintiff, this purported protected group of religious employees who hold traditional religious beliefs concerning sex and gender is proper because "courts have protected a wide variety of religious beliefs and practices under Title VII" (PageID.821). Plaintiff's contention, however, misses the key argument raised by UMHW in its Initial Brief that Plaintiff's purported group of "employees who share her religious beliefs," or alternatively identified as "religious employees, particularly Christians, who hold traditional religious beliefs concerning sex and gender" is a self-serving definition which could impact 100% of the members defined in the protected group. (PageID.714; 788, 821-22). As acknowledged by the court in *Coral Ridge Ministries*, such a narrowly defined protected group of employees who share Plaintiff's religious beliefs "would virtually always amount to a disproportionate impact as compared to those falling outside the class." *Coral Ridge Ministries v. Amazon.com, Inc*, 406 F.Supp.3d 1258, 1306, n.36

(M.D. Ala. 2019), *aff'd*, 6 F.4th 1247 (11th Cir. 2021).[7] For instance, in *Dunbar v. Walt Disney Co.*, No. 22-1075, 2022 WL 18357775, at *3 (C.D. Cal. July 25, 2022), the court, in reviewing a plaintiff's Title VII disparate impact claim, quoted *Coral Ridge* and explained that "courts generally treat disparate impact claims as those affecting particular groups or faiths, including articulable sub-groups, but ***not all those who share a single common belief.***" (emphasis added).

Because the allegations related to Plaintiff's purported protected group (who are disparately impacted by UMHW's practice or policy) are insufficient to state a plausible Title VII disparate impact claim, all that remains in the FAC is that UMHW's practice or policy excluded Plaintiff or had a disparate impact upon Plaintiff. (PageID.562, ¶¶ 304, 310-311). When bringing a Title VII disparate impact claim, Plaintiff must allege that "the policy in question has an adverse impact ***beyond the single plaintiff.***" *Von Behren v. Plainfield Cmty. Consol. Sch. Dist. 202*, No. 14 C 4618, 2014 WL 6819538, at *5 (N.D. Ill. Dec. 2, 2014)(emphasis added). In *Von Behren*, the court held that the complaint did not state a disparate impact claim because, among other things, it lacked allegations that individuals other than the plaintiff were adversely affected by the policy. *Id.* at *5-6. *See also*, *Reidt v. Cnty. of Trempealeau*, 975 F.2d 1336, 1341 (7th Cir. 1992) (*quoting Coe v. Yellow Freight System, Inc.*, 646 F.2d 444, 451 (10th Cir. 1981) ("[D]iscriminatory impact cannot be established where you have just one isolated decision."). Like the plaintiff in *Von Behren*, Plaintiff's Title VII disparate impact claim here fails to state a claim and should be dismissed.

---

[7] In her Response, Plaintiff tries (unsuccessfully) to distinguish her purported protected group from *Coral Ridge* by claiming *Coral Ridge* examined Title II of the Civil Rights Act, and not Title VII. (PageID.821). Such distinction is unavailing as courts utilize the principles of law for Title VII disparate impact claims interchangeably with Title VII disparate impact claims. *See e.g., Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333, 1340 (2d Cir. 1974) (applying the Supreme Court's Title VII disparate impact analysis outlined in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1972), to determine whether the defendant's guest rules were discriminatory under Title II).

D. **PLAINTIFF CONCEDES THAT THIS COURT SHOULD DISMISS ALL STATE LAW CLAIMS AGAINST UMHW BASED UPON ITS ELEVENTH AMENDMENT IMMUNITY.**

Plaintiff agrees to dismiss her claims against UMHW under the Michigan Constitution (Counts VI through VIII) and the Elliott-Larsen Civil Rights Act (Count IX) because they are barred by the Eleventh Amendment. (PageID.822). Therefore, this Court should dismiss Counts VI through IX.

### III. CONCLUSION

Defendant University of Michigan Health West respectfully requests that this Honorable Court grant its Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), dismiss all of Plaintiff's claims pending against it, and grant Defendant UMHW costs and such other relief as this Court deems proper.

Respectfully submitted,

HALL RENDER KILLIAN HEATH & LYMAN, PC

/s/ Jonathon A. Rabin
Jonathon A. Rabin (P57145)
Larry R. Jensen (P60137)
Attorneys for UMHW
101 W. Big Beaver Road, Suite 745
Troy, MI  48084
(248) 740-7505
jrabin@hallrender.com
ljensen@hallrender.com
June 1, 2023

**CERTIFICATE OF COMPLIANCE**

This Brief complies with the word limit of L. Civ. R. 7.2(c) because, excluding the parts exempted by that subrule, it contains 3,798 words. The word count was generated using Microsoft Word for Microsoft 365 MSO.

Respectfully submitted,

/s/ Jonathon A. Rabin
Jonathon A. Rabin (P57145)
Larry R. Jensen (P60137)
Attorneys for UMHW
101 W. Big Beaver Road, Suite 745
Troy, MI 48084
(248) 740-7505
jrabin@hallrender.com
ljensen@hallrender.com
June 1, 2023

4868-6293-0535v1