**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

VALERIE KLOOSTERMAN,

       *Plaintiff*,

  v.

METROPOLITAN HOSPITAL, d/b/a University
of Michigan Health-West, et al.,

       *Defendants*.

No. 1:22-cv-00944-JMB-SJB
Hon. Jane M. Beckering

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT TO COMPEL ARBITRATION

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF RELEVANT FACTS .............................................................................. 2

ARGUMENT ...................................................................................................................... 4

I.     Defendants Waived the Opportunity to Seek Arbitration Because Their Litigation Actions are Completely Inconsistent with Such Reliance .................................... 4

II.    Ms. Kloosterman's Claims Are Not Subject to the Arbitration Clause in the Agreement ....................................................................................................... 13

    A.  Ms. Kloosterman's Claims Against UMHW Are Not Subject to the Arbitration Clause ........................................................................................................ 14

    B.  Ms. Kloosterman's Claims Against the Individual Defendants Are Not Subject to the Arbitration Clause. ....................................................................................... 20

III.   There is a Strong Public Interest in Keeping Cases Involving Employment Discrimination and Constitutional Rights in Court Rather than Sending Them to Arbitration. ...................................................................................................... 23

IV.   If the Court Considers Defendants' Motion under the Summary Judgment Standard, It Should Bar Defendants from Filing a Second Motion for Summary Judgment. .............. 26

CONCLUSION ................................................................................................................... 28

LOCAL RULE 7.2 CERTIFICATE OF COMPLIANCE ........................................................ 30

## **TABLE OF AUTHORITIES**

**CASES**

*Adams v. Philip Morris, Inc.,* 67 F.3d 580 (6th Cir.1995) ...................................................... 16, 17

*Alexander v. Gardner–Denver, Co.*, 415 U.S. 36 (1974) ...................................................... passim

*Alternative Aviation Servs., Inc. v. Meggitt (UK) Ltd.*, 207 F. App'x 506 (6th Cir. 2006) ......... 27

*Arabian Motors Grp. W.L.L. v. Ford Motor Co.,* 19 F.4th 938 (6th Cir. 2021) ........................... 14

*Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011 (9th Cir. 2023) ..................................... 5, 6, 14

*Arnold v. Arnold Corp.*, 920 F.2d 1269 (6th Cir. 1990) ............................................................... 22

*AtriCure, Inc. v. Meng*, 12 F.4th 516 (6th Cir. 2021) ................................................................... 22

*Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728 (1981) .............................. 24, 25, 26

*Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832 (6th Cir. 2021) ....................... 14, 27

*Bromley v. Michigan Educ. Ass'n-NEA*, 82 F.3d 686 (6th Cir. 1996) ........................ 21, 22, 23, 27

*CSX Transportation, Inc. v. Benore*, 154 F.Supp.3d 541 (E.D. Mich. 2015) ............................ 5, 6

*Cullen v. Klein*, No. 291810, 2010 WL 3666758 (Mich. Ct. App. Sept. 21, 2010) ...... 13, 16, 18m

*E.E.O.C. v. Frank's Nursery & Crafts, Inc.,* 177 F.3d 448 (6th Cir. 1999) .............. 20, 21, 24, 26

*E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279 (2002) ............................................................. 13, 20

*Grundy v. FCA US LLC*, No. 20-CV-11231, 2022 WL 2824979 (E.D. Mich. May 11, 2022) .... 28

*Gunn v. NPC International, Inc.*, 625 F. App'x 261 (6th Cir. 2015) ................................. 10, 11, 12

*Harrison v. Gen. Motors LLC*, 651 F. Supp. 3d 878 (E.D. Mich. 2023) ..................................... 21

*Hescott v. City of Saginaw*, No. 10-13713, 2012 WL 13005302 (E.D. Mich. Oct. 3, 2012) ....... 28

*Heurtebise v. Reliable Bus. Computers*, 550 N.W.2d 243 (Mich. 1996) ................................ 25, 26

*Hooper v. Advance Am., Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917 (8th Cir. 2009) ..
.................................................................................................................... 7, 8, 9, 13

*Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, Loc. Lodge 1943 v. AK Steel Corp.*,
615 F.3d 706 (6th Cir. 2010) ................................................................................................ 15

*Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713 (6th Cir. 2012) .................... passim

*Knight v. Idea Buyer, LLC*, 723 F. App'x 300 (6th Cir. 2018) ..................................................... 26

*Lee Constr., LLC v. Bratton*, No. 1:22-CV-196, 2023 WL 5805848 (E.D. Tenn. July 28, 2023) . 5

*Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316 (6th Cir.1950) ............................................... 5

*McCall v. Chesapeake & Ohio Ry. Co.,* 844 F.2d 294 (6th Cir. 1988) ........................................ 24

*McDonald v. City of W. Branch, Mich.,* 466 U.S. 284 (1984) .............................................. passim

*McMullen v. Meijer, Inc.*, 355 F.3d 485 (6th Cir. 2004) ............................................................. 16

*Mitchum v. Foster*, 407 U.S. 224 (1972) .................................................................................... 21

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) .................................................................. passim

*Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646 (6th Cir. 2003) ......................... 15, 17, 18, 19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1. (1983) ............................... 20

*Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476 (5th Cir. 2009) ............................ 7

*Powell v. Sparrow Hosp.*, No. 10-206, 2010 WL 2901875 (W.D. Mich. July 23, 2010) ............. 23

*Reed Est. v. Reed*, 810 N.W.2d 284 (Mich. Ct. App. 2011) ......................................................... 6

*Rembert v. Ryan's Fam. Steak Houses, Inc.,* 596 N.W.2d 208 (Mich. Ct. App. 1999) .......... 15, 18

*Renny v. Port Huron Hosp.*, 398 N.W.2d 327 (Mich. 1986) ...................................................... 16

*Royal Ins. Co. of America v. Orient Overseas Container Line Ltd.*, 525 F.3d 409 (6th Cir. 2008)
..................................................................................................................................................... 15

*Schwebke v. United Wholesale Mortg., LLC*, No. 21-10154, 2023 WL 3901482 (E.D. Mich. June
8, 2023) ..................................................................................................................... 6, 11, 12

*Shaya v. City of Hamtramck*, No. 328588, 2017 WL 62015 (Mich. Ct. App. Jan. 5, 2017) .. 16, 19

*Solo v. United Parcel Serv. Co.,* 947 F.3d 968 (6th Cir. 2020) ............................................. passim

*Speerly v. Gen. Motors, LLC*, 343 F.R.D. 493 (E.D. Mich. 2023) ................................... 6, 7, 9, 10

*Spengler v. Worthington Cylinders*, 514 F.Supp.2d 1011 (S.D. Ohio 2007) .............................. 28

*St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585.
(7th Cir.1992) ............................................................................................................................ 7

iv

*Stevens-Bratton v. TruGreen, Inc*, 675 F. App'x 563 (6th Cir. 2017)............................................. 15

*Stewart v. Fairlane Cmty. Mental Health Ctr.*, 571 N.W.2d 542 (Mich. Ct. App. 1997) ........... 25

*Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000)......................................................................... 13

*Suchodolski v. Michigan Consolidated Gas Co*., 316 N.W.2d 710 (1982) .................................. 25

*Total Quality Logistics, LLC v. Traffic Tech, Inc.,* No. 22-3148, 2023 WL 1777387 (6th Cir. Feb. 6, 2023) ...................................................................................................................................... 14, 15

*Vanderlaan, M.D v. Michigan Med., P.C.*, No. 284678, 2009 WL 2003328 (Mich. Ct. App. July 9, 2009) ........................................................................................................................................ 16, 18

*White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334 (3d Cir. 2023).................................................... 6

**STATUTES**

42 U.S.C. § 1983.......................................................................................................................... passim

Elliott-Larsen Civil Rights Act, M.C.L. § 37.2801 ................................................................... 3, 25

**OTHER AUTHORITIES**

Committee Notes on Rule 56 – 2010 Amendment ................................................................. 26, 27

Edward Brunet, *Arbitration and Constitutional Rights*, 71 N.C. L. Rev. 81, 89 (1992)............. 25

Mara Kent, *Forced vs. Compulsory Arbitration of Civil Rights Claims,* 23(1) LAW & INEQ. 95 (2005)........................................................................................................................................... 21

## INTRODUCTION

After 13 months of litigation, including multiple motions to dismiss and a substantive merits decision by this Court, Defendants only now move to compel arbitration in an attempt to skirt this Court's jurisdiction. Yet recent unanimous Supreme Court precedent in *Morgan v. Sundance*, which Defendants ignore, makes clear that ordinary waiver rules apply to attempts to arbitrate, and thus Ms. Kloosterman need only show that Defendants' actions are inconsistent with reliance on an arbitration agreement. Defendants clearly waived arbitration, and this Court should deny their motion on that basis alone.

