UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALERIE KLOOSTERMAN,

     Plaintiff,

                                  Case No. 1:22-cv-944

v.

                                   HON. JANE M. BECKERING

METROPOLITAN HOSPITAL, et al.,

     Defendants.

_____/

## OPINION AND ORDER

Pending before the Court in this employment discrimination action is Defendants' "Motion for Summary Judgment to Compel Arbitration" (ECF No. 73). Plaintiff filed a response in opposition to Defendants' motion (ECF No. 76), and Defendants filed a reply (ECF No. 77). For the following reasons, the Court grants Defendants' motion and closes this case.

## I. BACKGROUND

### A. Pertinent Factual Background

Plaintiff Valerie Kloosterman began working as a physician assistant at Metro Health Hospital in 2004 (2d Am. Compl. [ECF No. 69] ¶ 1). In 2009, she and Metro Health Hospital entered into a Physician Assistant Employment Agreement ("Employment Agreement") with an initial term from December 1, 2009 to June 30, 2011, which would automatically renew for additional one-year periods unless either party gave written notice of their intention not to renew (Employment Agreement, Defs. Ex. A [ECF No. 74-1] ¶ 8). In Paragraph 28 of the Employment Agreement, the parties agreed to arbitrate as follows:

> Any controversy, dispute or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled in accordance with the then existing rules of the American Arbitration Association and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.  The fees and expenses for such arbitration shall be paid equally by the Hospital and Physician Assistant.

(*id.* ¶ 28).

The Employment Agreement stated that it "shall be enforceable only by the parties hereto and their successors in interest by virtue of an assignment which is not prohibited under the terms of this Agreement," and that "no other person shall have the right to enforce any of the provisions contained herein" (*id*. ¶ 23).  But the parties also agreed that the "Hospital may, in its discretion, assign this Agreement as the Hospital deems necessary for future development" (*id*. ¶ 25).  The Employment Agreement contained a governing law provision stating that it "shall be governed by, construed and enforced in accordance with the laws of the State of Michigan" (*id*. ¶ 20).

In February of 2016, Plaintiff and Metro Health Hospital executed "Amendment #1" to the Employment Agreement, which, in relevant part, increased Plaintiff's annual salary and incentive bonus compensation model (Amendment #1, Pl. Ex. B [ECF No. 76-3]).  Amendment #1 stated that "[a]ll other terms and conditions of the Physician Assistant's Employment Agreement shall remain in full force and effect" (*id*. at PageID.1534).

Effective July 1, 2021, Plaintiff and the hospital, then identified as Metro Health-University of Michigan Health, agreed to another amendment ("Amendment #2") of the "previously entered into" Employment Agreement (Amendment #2, Pl. Ex. C [ECF No. 76-4]).[1]    Amendment #2

---

[1] Plaintiff provided the Court with a copy of Amendment #2 that does not include a signature by an agent of the hospital; however, Plaintiff does not claim that the hospital failed to sign the amendment.

addressed various revisions to the Employment Agreement and stated that "[a]ll other terms and conditions of the Agreement shall remain in full force and effect" (*id*. at PageID.1537).

On August 24, 2021, Plaintiff was given an envelope containing her termination notice, with an effective termination date of November 22, 2021 (2d Am. Compl. ¶ 103).

### B.  Procedural Posture

On October 11, 2022, Plaintiff initiated this case, naming six Defendants and alleging nine claims (ECF No. 1).  Specifically, Plaintiff named Metropolitan Hospital, d/b/a University of Michigan Health–West (UMHW), d/b/a Metro Health–University of Michigan Health; and five individuals (collectively "the Individual Defendants") who were employees at UMHW in the following positions:  Rakesh Pai, President and the Medical Group & Chief Population Health Officer; Rhae-Ann Booker, Vice President of Diversity, Equity, and Inclusion; Marla Cole, Director of Human Resources; Thomas Pierce, Diversity, Equity & Inclusion Program Coordinator; and Catherine Smith, Nurse Practitioner and a member of the Advanced Practice Providers' Council (Compl. [ECF No. 1] ¶¶ 21–29).  On January 9, 2023, the Individual Defendants filed a motion to dismiss for failure to state a claim (ECF No. 14, amended by ECF No. 23), as did Defendant UMHW (ECF No. 16).  On January 23, 2023, Defendants collectively filed a motion to stay discovery until the motions to dismiss were decided by the Court (ECF No. 26).

