The Honorable Jane M. Beckering

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| VALERIE KLOOSTERMAN, *Plaintiff*, v. METROPOLITAN HOSPITAL, d/b/a University of Michigan Health-West, et al., *Defendants*. | No. 1:22-cv-00944-JMB-SJB **PLAINTIFF'S BRIEF IN SUPPORT OF HER MOTION TO COMPEL DISCOVERY PRODUCTION** **ORAL ARGUMENT REQUESTED** |

Pursuant to Federal Rule of Civil Procedure 37(a) and W.D. Mich. LCivR 7.3, Plaintiff Valerie Kloosterman moves this Court to compel Defendants Metropolitan Hospital, dba University of Michigan Health-West dba Metro Health-University of Michigan Health ("Defendant UMHW"), Rakesh Pai, Marla Cole, Thomas Pierce, and Catherine Smith (collectively, "the Individual Defendants") to conduct certain searches of electronically stored information ("ESI") in response to her First Set of Requests for Production of Documents ("RFPs").

Plaintiff served her RFPs on November 12, 2025. *See* Ex. A (Pl.'s RFPs to Def. UMHW); Ex. I (Pl.'s RFPs to the Individual Defendants). The parties then engaged in extensive meet-and-confer efforts over at least three weeks regarding the scope of ESI searches to be conducted by

Defendants, including custodians, date ranges, and search terms. *See* Ex. B (email correspondence between counsel). While they have reached agreement on many issues, the parties remain at an impasse on the three specific areas at issue in this motion. *See id.* at 2–4 (summarizing the three disputed issues).

Plaintiff asks that the Court compel Defendants to:

(1) Conduct a targeted ESI search of one custodian's documents related to the Human Rights Campaign's ("HRC") Healthcare Equality Index pursuant to Plaintiff's RFP 18. This search is relevant and proportionate to the needs of the case because of HRC's involvement in Defendant UMHW's trainings and policies related to gender identity, which directly relate to Plaintiff's termination. Defendants have refused to conduct any ESI searches related to RFP 18 and will only agree to produce certain non-ESI documents, which to date they have not yet produced;

(2) Produce and not withhold documents reflecting the Individual Defendants' bias against individuals who hold traditional beliefs about gender and sexuality; and

(3) Conduct an ESI search of one custodian's documents related to former employees Dr. Meppelink and Dr. Manion, as requested in RFP 11, who Plaintiff has reason to believe also faced discrimination by Defendant UMHW because of their religious beliefs. Defendants have refused to conduct any ESI searches related to RFP 11 and will only agree to produce certain non-ESI documents.

## FACTUAL BACKGROUND

Plaintiff Valerie Kloosterman was terminated from her employment with Defendant UMHW after expressing her religious concerns about a mandatory training related to gender identity. Second Amended Complaint, ECF No. 69, PageID.1232–1280.

Ms. Kloosterman is a devout Christian and longstanding member of the United Reformed Church. ECF No. 69, PageID.1237, ¶ 30. She believes that all humans are created in God's image, and that God created humans uniquely male and female. *Id.*, PageID.1238, ¶¶ 31, 34–35. As a Christian medical professional, it would violate Ms. Kloosterman's conscience to affirm statements that go against her sincere religious beliefs or to participate in gender-transition drugs or procedures that violate her faith. *Id.*, PageID.1239, ¶¶ 39–40. During her 17 year-tenure as a physician assistant at University of Michigan Health-West, Ms. Kloosterman was an exemplary employee with a thriving medical practice consistent with her religious beliefs—until the events giving rise to this lawsuit. *Id.*, PageID.1241–1242, ¶¶ 47–48, 52–56.