In addition to waiver, there are several other reasons to deny Defendants' motion. The parties did not agree to arbitrate because Ms. Kloosterman's 2009 Employment Agreement was with a different private entity, Metro Health Hospital, long before the merger with University of Michigan Health and before Individual Defendants began working there. If there was an agreement to arbitrate, its scope did not include civil rights claims based on Ms. Kloosterman's statutory and constitutional rights. Congress certainly did not intend constitutional claims under 42 U.S.C. § 1983 to be arbitrable, and likely did not intend Title VII claims to be arbitrable either. If the Court sends the Title VII claim to arbitration, it should stay the claims under §1983 and the ELCRA so that they can remain in court. If the Court sends all of Ms. Kloosterman's claims to arbitration, it should dismiss the entire case so that she can immediately appeal. Yet the simplest route, and the only correct route, is for this Court to deny Defendants' motion and allow discovery to proceed.

## STATEMENT OF RELEVANT FACTS

Ms. Kloosterman is a devout Christian who faithfully served her community from 2004 to 2021 as a third-generation healthcare professional (PageID.1237-38, ¶¶31-32; PageID.1242, ¶¶51-52). On November 19, 2009, after returning to work after the birth of her triplets, Ms. Kloosterman

1

signed a "Physician Assistant Employment Agreement" with Metro Health Hospital. Kloosterman

Decl., Ex. A. Section 28 of the Agreement included a vague arbitration provision:

> Any controversy, dispute or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled in accordance with the then existing rules of the American Arbitration Association and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The fees and expenses for such arbitration shall be paid equally by the Hospital and the Physician Assistant. (Kloosterman Decl., Ex. A, ¶ 28).

 Ms. Kloosterman did not have union representation or consult an attorney when she signed

this agreement, given that Metro Health was a nonunionized private entity, nor did she have any

opportunity to negotiate or discuss the terms before signing. Kloosterman Decl., ¶¶ 8-10. On

February 22, 2016, Ms. Kloosterman signed an amendment to this agreement, still with the private

entity named Metro Health Hospital. Kloosterman Decl., Ex. B. The amendment included only an

update to her status as a full-time employee and a salary increase. It included no mention of

University of Michigan Health-West, the Individual Defendants, arbitration, forum selection, or a

waiver of discrimination or constitutional claims. On June 30, 2021, Ms. Kloosterman signed a

second amendment, this time with "Metro Health – University of Michigan Health." Kloosterman

Decl., Ex. C. This amendment made minor changes but did not mention arbitration, forum

selection, or a waiver of discrimination or constitutional claims. Ms. Kloosterman did not have

union representation or consult an attorney when she signed either of these amendments, nor did

she have any opportunity to negotiate. Kloosterman Decl., ¶¶ 13-14.

Defendants wrongfully terminated Ms. Kloosterman's employment on August 24, 2021,

because of her religious beliefs and because she sought a religious accommodation from a training

module that required her to affirm statements which violated her religious beliefs. (PageID.1248-

53). On May 16, 2022, she filed a charge of discrimination with the EEOC. (PageID.1283). On

June 17, 2022, Ms. Kloosterman filed an updated charge after retaining counsel. (PageID.1286-

92). On July 14, 2022, the EEOC sent a Notice of Right to Sue letter to Ms. Kloosterman. (PageID.1294). On October 11, 2022, Ms. Kloosterman filed suit in this Court, bringing nine causes of action against six Defendants. (PageID.1).

On January 9, 2023, Defendants filed two motions to dismiss accompanied by a total of 86 pages of briefing. (PageID.196-286). Defendants then moved to stay discovery while the motions to dismiss were pending, (PageID.370-82), and refiled their motions to dismiss with updated arguments on February 20, 2023. (PageID.637-736). Ms. Kloosterman responded to the motions to dismiss on May 9, 2023, (PageID.780; PageID.967); and moved to amend her complaint. (PageID.824). This Court ruled on the motions to dismiss on September 20, 2023, allowing several of Ms. Kloosterman's key claims to proceed: her Title VII religious discrimination claim against the Hospital, her Free Exercise claim against the Individual Defendants under Section 1983, and her Equal Protection claim against the Individual Defendants under Section 1983. (PageID.1189). The Court also granted Ms. Kloosterman leave to amend her complaint and allege a claim under the Elliott-Larsen Civil Rights Act for monetary damages against the Individual Defendants. (PageID.1228). Ms. Kloosterman filed her Second Amended Complaint on October 11, 2023, after a full year of litigation. (PageID.1232). The parties met and conferred in accordance with Fed. R. Civ. P. 26(f) on October 19, and prepared a joint status report for the Court. Toney Decl., Ex. E. Defendants thereafter filed their Answer on October 25, (PageID.1345), prompting the Court to set a scheduling conference for November 21. (PageID.1452).

Only then, on November 2, 2023, after 13 months of litigation, did Defendants attempt to escape this Court's adjudication and change the forum to arbitration. (PageID.1456). For the reasons below, this Court should deny Defendants' Motion for Summary Judgment to Compel

Arbitration, and preclude Defendants from filing a second Motion for Summary Judgment in the future.

## <u>ARGUMENT</u>

### I.   Defendants Waived the Opportunity to Seek Arbitration Because Their Litigation Actions Are Completely Inconsistent with Such Reliance.

After engaging in more than a year of litigation and filing *two sets* of motions to dismiss, reply briefs in support of the motions, a motion to stay discovery, vigorous opposition to Ms. Kloosterman's motion to amend her complaint (including opposition to Ms. Kloosterman's motion to file a reply), participating in a Fed. R. Civ. P. 26(f) conference, negotiating and completing a joint status report in preparation for discovery, and filing an answer, Defendants only now move to compel arbitration. As the Sixth Circuit and a recent U.S. Supreme Court decision make clear, however, that ship has sailed. Defendants waived any right they may have had to compel arbitration by "tak[ing] actions that are completely inconsistent with any reliance on an arbitration agreement." *Solo v. United Parcel Serv. Co.,* 947 F.3d 968, 975 (6th Cir. 2020).

In *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), which Defendants ignore, the Supreme Court reset the rules for waiver of an arbitration agreement. Prior to *Morgan*, the Sixth Circuit used a two-prong test to determine whether waiver of an arbitration right had occurred. To waive arbitration, a party had to "tak[e] actions . . . completely inconsistent with any reliance on an arbitration agreement," and "delay[] its assertion [of the right to arbitrate] to such an extent that the opposing party incurs actual prejudice." *Solo*, 947 F.3d at 975. Eight other courts of appeals required the same showing of prejudice. *See Morgan*, 596 U.S. at 416, 416 n.1 (collecting cases).