Plaintiff filed a First Amended Complaint on January 30, 2023 (ECF No. 30), which was corrected the next day (ECF No. 32).  Because of this filing, the Court dismissed Defendants' pending motions to dismiss and for a stay as moot (ECF No. 33).  On February 20, 2023, the Individual Defendants and UMHW filed another set of motions to dismiss for failure to state a claim (ECF Nos. 34 & 36, respectively).  On February 22, 2023, Defendants refiled their collective

motion for a protective order to stay discovery pending resolution of their motions to dismiss (ECF No. 38).  In their certificate of concurrence, Defendants stated that Plaintiff's counsel did not oppose a stay of discovery (ECF No. 40).  In March 2023, this Court entered an Order granting Defendants' motion to stay discovery (ECF No. 43).  In May 2023, Plaintiff filed a motion for leave to amend/correct the Corrected First Amended Complaint (ECF No. 50), followed by a corrected motion (ECF No. 51).

After the Parties' motions were fully briefed, the Court issued a 43-page Opinion and Order in September 2023 that granted in part and denied in part Defendants' motions to dismiss and granted in part Plaintiff's motion for leave to amend (ECF No. 68).  Plaintiff filed her Second Amended Complaint on October 11, 2023 (ECF No. 69) alleging four claims as follows:

I.    Defendants Pai, Booker, Cole, Pierce, and Smith, in Both Their Official and Individual Capacities—Violation of First and Fourteenth Amendments:  Free Exercise of Religion, 42 U.S.C. §1983

II.   Defendants Pai, Booker, Cole, Pierce, and Smith, in Both Their Official and Individual Capacities—Violation of the Fourteenth Amendment:  Equal Protection, 42 U.S.C. § 1983

III.  Defendant Metropolitan Hospital, d/b/a University of Michigan Health-West—Violation of Title VII:  Religious Discrimination, Disparate Treatment, 42 U.S.C. § 1983

IV.   Defendants Pai, Booker, Cole, Pierce, and Smith, in their Individual Capacities—Violation of the Elliot-Larsen Civil Rights Act of 1974

(2d Am. Compl. at PageID.1264, 1271, 1273, 1277).  Defendants collectively filed an Answer on October 25, 2023 (ECF No. 71).  In  answer to Paragraphs 14, 15, and 17 of the Second Amended Complaint, Defendants averred that the action is subject to arbitration, and in Paragraph 2 of their affirmative defenses, Defendants claimed that the "Court lacks jurisdiction and otherwise lacks authority because Plaintiff's claims are barred by the arbitration clause in the Employment

Agreement and Defendants intend to seek dismissal based upon same" (ECF No. 71).  On October 27, 2023, this Court entered an Order setting a Rule 16 scheduling conference (ECF No. 72).

On November 2, 2023, Defendants filed this motion for summary judgment to compel arbitration (ECF No. 73), which Plaintiff opposes (ECF No. 76).  Plaintiff also subsequently filed a Notice of Supplemental Authority (ECF No. 78), bringing this Court's attention to the decision of the Sixth Circuit Court of Appeals in *Schwebke v. United Wholesale Mortg. LLC*, No. 23-1507, ___ F.4th ___, 2024 WL 1298149 (6th Cir. Mar. 27, 2024).  Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d).

## II.  ANALYSIS

### A.  Motion Standard

If, as here, the court considers evidence outside the complaint in resolving a motion to compel arbitration, then it applies the summary judgment standard relevant to motions filed under Federal Rule of Civil Procedure 56. *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 838 (6th Cir. 2021); *Rowan v. Brookdale Senior Living Communities, Inc.*, No. 13-1261, 2015 WL 9906264, at *1 (W.D. Mich. June 1, 2015), *aff'd*, 647 F. App'x 607 (6th Cir. 2016).  In considering a Rule 56 motion, the Court construes all reasonable factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  The party opposing arbitration "bears the burden of establishing that the dispute is nonarbitrable," *Rex v. CSA-Credit Sols. of Am., Inc.*, 507 F. Supp. 2d 788, 793 (W.D. Mich. 2007) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91

(2000)), and "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (further noting that "[t]he required showing mirrors that required to withstand summary judgment in a civil suit").

## B.  Discussion

In their briefs, the parties cite to the Federal Arbitration Act (FAA) and federal caselaw in support of their respective arguments.  As already noted, the Employment Agreement contains a governing law provision that states the agreement "shall be governed by, construed and enforced in accordance with the laws of the State of Michigan" (Employment Agreement ¶ 20).  The FAA is not mentioned in the Employment Agreement or either of its amendments.  "Although the FAA generally preempts inconsistent state laws and governs all aspects of arbitrations concerning 'transaction[s] involving commerce,' parties may agree to abide by state rules of arbitration, and 'enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA.'"  *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 748 F.3d 708, 715–16 (6th Cir. 2014) (quoting *Muskegon Cent. Dispatch 911 v. Tiburon, Inc.*, 462 F. App'x 517, 522–23 (6th Cir. 2012)).  Accordingly, Michigan law applies with respect to the interpretation and applicability of the arbitration clause in the present dispute.[2]