In 2018, UMHW instituted a series of mandatory trainings related to sexual orientation and gender identity. ECF No. 69, PageID.1244, ¶ 72. These trainings began as merely informative, but in 2021, the training required Ms. Kloosterman to affirm statements that violated her sincerely held religious beliefs. *Id.*, PageID.1244–1245, ¶¶ 73–74. This led Plaintiff to request a religious accommodation regarding the training module. *Id.*, PageID.1245, ¶ 81. Following a series of meetings with Ms. Kloosterman about her religious concerns, in which UMHW officials attacked Ms. Kloosterman's beliefs and attempted to force her to pledge that she would speak biology-obscuring pronouns to patients and make referrals or otherwise participate in "gender reassignment" drugs and procedures, even though these issues had not arisen with her patients. *Id.*, PageID.1246–1247, ¶¶ 87–93. UMHW fired her on August 24, 2021. *Id.*, PageID.1249, ¶ 108.

## **LEGAL STANDARD**

Parties may seek discovery of any relevant, non-privileged information. FED. R. CIV. P. 26(b)(1). Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. A party may request the production of "any designated documents or

electronically stored information" in the responding party's possession, custody, or control. FED. R. CIV. P. 34(a)(1)(A). When parties reach an impasse regarding discovery, the federal rules authorize a motion to compel disclosure or discovery. FED. R. CIV. P. 37(a).

## **ARGUMENT**

### A. Defendants Should Be Compelled to Conduct an ESI Search Related to the Human Rights Campaign's Healthcare Equality Index (RFP 18).

The first of three remaining issues where the parties disagree is Plaintiff's RFP 18, which requests: "All documents related to the Human Rights Campaign's Healthcare Equality Index (including UMHW's ranking therein) from 2018 to the present, including but not limited to emails, text communications, press releases, research surveys, employee trainings, and other materials used to obtain or promote UMHW's ranking therein." Ex. C, at 6 (Def. UMHW's Resp. to Pl.'s RFPs). Defendants refuse to conduct any ESI searches for RFP 18. In the email correspondence with counsel, Defendants wrote, "We do not agree to a special ESI search for this tangential issue." Ex. B, at 7; *see also id.* at 2–3 (summarizing dispute).

This request is highly relevant because Plaintiff was fired after she expressed her religious concerns about a mandatory employee training related to gender identity, ECF No. 69, PageID.1233, ¶¶ 3–4, and the Human Rights Campaign ("HRC") is involved in employee trainings offered by UMHW and other UMHW policies related to gender identity. Defendant UMHW issued a press release about its score on the HRC's Healthcare Equality Index, tying the Index to its policies related to trainings, pronouns, and other gender identity policies. Ex. D, Bates stamp KLOOSTERMAN01695 (UMHW Press Release). Participants in HRC's Healthcare Equality Index are given access to free diversity training on issues related to gender identity. Ex. E, Bates stamp KLOOSTERMAN00798 (UMHW DEI Weekly Update). Participants in HRC's Healthcare Equality Index are incentivized to create or maintain policies related to issues of sexual orientation

and gender identity (including those related to employee training, pronoun usage, etc.) in order to improve their score on the Index. Ex. F, Bates stamp KLOOSTERMAN01708–12 (UMHW'S 2022 HEI Rating). Thus, electronic communications relating to HRC may reveal the reasons why UMHW denied Plaintiff's request for a religious accommodation related to the mandatory training or otherwise discriminated against Plaintiff because of her religious beliefs concerning gender identity.

In our conference, counsel for Defendants informed us that Thomas Pierce is the main UMHW employee who had meaningful involvement with the HRC, and that he has documents responsive to this request. Ex. B, at 2, 7, 13. Plaintiff accordingly agreed to narrow her request to an ESI search to only one custodian, Pierce, and for four targeted search terms. These four targeted search terms are "HRC," "Human Rights Campaign," "Healthcare Equality Index," and "HEI." Despite the narrow request, Defendants nevertheless objected to an ESI search for these terms, labeling it a "tangential issue." Ex. B, at 7. Defendants were only willing to only produce limited non-ESI documents, such as submissions to the HRC and press releases, which have not yet been produced and omit potentially highly relevant information. Moreover, Defendants have failed to demonstrate that searching one custodian's emails for four specific terms would create an undue burden or cost. This will not be overly burdensome to review. An ESI search of one custodian's emails for the "Human Rights Campaign" terms is relevant, proportional to the needs of the case, and the production burden does not outweigh the benefit. This discovery request is neither broad nor oppressive, especially in light of Defendants' concession that custodian Pierce had documents responsive to RFP 18.