In *Morgan*, however, the Court unanimously struck down the prejudice requirement, calling it a court-instituted "novel rule[]" inconsistent with the Federal Arbitration Act and federal policy. 596 U.S. at 418-19. The Court explained, "[o]utside the arbitration context, a federal court

assessing waiver does not generally ask about prejudice" but "focuses on the actions of the person who held the right." *Id.* at 417. The Court also held that the FAA "does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Id.* at 418. Instead, its purpose is to make "arbitration agreements as enforceable as other contracts, *but not more so*." *Id.* (emphasis added) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg, Co*., 388 U.S. 395, 404 (1967)). Thus, "*Morgan* teaches that there is no strong federal policy favoring enforcement of arbitration agreements," "there is no longer a thumb on the scale in favor of arbitration, and . . . the party opposing arbitration no longer bears a 'heavy burden' to show waiver of the right to arbitration." *Armstrong v. Michaels Stores, Inc*., 59 F.4th 1011, 1014, 1016 (9th Cir. 2023) (quotations omitted). Thus, "[i]f an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, *not about fostering arbitration*." *Morgan*, 596 U.S. at 418 (emphasis added).

In the Sixth Circuit, "it has long been settled that a party can waive its contractual right to arbitration." *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012) (citing *American Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316, 318 (6th Cir. 1950)). Although the Sixth Circuit has yet to address its waiver analysis after *Morgan*, several courts in this Circuit have applied it in a way that shows waiver is appropriate here. One court held that "*Morgan* invalidates both parts of the Sixth Circuit's two-part waiver test," requiring application of "the general federal rule of waiver as it would with any other contractual provision." *Lee Constr., LLC v. Bratton*, No. 1:22-CV-196, 2023 WL 5805848, at *1 (E.D. Tenn. July 28, 2023). There the court applied a "general waiver analysis" under state law instead of "the 'completely inconsistent' test as a standalone rule." *Id.* at *3-4. In the present case, Michigan law defines waiver

as "the intentional relinquishment of a known right." *CSX Transportation, Inc. v. Benore*, 154 F.Supp.3d 541, 554 (E.D. Mich. 2015) (quoting *Reed Est. v. Reed*, 810 N.W.2d 284, 290 (Mich. Ct. App. 2011)). Under that standard, waiver may be evidenced by "a party's decisive, unequivocal conduct reasonably inferring the intent to waive." *Id.* Other decisions understand *Morgan* to dictate that waiver is accomplished if a party, knowing of its right to arbitrate, "acted inconsistently with that right." *Speerly v. Gen. Motors*, LLC, 343 F.R.D. 493, 524–25 (E.D. Mich. 2023); *Schwebke v. United Wholesale Mortg., LLC*, No. 21-10154, 2023 WL 3901482, at *4 (E.D. Mich. June 8, 2023) (same).[1]

The Third Circuit determined that *Morgan* "directs" courts to use "the general rule for waiver" when dealing with arbitration agreements. *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 339 (3d Cir. 2023). Similarly, the Ninth Circuit found "the burden for establishing waiver of an arbitration agreement is the same as the burden for establishing waiver in any other contractual context." *Armstrong v. Michaels Stores, Inc.,* 59 F.4th 1011, 1015 (9th Cir. 2023). Here, Defendants waived any right to arbitrate whether the Court applies the "completely inconsistent" standard or the far less stringent rules courts have applied post-*Morgan*. Under any standard, by filing motions to dismiss which sought dismissal of all Ms. Kloosterman's claims, Defendants waived any opportunity to seek arbitration. As the Sixth Circuit makes clear, "a motion to dismiss that seeks a decision on the merits and an immediate and total victory in the parties' dispute is entirely inconsistent with later requesting that those same merits questions be resolved in

---

[1] Because Defendants allege that the agreement to arbitrate Ms. Kloosterman's claims stems from a clause in Ms. Kloosterman's employment agreement, there is no dispute that Defendants knew of the alleged right at the outset of litigation.

arbitration." *Solo*, 947 F.3d at 975 (quotations and citation omitted);[2] *see Schwebke*, 2023 WL 3901482, at *4 (quotations omitted) ("If, before moving to compel arbitration, a party moves to dismiss on a key merits issue, then the party's action is inconsistent with the right to arbitrate."). Accordingly, "[a] party may not use a motion to dismiss to see how the case [is] going in federal district court . . . while holding arbitration in reserve for a second chance in another forum." *Solo*, 947 F.3d at 975 (quotations and citations omitted). Defendants therefore have "waived any right to compel arbitration by engaging in this litigation and seeking dispositive rulings from the Court on [Plaintiff's] claims — some of which were forthcoming in [their] favor." *Speerly*, 343 F.R.D. at 524.

In *Solo*, the defendant filed a motion to dismiss "thoroughly enmeshed in the merits" that "sought dismissal of all claims." 947 F.3d at 975. Only after the motion was unsuccessful did defendant "change course, filing an answer invoking arbitration." *Id.* The defendant even included a statement in its motion attempting to "reserve[] its right to move to compel arbitration and . . . not by this motion in any way waiv[ing] this contractual right," *id.* at 975-76, but to no avail.[3] "By waiting to attempt to enforce [its] arbitration rights until after the [appellate] court entered an

---

[2] For purposes of waiver, the rule that a motion to dismiss on the merits is inconsistent with a later request for arbitration is common among the other courts of appeals, as well. *See, e.g.*, *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) ("A party waives arbitration by seeking a decision on the merits before attempting to arbitrate."); *Hooper v. Advance Am., Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917, 924 (8th Cir. 2009) ("[W]e hold [defendant] waived its right to arbitration when it filed and pursued its motion to dismiss."); *see also St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 589 (7th Cir.1992) ("Submitting a case to the district court for decision is not consistent with a desire to arbitrate.").

[3] "[A] statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver." *Solo*, 947 F.3d at 976 (citation omitted). In fact, not even "[t]he presence of [a] 'no waiver' clause . . . alter[s] the ordinary analysis undertaken to determine if a party has waived its right to arbitration." *Johnson Assocs.*, 680 F.3d at 717.

unfavorable decision on its merits arguments," the Sixth Circuit explained, "[the defendant's] actions were inconsistent with reliance on an arbitration agreement." *Id.* at 975 (cleaned up). Decided prior to *Morgan*, the *Solo* court determined the defendant's actions also amounted to actual prejudice and ruled that defendant had waived any right to arbitrate. *Id.* at 976-77.

Like the defendant in *Solo*, Defendants filed motions to dismiss – on the merits – that sought dismissal of all Ms. Kloosterman's claims. (They, in fact, filed *two sets* of motions to dismiss on the merits.) Like the defendant in *Solo*, Defendants filed an answer invoking arbitration and then sought to compel arbitration only after their motions failed to dispose of the case. The *Solo* defendant at least mentioned arbitration in its motion to dismiss. Here, Defendants breathed not a word regarding arbitration until all other options had been exhausted. Instead, they "simultaneously asked the district court to resolve the merits of all claims in [their] favor" and purported to "reserve[] the right to submit those same claims to an arbitrator." *Solo*, 947 F.3d at 976. As the Sixth Circuit explained, however, that tactic waives any right to arbitration. "A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court." *Id.* (quotations omitted).