The Court notes that federal law is mostly consistent with Michigan law on the presenting issues, and in fact, it directs the Court to apply state contract law to determine whether nonparties

---

[2] The arbitration clause in the Employment Agreement states that "any controversy, dispute or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled in accordance with the then existing rules of the American Arbitration Association."  Thus, while Michigan law applies to the interpretation of the Employment Agreement and determination whether Plaintiff's claims against Defendants are subject to arbitration, the American Arbitration Association (AAA) rules would govern the arbitration itself.

have a right to compel arbitration under an existing agreement.  Moreover, Michigan has adopted the Uniform Arbitration Act, MICH. COMP. LAWS § 600.1683 *et seq.*, which is largely based on the FAA.  Given the similarities between federal and state law, the Court has considered the parties' cited cases applying the FAA where Michigan law is consistent with those cases or lacks sufficient analysis on an issue.

The question of arbitrability is for the Court.  *Kaleva-Norman-Dickson Sch. Dist. No. 6 v. Kaleva-Norman-Dickson-Sch. Teachers' Ass'n*, 227 N.W.2d 500, 587 (Mich. 1975).  "Arbitration is a matter of contract.  A party cannot be required to arbitrate an issue which he has not agreed to submit to arbitration." *Id*.  When interpreting an arbitration agreement, the court applies the same legal principles that govern contract interpretation. *Altobelli v. Hartmann*, 884 N.W.2d 537, 542 (Mich. 2016).  A court's "primary task is to ascertain the intent of the parties at the time they entered into the agreement," which is determined "by examining the language of the agreement according to its plain and ordinary meaning." *Id*.  The general policy in Michigan is favorable to arbitration, and "the burden is on the party seeking to avoid the agreement, not the party seeking to enforce the agreement." *Id.*

In its motion for summary judgment to compel arbitration, Defendants argue that Plaintiff's claims against UMHW and the Individual Defendants are covered by the arbitration clause in the Employment Agreement (ECF No. 74 at PageID.1464).  Plaintiff raises several arguments in opposition to arbitration, claiming that Defendants waived the opportunity to seek arbitration, the current hospital entity is not covered by the arbitration clause, the Individual Defendants are not covered by the arbitration clause, her claims are not subject to the arbitration clause, and there is a strong public interest in keeping her employment discrimination and constitutional rights claims in a court of law (ECF No. 76).  In reply, Defendants contest that they waived their right to

7

arbitration or that any of Plaintiff's other objections have merit.  The Court will address the parties' various arguments in turn.

### 1.  Employment Agreement Validity

As an initial matter, although Plaintiff does not claim that the Employment Agreement or either of its amendments are invalid due to fraud, duress, unconscionability, or other traditional defenses to a contract, she contends that when she signed the documents, she did not have union representation, consult an attorney, or have an opportunity to negotiate (ECF No. 76 at PageID.1489; Kloosterman Decl. [ECF No. 76-1] ¶¶ 8–10, 12–14).  "A mere judicial assessment of 'reasonableness' is an invalid basis upon which to refuse to enforce contractual provisions. Only recognized traditional contract defenses [e.g. duress, waiver, estoppel, fraud or unconscionability] may be used to avoid the enforcement" of a contractual provision.  *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 31 n.23 (Mich. 2005).  Plaintiff has identified no legally recognized equitable defenses that would entitle her to invalidate the Employment Agreement and its arbitration clause.

Even if the FAA were applicable here, Defendants would not be entitled to invalidate the Employment Agreement and its arbitration clause.  The FAA provides that "a contract evidencing a transaction involving commerce," which provides for settlement by arbitration of disputes arising out of such contract or transaction, "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of contract or as otherwise provided in chapter 4."  9 U.S.C. § 2.  The Supreme Court has clarified that the FAA applies to virtually all contracts of employment, and that only transportation workers are exempted from the FAA.  *Circuit City Shores, Inc. v. Adams*, 532 U.S. 105 (2001).  Moreover, "mere inequality in bargaining power . . .

is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991).  "[T]he FAA's purpose was to place arbitration agreements on the same footing as other contracts." *Id*.

## 2. Waiver of Arbitration

Plaintiff contends that because Defendants engaged in more than a year of litigation and filing "two sets of motions to dismiss, reply briefs in support of the motions, a motion to stay discovery, vigorous opposition to [Plaintiff's] motion to amend her complaint (including opposition to [Plaintiff's] motion to file a reply), participating in a FED. R. CIV. P. 26(f) conference, negotiating and completing a joint status report in preparation for discovery, and filing an answer," Defendants have waived the opportunity to seek arbitration (ECF No. 76 at PageID.1491). Defendants point out in reply that even Plaintiff admits that neither party has conducted discovery. Moreover, the parties "have also **not** participated in a scheduling conference, been subject to a pretrial conference order, litigated this matter through the motion practice stages, issued any subpoenas, deposed any witnesses, or appealed any adverse ruling.  And Defendants did **not** fail to raise arbitration as an affirmative defense" (ECF No. 77 at PageID.1553) (emphasis in original). Defendants argue that based on the totality of the circumstances, they have not waived their right to arbitrate (*id.*).