Courts have consistently held that conducting ESI searches is not unduly burdensome, even when involving a significant amount of data, if the requesting party demonstrates good cause, proportionality, and cooperation in defining search terms. Compliance is assessed comparatively,

considering the responding party's resources and size, and courts emphasize the need for collaboration and transparency in ESI discovery. For example, in *Lyman v. Ford Motor Co.*, the court granted the plaintiff's motion to compel ESI searches of four custodians' records, emphasizing the need for transparency and cooperation and that custodian self-collection alone is insufficient. 344 F.R.D. 228, 230 (E.D. Mich. 2023). Additionally, the court reasoned that "counsel must test the accuracy of the client's response to document requests to ensure that all appropriate sources of data have been searched and that responsive ESI has been collected—and eventually reviewed and produced." *Id.* (citing *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 636 (E.D. Mich. 2021)).

Here, UMHW is a large corporate entity with extensive resources, and given its public-facing image, appears to expend significant resources on promoting ideas related to sexual orientation and gender identity. In comparison, Plaintiff's request for a narrow, targeted search relating to one employee, is reasonable. Therefore, Defendants should be compelled to conduct the requested ESI search for Thomas Pierce using the four, specified search terms.

**B. The Individual Defendants Should Be Compelled to Produce Documents Reflecting Bias Against People Who Hold Traditional Beliefs About Gender.**

The second of the remaining issues is that the Individual Defendants seek to withhold certain responsive documents reflecting bias against people who hold traditional beliefs about gender. *See* Ex. B, at 2 (summarizing issue); Ex. J (Individual Defs.' Resp. to Pl.'s RFPs). Courts have consistently held that evidence of bias, whether direct or circumstantial, is relevant and critical to Title VII discrimination and retaliation claims as it can demonstrate discriminatory intent or pretext for adverse employment actions. For instance, the Sixth Circuit has held that discriminatory remarks by individuals without independent authority to fire a plaintiff, but who played a material role in the termination decision, are relevant when assessing pretextual evidence

of discriminatory animus. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354–56 (6th Cir. 1998); *see also Smith v. Blue Cross Blue Shield of Michigan*, 2024 WL 3991245, at \*4 (E.D. Mich. Aug. 29, 2024) (holding evidence of animus is relevant to show religious discrimination).

Plaintiff brought claims against the Individual Defendants in their personal and official capacities. During discussions with opposing counsel, Plaintiff's counsel readily agreed to allow the Individual Defendants to exclude many otherwise responsive documents involving the individuals' personal romantic, sexual, or familial relationships or personal religious activities so as to not be overly intrusive. The parties agreed that information about (a) any religious activities in which they participate or (b) matters relating to sexual orientation or gender identity that concern their own sexual, romantic partner, or family relationship do not need to be produced unless the document also falls within one or more of these categories: (a) public activism related to sexual orientation and gender identity that does not concern their own partner or family member; (b) references to Plaintiff or her termination; or (c) disparaging, negative, or critical remarks about Christians. Plaintiff proposed a subpart (d), which Defendants rejected. Defendants would not agree to produce responsive documents that contain "disparaging, negative, or critical remarks about people who hold traditional beliefs about gender." Ex. B, at 3. This information is highly relevant to the issue of bias and therefore should not be withheld during discovery.

Pierce, one of the Individual Defendants, called Plaintiff "evil" and a "liar" during a meeting when she expressed her religious beliefs about gender, and he said she could not bring the Bible or her religious beliefs to work with her, literally or figuratively. ECF No. 69, PageID.1246–1247, ¶ 89. Given that Pierce made these statements in a professional setting with superiors present, it is highly likely that Pierce's written conversations include additional evidence of bias. If he possesses any text messages or emails to a non-spouse romantic partner, friend, or coworker, for instance, that reveal bias against people who hold the same beliefs about gender as Plaintiff,

these documents would be clearly relevant and should be disclosed. Evidence of bias against people who hold traditional beliefs about gender and sexuality is relevant to the question of religious discrimination and proportional to the needs of the case. Defendants already agree with subparts (a) – (c) of Plaintiff's exclusions, so adding one additional and substantially similar subpart is not overly broad or oppressive.