In *Solo*, the Sixth Circuit relied heavily on *Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917 (8th Cir. 2009). *See Solo*, 947 F.3d at 975. In *Hooper*, the defendant filed a motion to dismiss seeking "a final decision from the district court upon the merits of the parties' dispute." 589 F.3d at 921. Defendant's motion "purported to 'reserve[] the right'" to enforce the arbitration clauses in Plaintiffs' loan agreements, if the court denied its motion to dismiss." *Id.* at 919. After its motion was only partially successful, the defendant filed a motion to compel arbitration. *Id.* at 919-20. The district court found that the defendant had waived any right to arbitration by "act[ing] inconsistently with its right to arbitration when it filed its motion to

dismiss before its motion for arbitration." *Id.* at 921. The Eighth Circuit affirmed, explaining that "a request to dispose of a case on the merits before reaching arbitration is inconsistent with resolving the case through arbitration." *Id.* at 921 (quotations omitted). The court concluded the defendant "waived its right to arbitration when it filed and pursued its motion to dismiss." *Id.* at 924.

Here, as in *Hooper*, Defendants filed two motions to dismiss seeking a final decision on the merits of all Ms. Kloosterman's claims before seeking arbitration. While the defendant in *Hooper* made some attempt to reserve the possibility of arbitration, Defendants failed even in that. Instead of "do[ing] all [they] could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration," *id.* at 922 (quotations omitted), Defendants "wanted to see how the case was going in federal district court before deciding whether [they] would be better off there or in arbitration." *Id.* Defendants "wanted to play heads I win, tails you lose, which is the worst possible reason for failing to move for arbitration sooner than [they] did." *Id.* (quotations omitted). Like the defendant in *Hooper*, Defendants waived any right to arbitrate Ms. Kloosterman's claims.

In *Speerly v. General Motors, LLC*, a class action, the defendant filed multiple motions to dismiss "a limited slate of [plaintiffs'] claims," 343 F.R.D. at 505, "some of which were forthcoming in its favor," *id.* at 524. Afterward, the defendant argued that arbitration clauses in purchase agreements precluded class certification. *Id.* at 524. The court, however, found that any argument to compel arbitration was "ineffective at this stage of the case" because "defendant has waived any right to compel arbitration by engaging in this litigation and seeking dispositive rulings from the Court on the plaintiffs' claims." *Id.* As the court explained, "[i]f, before moving to compel

arbitration, a party moves to dismiss on a key merits issue, then the party's action is inconsistent with the right to arbitrate." *Id.* (citation omitted).

Like the defendant in *Speerly*, Defendants filed multiple motions to dismiss Ms. Kloosterman's claims. Defendants moved not merely to dismiss one key merits issue, or a limited number of claims, as in *Speerly*. Defendants attempted to dismiss *all* Ms. Kloosterman's claims. As in *Speerly*, Defendants have sought to compel arbitration only after its motions were partially unsuccessful. Thus, Defendants' attempt to compel arbitration at this stage of the litigation is ineffective. They waived any right to compel Ms. Kloosterman to arbitrate.

Even had Defendants' multiple motions to dismiss not been on the merits, their extensive participation in this litigation also waived their alleged right to arbitrate Ms. Kloosterman's claims. Again, this is true whether the court applies the pre-*Morgan* "completely inconsistent" standard or the less demanding standards courts have applied post-*Morgan*. In *Johnson Associates*, the defendant litigated for only eight months before moving to compel arbitration. 680 F.3d at 718. During that time, it participated in a judicial settlement conference, filed an answer without asserting arbitration as an affirmative defense, asserted a counterclaim, filed multiple motions and engaged in some discovery. *Id.* at 715-16, 718-19. The Sixth Circuit found defendant's actions "completely inconsistent with any reliance on its right to arbitrate." *Id.* at 718. The court explained that even where a party's actions taken individually would be "insufficient to show that [it] acted completely inconsistently with its right to arbitration, they may well be sufficient when considered together." *Id.* at 719.

In *Gunn v. NPC International, Inc.*, defendant "waited almost fifteen months [into the litigation] before raising the arbitration issue." 625 F. App'x 261, 264 (6th Cir. 2015). During that time, defendant "engaged in settlement negotiations, participated in a scheduling conference . . .,

and filed several motions (some dispositive) without ever mentioning the arbitration agreement." *Id.* at 265. The Sixth Circuit found these facts "practically indistinguishable from those in *Johnson Associates*." *Id.* at 264. Additionally, the court observed "it was only after NPC obtained unfavorable rulings on its initial dispositive motions that it moved to dismiss or compel arbitration," and considered that as "a factor weighing in favor of finding waiver, for it suggests that [defendant's] delay, instead of being attributable to an innocent or otherwise excusable purpose, was deliberately motivated by some perceived tactical advantage." *Id.* at 265. The court found defendant's "course of conduct completely inconsistent with reliance on an arbitration agreement." *Id.* at 263-64.

In *Schwebke v. United Wholesale Mortgage, LLC*, decided post-*Morgan*, the defendant litigated for six and a half to seven months before moving to compel arbitration. 2023 WL 3901482, at *5. In that time the defendant filed an answer, failed to raise arbitration as an affirmative defense, and participated in considerable discovery, primarily responding to the plaintiff's discovery requests. *Id.* at *4-5. While recognizing "the delay of seven months may not be considered lengthy," the court found it "sufficient to show that [the defendant] sat on its right to arbitrate during this time period." *Id.* at *5. "[U]nder the totality of the circumstances test of *Johnson*," this delay coupled with "the defendant's level of participation in the litigation" showed that the defendant "acted inconsistently with the arbitration agreement and waived arbitration." *Id.* at *5-6.

In the present case, Defendants engaged in more than a year of litigation, filed multiple sets of motions to dismiss *without even mentioning* arbitration, moved to stay discovery, opposed Ms. Kloosterman's motion to amend her complaint (including opposition to her motion to file a reply), participated in an FRCP 26(f) conference, negotiated and completed a joint status report in

preparation for discovery, and filed an answer to Ms. Kloosterman's Second Amended Complaint. Only then, 13 months after Ms. Kloosterman filed her initial complaint, and almost eleven months after they filed their first set of motions to dismiss, did Defendants move to compel arbitration. This delay is significantly longer than in *Johnson Associates* (8 months) and *Schwebke* (7 months), and nearly as long as in *Gunn* (15 months). As in *Gunn*, Defendants waited until after partially unfavorable rulings on dispositive motions to move to compel arbitration, or even mention it. Further, Defendants' participation in and pursuit of litigation prior to their motions to compel arbitration are comparable to that in *Johnson Associates* and *Gunn*. Like the defendant in *Schwebke*, they sat on their alleged right to arbitrate while they engaged in litigation, which for Defendants included extensive and prolonged motion practice, and they delayed in moving for arbitration for twice as long. As the Sixth Circuit has made clear, even if "[a] case involved less litigation than [another] is not dispositive" for purposes of waiver of arbitration. *Johnson Assocs.*, 680 F.3d at 718. What is dispositive is whether a party's actions were "completely inconsistent" – or, post-*Morgan*, merely inconsistent – with reliance on arbitration. As the cases show, Defendants' actions were just that.

In sum, under clear and established Sixth Circuit precedent, Defendants waived arbitration by filing motions to dismiss Ms. Kloosterman's claims on the merits. They also waived arbitration by their prolonged and active engagement in this litigation before seeking to compel arbitration. Defendants easily could have raised arbitration at the outset of this lawsuit, and if they wanted to arbitrate that is precisely what they should have done. Instead, they opted for the dubious maneuver the Sixth Circuit rejected in *Solo*: they chose "to see how the case [was] going in federal district court . . . while holding arbitration in reserve for a second chance in another forum." 947 F.3d at 975 (quotations and citation omitted). Defendants, however, "cannot keep [a] right to demand

arbitration in reserve indefinitely while [they] pursue[] a decision on the merits before the district court." *Id.* at 976. Such a "heads I win, tails you lose," dilatory tactic "is the worst possible reason for failing to move for arbitration." *Hooper*, 589 F.3d at 922 (quotations omitted). And, unsurprisingly, it flies in the face of express Sixth Circuit precedent. Thus, this Court should deny Defendants' motion and allow the litigation to proceed.