Defendants' argument has merit.

"Generally, courts disfavor the waiver of a contractual right to arbitration.  However, a party may waive any contractual rights, including the right to arbitration." *Nexteer Automotive Corp. v. Mando America Corp*, 886 N.W.2d 906, 909 (Mich. Ct. App. 2016).  "A waiver is an intentional relinquishment or abandonment of a known right." *Id*.  "Whether one has waived his right to arbitration depends on the particular facts and circumstances of each case." *Madison Dist.*

*Public Schools v. Myers*, 637 N.W.2d 526, 529 (Mich. Ct. App. 2001).  "The party arguing there

has been a waiver of this right bears a heavy burden of proof and must demonstrate knowledge of

an existing right to compel arbitration, acts inconsistent with the right to arbitrate, and prejudice

resulting from the inconsistent acts."  *Id.* (internal quotation marks and citations omitted).  In light

of the evolving law associated with arbitration agreements and matters of waiver, as revealed in

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), and its progeny,[3] and because Plaintiff has not

met her heavy burden of proof in showing acts sufficiently inconsistent with the right to arbitrate

to establish waiver, the Court need not address whether Plaintiff has also shown prejudice.

As Defendants point out, although time has passed due to litigation over Defendants'

motions to dismiss and Plaintiff's multitude of amendments to her complaint, this case remains at

a relatively early stage.  No scheduling conference has been held.  No written discovery has taken

place, nor have any depositions been taken.  Defendants moved for a stay of discovery while their

motions to dismiss were pending, which Plaintiff did not oppose.  In their collective Answer to

Plaintiff's Second Amended Complaint, Defendants stated in answer to Paragraphs 14, 15, and 17

and in Paragraph 2 of their affirmative defenses that Plaintiff's claims are barred by the arbitration

---

[3] Until recently, federal courts, including the Sixth Circuit, held that a party waives its right to
arbitration if it knew of the right, acted inconsistently with that right, and prejudiced the other party
by its inconsistent actions.  *Morgan*, 596 U.S. at 413; *Schwebke*, 2024 WL 1298149, at *4.  In
*Morgan*, the Supreme Court rejected the notion that the FAA's policy favoring arbitration supports
the application of an arbitration-specific waiver rule demanding a showing of prejudice.  *Morgan*,
596 U.S. at 416.  Noting that "[o]utside the arbitration context, a federal court assessing waiver
does not generally ask about prejudice," the Supreme Court held that the proper focus is on the
actions of the person who held the right, not the effects of those actions on the opposing party, as
waiver "is the intentional relinquishment or abandonment of a known right."  *Id.* at 417 (internal
quotation marks and citations omitted).  The Supreme Court held that its frequent reference to the
FAA as a "policy favoring arbitration" is "merely an acknowledgment of the FAA's commitment
to overrule the judiciary's longstanding refusal to enforce arbitration agreements to arbitrate and
to place such agreements upon the same footing as other contracts."  *Id.* at 418 (internal quotation
marks and citations omitted).

clause and that they intended to seek dismissal (ECF No. 71).  And within days of filing their Answer, Defendants filed the pending motion to compel arbitration, prompting the Court to adjourn the Rule 16 scheduling conference and render moot the deadline to file a joint status report (ECF No. 75).  The Court finds that based on the totality of the circumstances, and unlike the defendant in *Schwebke*, 2024 WL 1298149, or the multitude of other cases cited by Plaintiff, Defendants have not implicitly waived their contractual right to seek enforcement of the arbitration agreement, as their conduct did not rise to the level of an intentional relinquishment or abandonment of a known right.

### 3. Right of University of Michigan Health–West to Enforce Arbitration Agreement

Plaintiff argues that the Court should reject Defendants' attempt to compel arbitration of her claims against UMWH because the contract she signed in 2009 was with a different entity, Metropolitan Health Hospital, "nearly a decade before it was purchased by University of Michigan" (ECF No. 76 at PageID.1504).  Defendants argue that Plaintiff remains bound by her Employment Agreement because she signed an amendment effective on July 1, 2021 with "Metro Health University of Michigan Health," which "amends the Employment Agreement previously entered into by the Parties" (ECF No. 77 at PageID.1561–62 (quoting ECF 76-4 at PageID.1537)).

Defendants' argument has merit.