Therefore, Defendants should be compelled to produce responsive documents reflecting any of the Individual Defendants' bias against people who hold traditional beliefs about gender.

**C.  Defendants Should Be Compelled to Conduct an ESI Search Related to Comparator Employees Dr. Meppelink and Dr. Manion (RFP 11).**

The third and final issue involves Plaintiff's RFP 11. Plaintiff requested documents related to three specific comparator employees who she has reason to believe were also discriminated against due to their religious beliefs. In RFP 11, Plaintiff requests: "All documents regarding UMHW's discipline, investigation, termination, and/or the resignation of Dr. Kurt Meppelink, Dr. Laurence McCahill, and Dr. Kristina Manion, including but not limited to documents reflecting or related to their religious beliefs." Ex. C, at 4 (Def. UMHW's Resp. to Pl.'s RFPs). Defendant refused to conduct any ESI searches for this RFP, writing "As I stated before, we do not see a basis and do not agree to conduct a special ESI search regarding these three individuals." Ex. B, at 4. In an attempt to compromise, Plaintiff offered to not seek documents related to Dr. McCahill at this time.[1] However, Defendants still refused to conduct any ESI searches for this RFP. In this Motion, Plaintiff seeks a targeted ESI search of the documents of one custodian, Dr. Pai, who was the decisionmaker or heavily involved in the separation or terminations of Dr. Meppelink and Dr. Manion. *See* Ex. G, ¶ 3, Bates Stamp KLOOSTERMAN01550–55 (Meppelink Witness

---

[1] Plaintiff is not conceding that Dr. McCahill did not experience similar religious discrimination. However, in the interests of judicial economy and cooperation, she is focusing on Dr. Meppelink and Dr. Manion for the purpose of this motion.

Statement). Dr. Pai also signed Plaintiff's termination notice, and Defendant UMHW claims that he was the person who made the decision to terminate Plaintiff. ECF No. 69, PageID.1248–1249, ¶¶ 103, 108; Ex. H, ¶ 2(c) (Def. UMHW's Resp. to Pl.'s Interrogs.).

Courts have held that evidence of an employer discriminating against a similarly-situated employee, or an employee within the same protected class as a plaintiff, is relevant to the plaintiff's discrimination claim and can also demonstrate a hostile work environment or discriminatory animus. *See, e.g.*, *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 335 (6th Cir. 2008) (citing *Jackson v. Quanex Corp.*, 191 F.3d 647, 660 (6th Cir. 1999)). Notably, "offensive comments need not be directed at a plaintiff in order to constitute conduct violating Title VII," and "evidence that [the plaintiff] learned of these incidents clearly demonstrated that the plaintiff subjectively perceived that her work environment was one hostile to her." *Hawkins*, 517 F.3d at 335–36 (quoting *Jackson*, 191 F.3d at 660–61).

For RFP 11, the non-ESI production of responsive documents is not likely to sufficiently reveal religious discrimination because the true reason for Dr. Meppelink's and Dr. Manion's separation or any related discipline may not be expressed in their official personnel files. Dr. Meppelink signed a sworn statement stating his reasons for believing that he was fired, similar to Plaintiff, because of his Christian faith and his objections to gender-identity-related policy changes within UMHW. Ex. G, ¶¶ 4, 11–30 (Meppelink Witness Statement). It is also Plaintiff's understanding that Dr. Manion similarly expressed religious concerns about UMHW's rainbow pins, faced hostility for her religious beliefs, and may have been forced out of her position due to her religious beliefs about gender. Dr. Pai was the decisionmaker, or at least heavily involved, in the religious discrimination against these employees as well as Plaintiff. *See* ECF No. 69, PageID.1248–1249, ¶¶ 103, 108; Ex. G, ¶ 3; Ex. H, ¶ 2(c). These similar accounts are clearly relevant to the religious discrimination and retaliation Plaintiff experienced.