## II.   Ms. Kloosterman's Claims are Not Subject to the Arbitration Clause in the Agreement.

As explained above, Defendants waived any opportunity to seek arbitration, and this Court's analysis need go no further because waiver is a threshold issue. Even if the Court is inclined to analyze further, Ms. Kloosterman's contract does not compel arbitration against either the Hospital or the Individual Defendants.

Under Sixth Circuit precedent, this court must consider (1) "whether the parties agreed to arbitrate"; (2) "the scope of that agreement;" (3) "if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Here, the parties did not agree to arbitrate because Ms. Kloosterman's 2009 Employment Agreement was with a different private entity, Metro Health Hospital, long before the merger with University of Michigan Health and before Individual Defendants began working there. *See E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 294 (2002). If there was an agreement, its scope did not include civil rights claims based on Ms. Kloosterman's statutory and constitutional rights. *See Cullen v. Klein*, No. 291810, 2010 WL 3666758, at *6 (Mich. Ct. App. Sept. 21, 2010). Congress certainly did not intend constitutional claims under 42 U.S.C. § 1983 to be arbitrable, *McDonald v. City of W. Branch, Mich.,* 466 U.S. 284, 291–92 (1984), and likely did not intend Title VII claims to

13

be arbitrable either, *Alexander v. Gardner–Denver, Co.,* 415 U.S. 36, 45 (1974). If the Court sends the Title VII claim to arbitration, it should stay the claims under Section 1983 so that they can remain in court. If the Court sends all Ms. Kloosterman's claims to arbitration, it should dismiss the entire case so that she can immediately appeal. *Boykin v. Fam. Dollar Stores of Michigan, LLC,* 3 F.4th 832, 837 (6th Cir. 2021) (permitting appeal of district court's final decision dismissing suit in favor of arbitration); *Arabian Motors Grp. W.L.L. v. Ford Motor Co.,* 19 F.4th 938, 942 (6th Cir. 2021) (finding that a stay is preferred where all claims are subject to arbitration, but courts can grant dismissal if both parties request it).

## A.  Ms. Kloosterman's Claims Against UMHW Are Not Subject to the Arbitration Clause.

The Court should dismiss Defendants' attempt to compel arbitration of Ms. Kloosterman's claims against UMHW for three reasons: 1) there is no federal policy in favor of arbitration; 2) Ms. Kloosterman lacked notice that she was waiving her right to bring statutory discrimination claims; and 3) arbitration is not the proper forum for her discrimination claim because of the employer's superior bargaining power.

First, contrary to Defendants' assertion, there is no longer a "federal policy in favor of arbitration." (PageID.1463). Defendants ignore binding, unanimous Supreme Court precedent in *Morgan v. Sundance*, making clear that the policy "is to make arbitration agreements as enforceable as other contracts, but not more so." 596 U.S. at 418 (quoting *Prima Paint Corp.*, 388 U.S. at 404 n.12). *See also Armstrong*, 59 F.4th at 1014, 1016 ("*Morgan* teaches that there is no strong federal policy favoring enforcement of arbitration agreements," and "there is no longer a thumb on the scale in favor of arbitration"). Thus, the Sixth Circuit has since held that "we will not require arbitration where the agreement's plain language 'is not susceptible of an interpretation that covers the asserted dispute.'" *Total Quality Logistics, LLC v. Traffic Tech, Inc.,* No. 22-3148, 2023 WL 1777387, at *2

(6th Cir. Feb. 6, 2023) (citing *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, Loc. Lodge 1943 v. AK Steel Corp.*, 615 F.3d 706, 711 (6th Cir. 2010)). The Sixth Circuit makes clear that "[b]efore compelling an unwilling party to arbitrate, a court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Stevens-Bratton v. TruGreen, Inc*, 675 F. App'x 563, 567 (6th Cir. 2017) (quoting *Bratt Enter., Inc. v. Noble Intern. Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003)). Furthermore, "ambiguities in contracts should be construed against the drafter." *Royal Ins. Co. of America v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 423 (6th Cir. 2008).

Second, arbitration clauses are not enforceable where the employee lacked adequate notice and an opportunity to consult with an attorney or union representative. "The enforceability of an arbitration agreement may, in some circumstances, turn on whether the employee was given adequate notice and knowingly waived his right to litigate claims in court." *Rembert v. Ryan's Fam. Steak Houses, Inc.,* 596 N.W.2d 208, 228 n.34 (Mich. Ct. App. 1999). In evaluating whether an employee had adequate notice, courts within the Sixth Circuit look to "(1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances." *Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646, 668 (6th Cir. 2003). Under Michigan law, which governs contract interpretation, agreements to arbitrate must be specific and provide clear notice to employees. In *Rembert*, the Michigan Supreme Court held that arbitration of statutory discrimination claims, including claims under the ELCRA, required "[c]lear notice to the employee that he is waiving the right to adjudicate discrimination claims in a judicial forum and opting instead to arbitrate

15

these claims." 596 N.W.2d at 228 (citing *Renny v. Port Huron Hosp.*, 398 N.W.2d 327 (Mich. 1986)).

Applying this rule, in *Vanderlaan, M.D v. Michigan Med., P.C.*, No. 284678, 2009 WL 2003328, at

*3 (Mich. Ct. App. July 9, 2009), the court held that a "general" arbitration provision similar to the

one in Ms. Kloosterman's employment contract, applying to "*any dispute between Employer and*

*Employee arising under or relating in any manner to this Agreement,*" related to disputes relating to

the terms of the agreement, such as compensation, benefits, and duties. Because "[t]here was no

mention of a Whistleblower claim in this employment agreement," the employee did not waive his

right to bring a statutory whistleblower claim in court. *See also Cullen v. Klein*, No. 291810, 2010

WL 3666758, at *6 (Mich. Ct. App. Sept. 21, 2010) (rejecting employer's attempt to compel

arbitration where the "[t]he language in the arbitration clauses did not constitute a clear waiver of

plaintiff's right to bring a statutory civil rights claim" because the arbitration language "made no

reference to statutory discrimination claims" or "plaintiff's employment-related civil rights"). In

*Shaya v. City of Hamtramck*, No. 328588, 2017 WL 62015 (Mich. Ct. App. Jan. 5, 2017), the court

examined an arbitration provision with stronger language than the provision at issue here. The

agreement stated that it "specifically includes, but is not limited to, all claims that this agreement has

been interpreted or enforced in a discriminatory manner." *Id.* at *5. Even with that language, the court

held that the agreement did "not provide clear notice to plaintiff that he was waiving the right to

adjudication of statutory discrimination claims under the CRA," and thus allowed him to proceed in

court. *Id.* at *5.

Third, arbitration clauses are not enforceable for statutory discrimination claims, where the

arbitration forum does not provide vindication of civil rights because of the employer's superior

bargaining power. Courts must also "remain[] alert to ensure that employers do not defeat the policies

of . . . Title VII by taking advantage of their superior bargaining position or by overreaching." *Adams*

16

*v. Philip Morris, Inc.,* 67 F.3d 580, 583 (6th Cir.1995). "[T]here are circumstances under which courts will not enforce pre-dispute mandatory arbitration agreements with regard to statutory employment discrimination claims." *McMullen v. Meijer, Inc.*, 355 F.3d 485, 490 (6th Cir. 2004). Courts must not rely on a general presumption in favor of arbitrability; "[t]he Supreme Court has made clear that statutory rights, such as those created by Title VII, may be subject to mandatory arbitration only if the arbitral forum permits the effective vindication of those rights." *Morrison,* 317 F.3d at 658. In *Morrison*, the Sixth Circuit held that cost-splitting provisions can pose a significant obstacle to the enforceability of arbitration provisions, because they can "effectively prevent[] the vindication of a plaintiff's statutory rights." *Id.* On this point, a plaintiff need not prove in advance that she cannot afford the unknown costs that arbitration will incur; it is enough that "the risk of incurring the potential costs of arbitration is great enough to deter the plaintiff from bringing her statutory claims." *Id.* at 662.