In the Employment Agreement signed in 2009, the hospital was identified as Metro Health Hospital (ECF No. 76-2).  However, in Paragraph 23 of the contract, it stated that "[t]his agreement shall be enforceable only by the parties hereto and their successors in interest by virtue of an assignment which is not prohibited under the terms of this Agreement . . . " and in Paragraph 25, it stated that "[t]he Hospital may, in its discretion, assign this Agreement as the Hospital deems necessary for future development" (*id*. at PageID.1528).  In other words, an assignment of the

11

Employment Agreement by the hospital was anticipated as possible and expressly permitted at the time Plaintiff signed it.  Moreover, as Defendants point out, Plaintiff signed Amendment #2 to the Employment Agreement in 2021, in which the hospital was expressly identified as "Metro Health-University of Michigan Health."  In Amendment #2, the parties agreed that it was an amendment to the Employment Agreement previously entered into by the parties (ECF No. 76-4 at PageID.1537).  Plaintiff cannot escape applicability of the arbitration agreement as it pertains to the current hospital entity.

### 4. Right of Individual Defendants to Enforce Arbitration Agreement

Next, Plaintiff argues that the Individual Defendants have no right to compel arbitration because they were not parties to the contract, none of them were employed by Metropolitan Hospital when she signed the contract in 2009, and she did not agree to arbitrate claims for constitutional violations by any future employee acting in their individual capacity (ECF No. 76 at PageID.1509).  She further argues that when signing the Employment Agreement, she could not have foreseen that individual actors whom she had not yet met would take actions toward her personally that would violate her constitutional rights under §1983, that constitutional claims under §1983 can only be brought against a state actor, and that she could not possibly have agreed to send her constitutional claims under §1983 to arbitration because Metro Health did not become a state actor until the University of Michigan took over its operations in 2016 (*id.*).

The only cases Defendants cite in support of their argument that the Individual Defendants are entitled to compel arbitration are *Arnold v. Arnold Corp.*, 920 F.2d. 1269 (6th Cir. 1990) (officers of corporation were entitled to arbitration as agents of corporation even though they had not signed arbitration agreement), abrogation recognized in *AtriCure, Inc., v. Meng*, 12 F.4th 516 (2021), and *Powell v. Sparrow Hosp.*, No. 1:10-CV-206, 2010 WL 2901875, at *1 (W.D. Mich.

July 23, 2010), a 2010 ruling by this Court that contains an analysis in an employment case consistent with *Arnold*.

As Plaintiff points out in her response brief, *Arnold* has since been abrogated by *AtriCure Inc*.[4] Plaintiff distinguishes *Powell* from the present case by pointing out that the individual defendants in that case were subject to the arbitration agreement because the claims against them were identical to those against the company, whereas here, she alleges, the claims are fundamentally different (ECF No. 76 at PageID.1510).

As an initial matter, neither party contends that any of the Individual Defendants are signatories to the Employment Agreement or either of its amendments.  Thus, the issue before the Court is whether Michigan law supports a finding that they are nevertheless entitled to compel arbitration in this case.

In *Altobelli*, 884 N.W.2d at 542, the Michigan Supreme Court held that when evaluating whether a matter is subject to arbitration, a Court's "primary task is to ascertain the intent of the parties at the time they entered into the agreement," which is determined by examining the language of the agreement "according to its plain and ordinary meaning."  Altobelli was a former principal of a law firm who brought tort claims against several other principals of the firm

---

[4] When the Sixth Circuit issued its ruling in *Arnold* in 1990, "many circuit courts used the federal policy favoring arbitration to broadly enforce arbitration contracts in favor of (or against) nonparties under expansive readings of generic common-law concepts."  *Atricure Inc.*, 12 F.4th at 520.  But times have changed.  "[T]he Supreme Court has since held that courts considering whether arbitration clauses cover nonparties should neutrally apply the relevant state law that otherwise governs."  *Id*. (citing *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630–32 (2009)).  With the dispelling of the idea that a federal policy favoring arbitration should influence the issue, the Sixth Circuit has concluded that there is "no room" for a "federal 'dice-loading'" rule of construction to resolve a state-law question."  *Id*. (citation omitted).  Under either federal law or Michigan law, the Court must determine whether Michigan's contract law, "when fairly read, permits the defendants to enforce the arbitration clause even though they did not sign the contract."  *Id*.

challenging actions they performed in their capacities as agents carrying out the business of the firm. A dispute arose when Altobelli sought to take a leave of absence from the firm to pursue a football coaching opportunity at the University of Alabama. *Id*. at 541. He alleged in his lawsuit that he sought to take a 7- to 12-month period of leave while preserving his ownership interest and senior principal position in the firm, and that he took actions in reliance on certain assurances by various individual defendants, but he ended up having his equity ownership involuntarily terminated, and he was shorted income as a result. *Id*.