Accordingly, Plaintiff seeks an ESI search for one custodian, Dr. Pai, for targeted search terms in addition to the non-ESI production. Plaintiff specifically asks that Defendants conduct a search within Dr. Pai's work email and calendar using the following search terms: "Meppelink", "Manion", "fire*", "terminat*", "disciplin*", "investigat*", "suspen*", "resign*", "pronoun*", "rainbow", "religi*", and "gender." This discovery request is relevant, proportional to the needs of the case, and neither too broad nor oppressive. Therefore, Defendants should be compelled to conduct the requested ESI search for Dr. Pai using the targeted search terms related to both Dr. Meppelink and Dr. Manion.

## **CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests that the Court compel Defendants to comply with the above discovery requests.

Specifically, Plaintiff requests that the Court order:

(1)  Defendant UMHW to Perform an ESI search of Thomas Pierce's work email and calendar (from his date of hire through present) for the following terms: "HRC", "Human Rights Campaign", "Healthcare Equality Index", "HEI," and produce any responsive documents, including documents responsive to Plaintiff's Request for Production 18; and

(2)  The Individual Defendants to produce all documents that are responsive to Plaintiff's Requests for Production that contain disparaging, negative, or critical remarks about people who hold traditional beliefs about gender.

(3)  Defendant UMHW to perform an ESI search of Dr. Pai's work email and calendar for the following terms: "Meppelink", "Manion", "fire*", "terminat*", "disciplin*", "investigat*", "suspen*", "resign*", "pronoun*", "rainbow",

"religi\*", "gender" and produce any responsive documents, including documents responsive to Plaintiff's Request for Production 11.

Respectfully submitted this 29th day of January, 2026.

/s/ *James R. Wierenga*
James R. Wierenga
LightStone Law
99 Monroe Ave., NW, Ste. 1210
Grand Rapids, MI 49503
Tel: (616) 454-3883
jim@lightstonelaw.com

Douglas Peterson
David J. Hacker
Stephanie N. Taub
Kayla A. Toney
First Liberty Institute
2001 West Plano Pkwy., Ste. 1600
Plano, TX 75075
Tel: (972) 941-4444
dpeterson@firstliberty.org
dhacker@firstliberty.org
staub@firstliberty.org
ktoney@firstliberty.org

David J. Williams
Bossenbrook Williams PC
1690 Watertower Place, Ste. 400
East Lansing, MI 48823
Tel: (517) 333-5789
david@bossenbrook.com

*Attorneys for Plaintiff*

PLAINTIFF'S MOTION TO COMPEL - 11

*Kloosterman v. Metropolitan Hospital, d/b/a University of Michigan Health-West, et al.*,
No. 1:22-cv-00944-JMB-SJB

**CERTIFICATE OF COMPLIANCE**

Pursuant to W.D. Mich. LCivR 7.3(b)(i), Plaintiff certifies that this Brief contains 2,945 words. This word count was generated by Microsoft Word for Mac, Version 16.105.1.

Dated: January 29, 2026

/s/ *James R. Wierenga*
James R. Wierenga
LightStone Law
99 Monroe Ave., NW, Ste. 1210
Grand Rapids, MI 49503
Tel: (616) 454-3883
jim.wierenga@lightstonelaw.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that Plaintiff's Motion to Compel Discovery Production was served via CM/ECF this 29th day of January, 2026 upon all counsel of record including counsel for Defendants:

Jonathon A. Rabin
Kathryn Elizabeth Jones
Larry R. Jensen
Hall Render Killian Heath & Lyman PC
101 West Big Beaver Rd., Ste. 745
Troy, MI 48084
Tel: (248) 740-7505
jrabin@hallrender.com
kejones@hallrender.com
ljensen@hallrender.com

*Attorneys for Defendants*

Dated: January 29, 2026

/s/ *James R. Wierenga*
James R. Wierenga
LightStone Law
99 Monroe Ave., NW, Ste. 1210
Grand Rapids, MI 49503
Tel: (616) 454-3883
jim.wierenga@lightstonelaw.com

*Attorney for Plaintiff*