Here, the Court should dismiss Defendants' attempt to compel arbitration because the contract Ms. Kloosterman signed in 2009 was with a different entity, Ms. Kloosterman lacked notice that she was waiving her right to bring statutory discrimination claims; and arbitration is not the proper forum for her discrimination claim because of the employer's superior bargaining power.

First, the agreement Ms. Kloosterman signed in 2009 was with a different entity, Metro Health Hospital, nearly a decade before it was purchased by University of Michigan. Section 21 of Ms. Kloosterman's 2009 contract with Metropolitan Hospital provides, "[t]he Covenants of Sections 4, 12 and 29 shall survive the termination of this Agreement." Section 28, the alleged arbitration clause, is noticeably absent from this provision. Metropolitan Hospital could easily have included Section 28 in this survival clause when it drafted the agreement, but it did not. Nor

can UMHW argue that Ms. Kloosterman breached the agreement, because she violated no policy or provision of the agreement. On the contrary, UMHW expressly terminated the agreement using the 90-day termination provision in Section 11(d). (PageID.106). UMHW's termination letter, signed by Dr. Pai, made clear that Sections 12 and 29 continued to bind Ms. Kloosterman, but again made no mention of Section 28. *Id.* UMHW cannot now try to enforce a clause in an agreement it voluntarily terminated more than two years ago.

Second, the specific dispute—violations of Ms. Kloosterman's constitutional and statutory rights—does not fall within the vague scope of the purported agreement to arbitrate. Neither the original agreement nor the brief amendments Ms. Kloosterman signed in 2016 and 2021 mentioned arbitration or any waiver of statutory discrimination or civil rights claims. Kloosterman Decl., Exs. B-C. Thus, Ms. Kloosterman did not have adequate notice under the standard in *Rembert*, nor did she agree to send discrimination claims based on her statutory and constitutional rights to arbitration.[4] Under the factors in *Morrison*, Ms. Kloosterman's experience and background are in medicine, not contract law, and she had very little time to consider whether to sign the agreement, given that she had already worked at Metro Health Hospital for five years and had already come back from long-term disability leave. Kloosterman Decl., ¶¶5-7. Further, under *Morrison*, the waiver was not clear, she gave no consideration in exchange because she was already employed, and she had no opportunity to consult with an attorney or a union representative. Kloosterman Decl., ¶¶8-9. The language in the Agreement covers only disputes "arising out of or relating to this Agreement, or the breach thereof." Kloosterman Decl., Ex. A. Michigan courts in *Vanderlaan* and *Cullen* found similar language unenforceable when plaintiffs brought statutory discrimination claims for violations of their civil rights, because such claims were not included in the language

18

of the Agreement.[5] Even the arbitration clause in *Shaya*, 2017 WL 62015, at *5, which expressly contemplated claims that the contract was interpreted "in a discriminatory manner," was not enforceable for a statutory discrimination claim under the ELCRA. Here, the 2009 Agreement and the amendments made no mention of the waiver of discrimination claims, and thus Ms. Kloosterman lacked notice that in signing her employment contract, she was signing away her constitutional and civil rights.[6]

Third, arbitration is not the proper forum for Ms. Kloosterman's discrimination claim because of the employer's superior bargaining power. For example, the Agreement contains a cost-splitting provision very similar to the one that the Sixth Circuit rejected in *Morrison*: "[t]he fees and expenses for such arbitration shall be paid equally by the Hospital and the Physician Assistant." Kloosterman Decl., Ex. A. For a part-time physician assistant who was terminated and went a year without pay, the requirement to split costs is prohibitive and "effectively prevents the vindication of [Ms. Kloosterman's] statutory rights." *Morrison*, 317 F.3d at 658. Ms. Kloosterman need not allege specifically how much of a financial burden the unknown costs of arbitration will impose. The specter of such costs will deter her from vindicating her rights, and likely would have

---

[5] A traditional breach-of-contract claim may have been subject to arbitration, but Ms. Kloosterman did not pursue a breach-of-contract claim.

[6] Notably, the Agreement and amendments also do not mention diversity, equity, and inclusion training, nor did they mention purported obligations to "utilize a patient's preferred pronouns," "provide a referral to another provider for a gender transitioning patient," or a purported "obligation to provide inclusive care to patients." (PageID.1323.) On the contrary, the 2009 Agreement makes clear: "the Physician Assistant shall have control over the diagnosis and treatment of the patients assigned to her," and that "her treatment and diagnosis of the patients will be consistent with applicable Hospital bylaws, rules and regulations dealing with the treatment of patients." (PageID.1300-01). As Ms. Kloosterman's stellar performance reviews indicate, she followed Hospital bylaws, rules and regulations consistently throughout her career with no patient complaints.

deterred her from bringing claims altogether, had she known that the forum could suddenly change to arbitration after 13 months of litigation. Kloosterman Decl., ¶¶17-20.

**B. Ms. Kloosterman's Claims Against the Individual Defendants Are Not Subject to the Arbitration Clause.**

Ms. Kloosterman brought constitutional claims under 42 U.S.C. § 1983 against five Individual Defendants who were directly involved in her termination. (PageID.1264-73). As Defendants' separate motions to dismiss make clear, these claims are separate and distinct from her Title VII claim against UMHW, although both arose out of her wrongful termination because of her religious beliefs. Ms. Kloosterman also brought a claim under the ELCRA against all five Individual Defendants, after this Court specifically granted her leave to do so. (PageID.1228). Ms. Kloosterman did not agree to arbitrate any claims against the Individual Defendants for at least two reasons: they were not parties to the contract, and her constitutional claims under Section 1983 cannot be subject to arbitration. Thus, even if the Court sends the Title VII claim to arbitration, her constitutional claims and ELCRA claim against the Individual Defendants should be stayed and remain in court.[7]

Arbitration agreements can only be enforced by signatories to the agreement. The Supreme Court has held that "[a]rbitration under the [FAA] is a matter of consent, not coercion," and that "[i]t goes without saying that a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 294 (2002); *E.E.O.C. v. Frank's Nursery & Crafts, Inc.,* 177 F.3d 448, 460 (6th Cir. 1999) ("[I]t is axiomatic that courts cannot bind a non-party to a contract, because that party never

---

[7] Even in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20–21 (1983), which Defendants cite, where multiple parties with multiple claims were involved, the Court found that disputes could be "resolved separately—one in arbitration, and the other (if at all) in state-court litigation." This was not "piecemeal resolution" because the disputes were "easily severable." *Id.*

agreed to the terms set forth therein."); *see also Harrison v. Gen. Motors LLC*, 651 F.Supp.3d 878, 889-93 (E.D. Mich. 2023) (finding that non-party could not enforce arbitration clause against three parties whose contracts did not contain a delegation clause); *see also* Mara Kent, *Forced vs. Compulsory Arbitration of Civil Rights Claims,* 23(1) LAW & INEQ. 95 (2005).