The parties' operating agreement in that case contained a mandatory arbitration provision that covered "[a]ny dispute, controversy, or claim . . . between the Firm or the Partnership and any current or former Principal or Principals of the Firm or current or former partner or partners of the Partnership . . . . " *Id*. at 539. In its analysis, the Michigan Supreme Court observed that a party cannot be required to arbitrate an issue that it has not agreed to submit to arbitration. *Id*. But it also acknowledged the State of Michigan's general policy of being favorable to arbitration, as reflected in the fact that the burden under Michigan law is on the party seeking to avoid the agreement, not the party seeking to enforce the agreement. *Id*.

The *Altobelli* court stated that "[a]lthough no Michigan court has explicitly applied agency principles when interpreting an arbitration clause, it is well established that corporations can only act through officers and agents." *Id*. at 543 (citation and internal quotation marks omitted). "This reflects the fact that a company is not a physical being capable of taking its own actions or making its own decisions. Indeed, a firm cannot act on its own behalf. Therefore, the acts of officers and agents of a corporation, within the scope of their employment, are the acts of the corporation."[5]

---

[5] Altobelli had been an attorney at a law firm that was a professional limited liability company formed under the Michigan Limited Liability Company Act (MLLCA), MICH. COMP. LAWS 450.4101 *et seq*. *Altobelli*, 884 N.W.2d at 539. In a footnote, the Supreme Court recognized that

*Id*. (citations and internal quotations omitted).   The court noted that when interpreting an arbitration clause, other jurisdictions have similarly applied agency principles:

> In *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 7 F.3d 1110, 1122 (C.A.3, 1993) (citation omitted; alteration in original), the United States Court of Appeals for the Third Circuit noted that a corporation "'can only act through its employees, and an arbitration agreement would be of little value if it did not extend to [them].'"  In *Arnold v. Arnold Corp- Printed Communications for Business*, 920 F.2d 1269, 1281 (C.A. 6, 1990), the Sixth Circuit Court of Appeals reasoned that if a plaintiff could "'avoid the practical consequences of an agreement to arbitrate by naming . . . signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified.'" (Citation omitted.)  The First Circuit agreed:
>
> > Such a rule is necessary, our sister circuits have reasoned, because a corporate entity or other business can only operate through its employees and an arbitration agreement would be a meaningless arrangement if its terms did not extend to them . . . .  Any other rule, in view of these courts, would permit the party bringing the complaint to avoid the practical consequences of having signed an agreement to arbitrate; naming the other party's officers, directors or employees as defendants along with the corporation would absolve the party of all obligations to arbitrate. *Grand Wireless, Inc. v. Verizon Wireless, Inc*. 748 F.3d. 1, 11 (C.A. 1, 2014) citing *Arnold*, 920 F.2d at 1281.
>
> For the above reasons, we hold that agency principles apply in determining who is included within the scope of the arbitration clause.[6]

*Id*. at 544–45.  In applying agency principles to the factual circumstances in *Altobelli*, the Michigan Supreme Court noted that the parties' operating agreement explicitly delegated authority to certain individuals to carry out the firm's business and manage its internal affairs, and the defendants were those individuals operating on the firm's behalf, being the five managing directors, the CEO, and

---

"some cited caselaw addresses situations where agents acted on behalf of a corporation, whereas, in the instant case, the Firm is a professional liability company," but it saw "no reason to distinguish between a corporation and another type of company."  *Id*. at n.6.

[6] Although *Arnold*, 920 F.2d at 1269, has been abrogated, *see AtriCure*, 12 F.4th at 516, *Altobelli*, 884 N.W.2d at 537, remains good law in Michigan regarding agency principles as applied to arbitration agreements.

the head of the firm's litigation group.  *Id*. at 546.  Concluding that the individual defendants' actions "were acts of the company . . . because it is axiomatic that the Firm cannot act on its own, and because these particular defendants are clearly endowed with agency authority to administer the Firm's affairs," the court held that the individually named defendants must be included within the meaning of 'the Firm' in the arbitration clause."  *Id*. (citations to authority and internal quotations omitted).

In the present case, the Court first turns to the plain language of the arbitration clause of the Employment Agreement in an effort to determine whether the parties intended to include the Individual Defendants.  *See id.* at 545.  As noted earlier, the arbitration clause states as follows:

> Any controversy, dispute or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled in accordance with the then existing rules of the American Arbitration Association and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.  The fees and expenses for such arbitration shall be paid equally by the Hospital and Physician Assistant.