According to the unanimous Supreme Court, constitutional claims under Section 1983 cannot be sent to arbitration. *McDonald*, 466 U.S. at 292 ("in a § 1983 action, an arbitration proceeding cannot provide an adequate substitute for a judicial trial"); *see also Bromley v. Michigan Educ. Ass'n-NEA*, 82 F.3d 686, 692 (6th Cir. 1996) ("The statutory right to have an Article III court adjudicate suits brought pursuant to § 1983 for vindication of rights secured by the First Amendment of the Constitution cannot be foreclosed by non-statutory arbitration conducted by a privately appointed decisionmaker."). Indeed, "[b]ecause § 1983 creates a cause of action, there is, of course, no question that Congress intended it to be judicially enforceable." *McDonald*, 466 U.S. at 290. There are several reasons for this: (1) "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law;" *id.* at 290 (quoting *Mitchum v. Foster*, 407 U.S. 224, 242 (1972)), (2) arbitration is suited for contractual disputes but not disputes regarding constitutional rights, *id.*, and (3) "arbitral factfinding is generally not equivalent to judicial factfinding," *id.* at 291, since "rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable." *Gardner-Denver*, 415 U.S. at 57-58.

Here, it is clear the Individual Defendants were not parties to the contract. None of them were employed by Metropolitan Hospital when Ms. Kloosterman signed the contract in 2009,[8] and she did not agree to arbitrate claims for constitutional violations by any future employee acting in their individual capacity.[9] Ms. Kloosterman could not have reasonably foreseen that individual actors whom she had not yet met would take hostile actions toward her personally that would violate her constitutional rights under Section 1983. To force these claims into arbitration now would cause manifest injustice, and it would violate the Supreme Court and the Sixth Circuit's rules in *McDonald* and *Bromley*. Furthermore, Ms. Kloosterman's contract in 2009 was with a private entity, not a state actor. It is undisputed that constitutional claims under Section 1983 can only be brought against a state actor. (PageID.715) (undisputed that UMHW and Individual Defendants are state actors). Ms. Kloosterman could not possibly have agreed in 2009 to send constitutional claims under Section 1983 to arbitration, because Metropolitan Hospital did not become a state actor until University of Michigan took over its operations beginning in 2016. (PageID.1241) Further, the amendment she signed in 2021 made no mention of a waiver of constitutional claims against either the Hospital or the Individual Defendants.

Contrary to the plaintiff in the case Defendants cite, *Arnold v. Arnold Corp.*, 920 F.2d 1269 (6th Cir. 1990), which has since been abrogated by *AtriCure, Inc. v. Meng*, 12 F.4th 516 (6th Cir. 2021), Ms. Kloosterman did not "tack[] on the nonsignatory parties" to avoid arbitration. Quite

---

[8] According to LinkedIn, Defendant Thomas Pierce was hired by UMHW in 2020. Defendants Rhae-Ann Booker and Catherine Smith were hired by UMHW in 2019. Defendant Rakesh Pai was hired by UMHW in 2018. Defendant Marla Cole was hired by Metro Health in 2017. Thus, none of the employees could possibly have been parties to the 2009 contract that Ms. Kloosterman signed.

[9] Ms. Kloosterman is bringing claims against the Individual Defendants under Section 1983 in both their official and individual capacities. (PageID.1264-73).

the opposite. The Individual Defendants each directly participated in Ms. Kloosterman's termination, and this Court's opinion acknowledged that she plausibly alleged as much. (PageID.1209-10). In Defendants' other case, *Powell v. Sparrow Hosp.*, No. 10-206, 2010 WL 2901875, at *4 (W.D. Mich. July 23, 2010), the court only found that the individual defendants were subject to the arbitration agreement because "claims against individual employees or owners of a company are identical to those against the company." Here, the claims are fundamentally different. They are based on constitutional provisions rather than Title VII, and the mechanism of Section 1983 operates differently. Defendants themselves treated the parties and claims differently by filing two separate motions to dismiss accompanied by lengthy briefing, and this Court handled them differently in its order as well. (PageID.1200, 1215). To lump these claims and parties together at this belated juncture would cause significant prejudice to Ms. Kloosterman, and it would create inconsistency and confusion in the adjudication of the disputes at issue.

### III. There is a Strong Public Interest in Keeping Cases Involving Employment Discrimination and Constitutional Rights in Court Rather than Sending Them to Arbitration.

As described above, Ms. Kloosterman's constitutional claims under Section 1983 cannot be sent to arbitration. *McDonald*, 466 U.S. at 291–92; *Bromley*, 82 F.3d at 693. Ms. Kloosterman's Title VII and ELCRA claims should also remain in court for three reasons: (1) the Supreme Court has made clear that courts, not arbitration, are the appropriate forum for civil rights issues, (2) Ms. Kloosterman is seeking injunctive relief which arbitration cannot provide, and (3) public policy favors of the judicial forum when statutory and constitutional rights are at stake.

Supreme Court precedent demonstrates that judicial review, not arbitration, is the proper forum to address Title VII claims. In *Alexander v. Gardner–Denver, Co.*, the Supreme Court made several important holdings: (1) "the private right of action remains an essential means of obtaining

judicial enforcement of Title VII"; (2) "there can be no prospective waiver of an employee's rights under Title VII;" and (3) "[a]rbitral procedures, while well suited to the resolution of contractual disputes, make arbitration a comparatively inappropriate forum for the final resolution of rights created by Title VII." *Id.* at 45, 51, 56. Put differently, the "specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land." *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 743 (1981) (quoting *Gardner-Denver*, 415 U.S. at 57). In *McCall v. Chesapeake & Ohio Ry. Co.*, 844 F.2d 294, 298 (6th Cir. 1988), the Sixth Circuit explained the import of *McDonald*, *Gardner-Denver*, and *Barrentine* together: "the theory running through these cases is that . . . 'different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.'" (citations omitted). Both Title VII and the ELCRA were intended to provide protections against discrimination for individual workers, and access to a judicial forum is the most foundational guarantee of that protection.

One of the key reasons that courts are a more effective forum than arbitral tribunals is the relief available. In arbitration, financial compensation is typically the only available relief. *Barrentine*, 450 U.S. at 744–45 ("[a]rbitrators very often are powerless to grant the aggrieved employees as broad a range of relief.") Yet for civil rights cases such as Ms. Kloosterman's, injunctive relief is much more responsive to claims of discrimination—and a more powerful deterrent to prevent continued discrimination. *See, e.g., Frank's Nursery & Crafts, Inc.,* 177 F.3d at 467 ("Indeed, upon a finding of any intentional employment discrimination, a district court possesses broad discretion to craft an injunction that will ensure the employer's compliance with the law.")

Michigan law makes these same principles clear, and it goes a step further by emphasizing that the ELCRA is intended to provide even stronger protection for Michigan workers than Title VII. In *Heurtebise v. Reliable Bus. Computers*, 550 N.W.2d 243, 248 (Mich. 1996), Judge Cavanagh described Michigan's "long history of stalwartly defending individuals from invidious discrimination in their pursuit of basic civil liberties." He explained that "[u]nlike federal law, Michigan also has an unwavering history of faithfully defending an aggrieved individual's *right to a judicial forum* to remedy unlawful discrimination." *Id.* (emphasis added). The ELCRA is more protective than Title VII, because it contains no exhaustion of remedies requirement and allows plaintiffs to sue first rather than filing a complaint with the EEOC first as Title VII requires. *Id.* at 256 (citing M.C.L. § 37.2801). *See also Stewart v. Fairlane Cmty. Mental Health Ctr.*, 571 N.W.2d 542, 547 (Mich. Ct. App. 1997) (applying *Heurtebise* to whistleblower claim, because "the CRA and the WPA protect similar statutorily recognized interests and deserve like treatment"); *Suchodolski v. Michigan Consolidated Gas Co.,* 316 N.W.2d 710, 711, 711.n2 (Mich. 1982) (recognizing an exception to the rule of at-will employment exists where the "grounds for discharging an employee are so contrary to public policy as to be actionable" and citing the ELCRA as an "explicit legislative statement[] prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty"). For employers to force these claims into arbitration, particularly when important constitutional and statutory rights are at stake, runs contrary to public policy, because "[c]ivil liberties issues within arbitration are invisible" and constitutional protections have little or no impact within an arbitration proceeding. Edward Brunet, *Arbitration and Constitutional Rights*, 71 N.C. L. Rev. 81, 89 (1992).