(Employment Agreement ¶ 28).  The arbitration clause does not identify *who* is bound by or entitled to enforce it.  Rather, it simply describes its scope, covering "[a]ny controversy, dispute or claim arising out of or relating to" the agreement, or a breach thereof, and that the fees and expenses for such arbitration shall be paid equally by the Hospital and Physician Assistant.[7]

---

[7] Plaintiff argues that because Paragraph 21 of the Employment Agreement states that the "Covenants of Sections 4, 12, and 29 shall survive the termination of this Agreement," that must mean that Section 28, the arbitration clause did not survive after she was terminated in 2021 under the agreement (ECF No. 76 at PageID.1504–05).  She similarly points to the termination letter she received and that fact that Defendant Pai made clear that Sections 12 and 29 continued to bind her but made no mention of Section 28 (*id*. at PageID.1505).  Plaintiff's argument lacks merit, as Paragraphs 4, 12, and 29 pertain to covenants in which the parties agreed to do or not to do certain acts, even after the termination of the Employment Agreement.  Paragraph 28 pertains to the agreed upon method of resolving any disputes that arise out of or relate to the Employment Agreement and any breach thereof.

The Court next turns to Michigan's contract and agency law.  As the Michigan Supreme Court held in *Altobelli*, 884 N.W.2d at 543, "corporations can only act through officers and agents" and "the acts of officers and agents of a corporation, within the scope of their employment, are the acts of the corporation."  Understanding that Metro Health Hospital/UMHW cannot act on its own, but instead depends on the actions of agents to carry out its business, the Court concludes that by signing the arbitration agreement, Plaintiff was certainly aware that individuals in positions of authority over decisions concerning her employment would be operating on Metro Health Hospital/UMHW's behalf.[8]  *See id*. at 545 ("By signing the Operating Agreement and accepting the arbitration clause, plaintiff was aware that certain individuals would be operating on the Firm's behalf").

The Individual Defendants were identified in Plaintiff's Second Amended Complaint *because* they had control or influence over her employment, including whether to grant her request for a religious accommodation and whether to terminate her employment.  Plaintiff argued as much when successfully opposing each of the Individual Defendant's motions to dismiss.  In Count I of her Second Amended Complaint, Plaintiff alleges that the Individual Defendants violated her constitutional rights when they condemned her religious beliefs or tacitly approved of or shared their colleagues' animus toward her "while participating in the decision to terminate" her (2d Am. Compl. ¶ 197).  In Count II, she alleges that Pierce and Smith "[set] an accommodation denial into motion by recommending" to Cole and Booker that her "accommodation request be denied and

---

[8] Plaintiff argues that the Individual Defendants were not employed by the hospital when she signed the 2009 Employment Agreement; however, she does not claim that they had not yet been employed on June 30, 2021, when she signed Amendment #2, which indicated that all other terms and conditions of the Employment Agreement remained in full force and effect.  Moreover, the Court's analysis turns on the concept of agency, so their employment at the time she signed the contract is irrelevant.

her employment be terminated," whereafter Booker and Cole made the decision to deny her accommodation request and terminate her employment, and Pai ratified the decision (*id*. ¶ 240). And in Count IV, she claims that the Individual Defendants retaliated against her for requesting a religious accommodation and terminated her on the same basis (*id*. ¶¶ 286–87).[9]

Plaintiff alleges that, in their respective roles as President; Vice President of Diversity, Equity and Inclusion; Director of Human Resources; Coordinator of the Diversity, Equity & Inclusion Program; and member of the Advanced Practice Providers' Council, each of the Individual Defendants played a role in denying her a religious accommodation and terminating her.  In doing so, Plaintiff implicitly acknowledges that they were endowed with the power and responsibility for managing the affairs of the hospital when it came to her employment and its conditions.  Because the Individual Defendants were endowed with agency authority over Plaintiff's employment with Metro Health Hospital/UMHW, they are included within arbitration clause of the Employment Agreement that Plaintiff entered into with the hospital.

### 5.  Scope of Arbitration Agreement

Last, Defendants argue that Plaintiff's claims, including her civil rights and constitutional claims and any requested remedy, fall within the scope of the arbitration clause (ECF No. 74 at PageID.1464–1466; ECF No. 77 at PageID.1561–1564).  Plaintiff argues that her claims are not subject to the arbitration clause "for three reasons:  1) there is no federal policy in favor of arbitration; 2) [Plaintiff] lacked notice that she was waiving her right to bring statutory discrimination claims; and 3) arbitration is not the proper forum for her discrimination claim because of the employer's superior bargaining power" (ECF No. 76 at PageID.1501).

---

[9] At issue before the Court is "*in what venue* [P]laintiff must bring [her] dispute, not whether the Individual Defendants may be held personally liable for the tortious actions alleged within the dispute."  *See Altobelli*, 884 N.W.2d at 545 n.9 (emphasis in original).

Defendants' argument has merit.

The Court rejects Plaintiff's first and third arguments for the reasons previously stated in this Opinion.  As for her second argument, the Court notes that if the arbitration clause applies, Plaintiff will not be waiving her right to bring statutory discrimination claims; arbitration will merely be the forum in which her claims will be resolved.  That leaves the ultimate question of whether the subject matter of the instant dispute is covered by the arbitration clause.