Here, all of Ms. Kloosterman's claims should remain in court because the Supreme Court made clear in *McDonald*, *Gardner-Denver*, and *Barrentine*, that Congress intended Title VII

claims to be adjudicated in court, not arbitration. One of the reasons for this, as explained in *Barrentine* and *Frank's Nursery & Crafts*, is that a much broader range of remedies are available. Ms. Kloosterman's lawsuit seeks a range of remedies specifically crafted to prevent UMHW from continuing to violate employees' rights, many of which are injunctive relief rather than monetary damages. (PageID.1279) (seeking injunctive relief in the form of a "declaration that the acts and practices of Defendants complained of herein are in violation of Title VII," an "order that permanently enjoins and restrains Defendants from future such violations of Title VII, 42 U.S.C. Section 1983 and the United States Constitution;" and "[r]einstatement of Ms. Kloosterman in the position she would have occupied but for Defendants' discriminatory and retaliatory treatment of her"). Forcing Ms. Kloosterman into arbitration would make it impossible for her to receive most of the remedies she seeks; reducing her requests to only financial compensation ignores the vindication of rights and prevention of future constitutional violations that matter deeply to her. And as Judge Cavanagh explained in *Heurtebise* and Michigan courts have repeatedly held, the ELCRA was designed to provide even greater protection to employees that Title VII. Thus, Ms. Kloosterman's ELCRA and Title VII claims should remain in court along with her claims under Section 1983. Otherwise, her civil rights would be invisible—yet this Court has already made clear that Ms. Kloosterman's claims are well-pleaded and should not be ignored.

IV.    **If the Court Considers Defendants' Motion under the Summary Judgment Standard, It Should Bar Defendants from Filing a Second Motion for Summary Judgment.**

Defendants should have moved to compel arbitration at a much earlier stage in the case, as part of their motions to dismiss. *Knight v. Idea Buyer, LLC*, 723 F. App'x 300, 301 (6th Cir. 2018) ("A motion to dismiss pursuant to an arbitration agreement should therefore be construed as a Rule 12(b)(6) motion"). As the Committee Notes on Rule 56 describe, "[a]lthough the rule allows a motion for summary judgment to be filed at the commencement of an action, in many cases the

motion will be premature until the nonmovant has had time to file a responsive pleading or other pretrial proceedings have been had."[10] Here, Defendants' motion for summary judgment is premature, because neither party has conducted discovery. *Bromley*, 82 F.3d at 695 ("Given the importance of the constitutional interests at stake in the case at bar, the district court should not have decided the summary judgment motion without allowing meaningful discovery first.") This places Ms. Kloosterman at a significant disadvantage, because she has had no opportunity to depose the six defendants or review documents describing the reasons for her termination or the development of University of Michigan's policies.

If the Court treats Defendant's motion as a motion for summary judgment, then it must "view all evidence and construe all facts and inferences in the light most favorable to the non-moving party," Ms. Kloosterman. *Alternative Aviation Servs., Inc. v. Meggitt (UK) Ltd*., 207 F. App'x 506, 510 (6th Cir. 2006). Further, "[u]nder Rule 56, [Defendants] had the initial duty to present evidence that would allow a trier of fact to find all required elements of a contract." *Boykin*, 3 F.4th at 839. Defendants have not done so. Indeed, the only evidence Defendants have put forward is Ms. Kloosterman's 2009 contract with a different private entity, Metropolitan Hospital. Although Ms. Kloosterman did sign two brief amendments in 2016 and 2021, Defendants neglected to include these. They are attached for the Court's convenience. Kloosterman Decl., Exs. B-C.

In contrast, Ms. Kloosterman has raised multiple issues of material fact regarding the formation of the contract and the enforceability of the arbitration clause: (1) whether the 2009 contract with Metro Health Hospital binds the current entity, UMHW; (2) whether the individual

---

[10]     Committee     Notes     on     Rule     56     –     2010     Amendment, https://www.law.cornell.edu/rules/frcp/rule_56.

defendants are bound by an agreement they did not sign, which Ms. Kloosterman signed nearly a decade before any of them began working at UMHW; (3) whether Ms. Kloosterman had adequate notice and opportunity to consult an attorney and/or union representative at the time she signed the contract, Kloosterman Decl., ¶¶ 8-10; (4) whether the arbitration clause survives termination, when it was not listed in the survival clause or the termination letter, Kloosterman Decl., Ex. D; and (5) whether the arbitration clause was broad enough to cover discrimination claims based on statutory and constitutional rights. These factual issues are sufficient to preclude summary judgment.

If the Court treats Defendant's motion as a motion for summary judgment, it should bar Defendants from filing another motion for summary judgment at the close of discovery. While district courts have discretion to consider multiple motions, they are disfavored. *Hescott v. City of Saginaw*, No. 10-13713, 2012 WL 13005302, at *2 (E.D. Mich. Oct. 3, 2012) ("Parties are generally expected to set forth all their arguments in support of summary judgment in a single dispositive motion; piecemeal litigation at the summary-judgment stage is disfavored.") (citing *Spengler v. Worthington Cylinders*, 514 F. Supp. 2d 1011, 1021 (S.D. Ohio 2007)); *see also Grundy v. FCA US LLC*, No. 20-CV-11231, 2022 WL 2824979, at *2 (E.D. Mich. May 11, 2022) ("[T]he successive motions for summary judgment proposed by Defendant here would frustrate, rather than promote, judicial economy because they ask the Court to potentially analyze the same claims twice, just with separate tranches of evidence").

## CONCLUSION

For these reasons, the Court should deny Defendants' motion for summary judgment to compel arbitration, and preclude Defendants from filing another motion for summary judgment in the future. If the Court sends the Title VII claim to arbitration, it should stay the claims under

Section 1983 so that they can remain in court. If the Court sends all Ms. Kloosterman's claims to arbitration, it should dismiss the entire case so that she can immediately appeal. However, this Court need only reach the dispositive threshold issue of waiver in order to dispose of Defendants' motion entirely so that discovery can proceed.

Respectfully submitted this 30th day of November, 2023.

*s/ James R. Wierenga*
James R. Wierenga
Michigan Bar #P48946
99 Monroe Ave, NW
Suite 1210
Grand Rapids, MI
Tel. (616) 454-3883
jim@dwlawpc.com

David J. Williams
Michigan Bar #P76932
Bossenbrook Williams PC
1600 Abbot Road, Ste. 200
East Lansing, MI 48823
Tel. (517) 333-5789
david@bossenbrook.com

Michael D. Berry
Michigan Bar #P69206
David J. Hacker
Roger Byron
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy. #1600
Plano, TX 75075
Tel. (972) 941-4444
mberry@firstliberty.org
dhacker@firstliberty.org
rbyron@firstliberty.org

Kayla Toney
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Ave., NW, Suite 1410
Washington, DC 20004
Tel. (972) 941-4444
ktoney@firstliberty.org

*Counsel for Plaintiff*

## <u>LOCAL RULE 7.2 CERTIFICATE OF COMPLIANCE</u>

This brief complies with the word limit of L. Civ. R. 7.2(b)(i), because, excluding the parts exempted by L. Civ. R. 7.2(b)(i), it contains 9238 words. The word count was generated using Microsoft Word for Microsoft 365.

<div style="margin-left: 40%;">

Respectfully submitted,

*/s/ James R. Wierenga*
James R. Wierenga
Michigan Bar # P48946
99 Monroe Ave, NW
Suite 1210
Grand Rapids, MI 49503
Tel. (616) 454-3883
jim@dwlawpc.com

</div>

November 30, 2023