"Generally speaking, to ascertain whether the subject matter of a dispute is of the type that parties intended to submit to arbitration," the Court must "again begin with the plain language of the arbitration clause."  *Altobelli*, 884 N.W.2d at 545.  The Court must "then consider whether a plaintiff's particular action falls within that scope."  *Id*.  The gravamen of an action is determined by considering the entire claim to determine its exact nature, looking beyond mere procedural labels.  *Id*.

Turning to the plain language of the arbitration clause, it broadly covers "*any* controversy, dispute, or claim arising out of or relating to this Agreement, or the breach thereof" (Employment Agreement ¶ 28) (emphasis added).  The Employment Agreement itself comprehensively covers all of the terms and conditions of Plaintiff's employment, including her general duties, such as taking "such actions as may be necessary to maintain and encourage the Hospital's relationship with its patients" (*id*. ¶ 3), her employment term (*id*. ¶ 8), compensation (*id*. ¶ 9), and the Hospital's rights to terminate the Agreement (*id*. ¶ 11).  It states that it is "is the entire Agreement between the parties regarding the terms and conditions of the Physician Assistant's employment" (*id*. ¶ 19).

As for the gravamen of Plaintiff's claims in her Second Amended Complaint, the Court concludes that they all fall within the wide expanse of "any controversy, dispute, or claim" arising out of or related to Plaintiff's terms of employment with the hospital.  Plaintiff raises several

constitutional and statutory civil rights violations associated with how the Defendants handled her attempt to freely exercise her religious beliefs in the workplace.  The crux of all of her claims is that she was discriminated against and subjected to retaliation when Defendants refused her request for an accommodation of the manner in which she maintained and encouraged her and the hospital's relationship with a particular set of patients, and she was instead terminated.

*Altobelli* is instructive.  Due to his loss of employment with the law firm, the plaintiff sued the individual defendants alleging that they engaged in tortious conduct: "breach of fiduciary duty, illegal shareholder oppression contrary to MICH. COMP. LAWS § 450.4515, conversion, bad-faith misrepresentation, tortious interference with a business relationship or expectancy, and civil conspiracy."  *Altobelli*, 884 N.W.2d at 541.  In each of his claims, the plaintiff took issue with the individual defendants' actions as agents making decisions for the law firm, which the plaintiff believed interfered with his financial entitlements under the operating agreement.  *Id*. at 547.  The Michigan Supreme Court concluded that the gravamen of the plaintiff's dispute fell within the scope of the mandatory arbitration clause in the operating agreement because "[a] company can only act through its agents, the individual defendants are agents of the Firm, and plaintiff's claims inextricably tie defendants' actions as agents to the alleged deprivation of plaintiff's rights under the Operating Agreement.  Plaintiff's dispute is subject to binding arbitration."  *Id*.

Here, Plaintiff's dispute falls within the scope of the arbitration clause because a company can only act through its agents, the Individual Defendants were agents of the hospital, and Plaintiff's claims inextricably tie their actions as agents to the alleged deprivation of her rights of employment under the Employment Agreement with the hospital.

In sum, Plaintiff has failed to overcome her burden of establishing that the dispute is nonarbitrable and that the arbitration agreement is not valid or enforceable with respect to the remaining claims in this case.  Consequently, Defendants' motion to compel arbitration is granted.

### 6. Dismissal of Plaintiff's Case

The final question for the Court is whether to dismiss the instant action, given that all remaining claims are subject to arbitration.  Both Defendants and Plaintiff request that in the event that the Court grants the motion to compel arbitration, the Court dismiss the case (ECF No. 74 at PageID.1468; ECF No. 76 at PageID.1516).  Under § 3 of the FAA, when a district court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration ... [it] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.  The Sixth Circuit has interpreted this language as mandating a stay when a party requests one.  *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941 (6th Cir. 2021).  Neither has done so here.

The Court thus retains discretion over whether to stay or dismiss this action. *See id.* at 942. Under the terms of the Employment Agreement and its incorporation of the AAA Rules, the arbitrator has the power to award relief and to decide the underlying dispute (Employment Agreement ¶ 28).  As such, the Court anticipates that its only potential role moving forward will be to enforce an arbitration award, so a dismissal is appropriate.  A final order also has the advantage of creating an unambiguous pathway for appeal of the Court's decision—an option that would be unavailable to Plaintiff if the Court imposed a stay.  *See* 9 U.S.C. §§ 16(a)(3), (b)(1).

### III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment to Compel

Arbitration (ECF No. 73) is GRANTED, and this case is DISMISSED.

Because this Opinion and Order resolves all pending claims, the Court will also enter a

Judgment.  *See* FED. R. CIV. P. 58.


Dated:  April 5, 2024                                 /s/ Jane M. Beckering
                                                     JANE M. BECKERING
                                                     United States District Judge